**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 20-21553-CIV-COOKE/GOODMAN**

PATRICK GAYLE, et al.,

      Petitioners/Plaintiffs,

   v.

MICHAEL W. MEADE,
Field Office Director, Miami Field
Office, U.S. Immigration and
Customs Enforcement, et al.,

      Respondents/Defendants.

_____/

**DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION
ON EMERGENCY MOTION FOR INJUNCTIVE RELIEF**

**PRELIMINARY STATEMENT**

Defendants, by counsel, respectfully submit these Objections to the Report and Recommendation on Emergency Motion for Injunctive Relief ("Report") of the Honorable Jonathan Goodman, United States Magistrate Judge, dated April 22, 2020 (D.E. 63). The Report incorrectly concluded that injunctive relief, even if in part, was warranted here. D.E. 63 at 6–10. For the reasons discussed below, the Court should reject the Report.

**STANDARD OF REVIEW**

Upon objection by any party to a report and recommendation of a magistrate judge, the district judge must conduct a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Raddatz*, 447 U.S. 667, 681-82 (1980) ("Congress has provided that the magistrate's proposed findings and recommendations shall be subjected to a *de novo* determination

by the judge who . . . then exercises the ultimate authority to issue an appropriate order." (internal quotation marks omitted)). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also Matthews v. Weber*, 423 U.S. 261, 275 (1976) (a district court's reference to a magistrate judge "will result in a recommendation that carries only such weight as its merit commands and the sound discretion of the judge warrants").

## ARGUMENT

### I. THE COURT SHOULD REJECT THE REPORT

#### a. Injunctive Relief is Unwarranted

Injunctive relief is not warranted here because there is no legal violation to remedy, and because ICE is addressing, and is committed to addressing, COVID-19.  The government objects to Magistrate Judge Goodman's recommendation granting injunctive relief for at least three reasons.

*First*, the Report does not identify *any* legal violations that warrant injunctive relief.  Nor does the Report analyze what would purportedly constitute an unconstitutional condition of confinement to warrant relief here.  Indeed, the Report notes that "[t]his R & R, if adopted, gives ICE an opportunity to demonstrate its recognition of an unprecedented health crisis and its ability to correctly (albeit belatedly) take steps to avoid a disaster." D.E. 63 at 67–68.

*Second*, even if the Report had identified a legal violation, such a determination would be erroneously based on the "narrow, incomplete and inconsistent" record. *Id.* at 42. Despite noting that the Report is "based on a less-than-optimum record," *id*. at 43, however, Magistrate Judge Goodman concluded that "depending on the facts," petitioners may have demonstrated a substantial likelihood of prevailing on their deliberate indifference claim. *Id*. at 63. That is wrong.

Indeed, despite acknowledging the inability to discern the true detention conditions from the record, Magistrate Judge Goodman erroneously assumed ICE's deliberate indifference to justify the recommended injunctive relief. *See id.* at 62. But injunctive relief cannot be afforded to prophylactically remedy a condition of confinement—much less one that stems from pure conjecture in the first place.

*Third*, the Report's directives as to how ICE is to exercise its detention authority exceeds this Court's jurisdiction to adjudicate cases and controversies. There is no basis for this Court's oversight of ICE's administration of its sound policies, particularly with no showing of a failure to deploy those policies in good faith. Indeed, the Report acknowledged as much when it concluded petitioners had not established a substantial likelihood of prevailing on the merits of their *Accardi* theory, which alleged that ICE had failed to follow its applicable guidelines. See D.E. 63 at 60–63. The *Accardi* doctrine requires federal agencies to abide by their own regulations, even if those regulations are more restrictive than the governing statute. *See United States ex. rel Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954). To be enforceable under the *Accardi* doctrine, however, an agency regulation or rule must impose "binding norm[s]" on the agency. *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987). But "[s]tatements that are merely prospective, imposing no rights or obligations on the respective parties, will not be treated as binding norms," nor will "[p]ronouncements that impose no significant restraints on the agency's discretion." *Padula*, 822 F.2d at 100.

As the Report correctly concluded, petitioners were unlikely to prevail on their *Accardi* theory because ICE's applicable guidelines do not impose such restraints on the agency's discretion. Instead, as the Report acknowledges, the guidelines "contain a substantial amount of flexibility," (D.E. 63 at 61), which allows for adaption while still ensuring its underlying purpose

3

is fulfilled. But the Report's proposed injunctive relief requires ICE to abide by the very regulations that were determined to be unenforceable under *Accardi*. That result cannot stand.

Moreover, Magistrate Judge Goodman correctly acknowledged the Court's limited judicial oversight function when he highlighted petitioners' higher-than-usual hurdle in obtaining injunctive relief against government officials. D.E. 63 at 50 ("[W]hen a party seeks to affirmatively enjoin a state governmental agency, requiring it to perform a certain action, the case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own affairs.") (internal citations omitted). For these reasons, Magistrate Judge Goodman should have concluded that injunctive relief is not warranted.

### b. The Injunction's Reporting Scope is Unnecessarily Broad

Defendants also respectfully object to the Report's proposals as to the requirement that ICE make "twice-weekly" reports regarding detainee population statistics to the Court to "encourage" and "compel" ICE to release certain detainees. D.E. 63 at 8–9. Such an order is unnecessarily broad, unduly burdensome and unwarranted.

For example, in Recommendation 5, the Report recommends that ICE make a twice-weekly report on the number of detainees released, the facility from which the detainee was released, and the characteristics of the detainee released (e.g., high-risk category due to age or specific medical condition). In Recommendation 7 (D.E. 63 at 8-9), the Report recommends that ICE make a twice-weekly report on how many of its detainees, at each of the three facilities, have no prior criminal convictions and no pending criminal charges. In Recommendation 8, (D.E. 63 at 9), the Report recommends that ICE provide a similar report, twice-weekly, on the numbers of detainees who are deemed "mandatory detainees."

Defendants believe the twice-weekly reporting requirement is unduly burdensome. The

4

detainee population at Krome, Broward Transitional Center, and Glades County Detention Center, are managed by a staff of Deportation Officers and their assistants. Some of the Deportation Officers are located at the detention facilities themselves, and some are located at administrative offices maintained by ICE Enforcement Removal Operations. Preparing the required reports requires review and analysis of each individual detainee's file to determine whether they are high-risk, subject to mandatory detention, or have no criminal record or pending criminal charges. As of Monday, April 20, 2020, at 6:00 am, the detainee population at all three facilities was 1,440. D.E. 48.

Moreover, the reporting requirement is unduly burdensome because the detainee population at the three facilities is dynamic and ever-changing. For example, when ICE executes a removal order by repatriating an alien, the detention population is reduced. But when law enforcement encounters an alien who is subject to removal, and the alien is taken into custody and brought to Krome, the detainee population thus increases. These consistent population fluctuations occur 24 hours a day, seven days a week.

Additionally, many of the deportation officers and administrative staff at who would compile the proposed reports have been on telework status since mid-March, 2020 to minimize the potential transmission of the coronavirus. While on telework status, these employees have limited access to detainee files and information. As a result, the injunction would require some of these employees to report to their offices in order to analyze detainee files and prepare the required reports for submission to the Court.

Defendants understand that the Court needs meaningful information on ICE's efforts to reduce the detainee population. In Recommendation 3 (D.E. 63 at 6-7), the Report recommends a requirement "that ICE make all efforts to comply with its suggested, published guideline to reduce

the population to 75% of capacity at each of the three detention centers within two weeks of an Order approving this Report and Recommendation." D.E. 63 at 6-7.  But even before this lawsuit was filed, ICE was aiming to reduce the detainee population.  D.E. 30-1 at 7 (detainee population reduced by 35 percent at Broward Transitional Center).  Such efforts are on-going and will continue even if the Court did not adopt the Report's injunctive relief.  As a result, defendants believe a twice-weekly report would not yield more meaningful information than a report filed once every two weeks, or, at a minimum, once a week.  Decreasing the frequency of reporting would relieve some of the administrative burden imposed on ICE to analyze data, review files, and having its employees enter the workspace, while at the same time producing the information needed by the Court.

## **CONCLUSION**

For all these reasons, Defendants respectfully request that the Court reject the Report and Recommendation, or, alternatively, reduce the reporting frequency.

| | |
|---|---|
| Dated: April 24, 2020 | Respectfully submitted, |
| ARIANA FAJARDO ORSHAN<br>United States Attorney<br>Southern District of Florida | JOSEPH H. HUNT<br>Assistant Attorney General<br>Civil Division, U.S. Department of Justice |
| DEXTER A. LEE<br>Assistant U.S. Attorney<br>Fla. Bar No. 0936693<br>99 N.E. 4th Street, Suite 300<br>Miami, Florida 33132<br>(305) 961-9320<br>Email: dexter.lee@usdoj.gov | WILLIAM C. PEACHEY<br>Director, District Court Section<br>Office of Immigration Litigation<br><br>YAMILETH G. DAVILA<br>Assistant Director |
| NATALIE DIAZ<br>Assistant U.S. Attorney<br>Florida Bar No. 85834<br>99 N.E. 4th Street, Suite 300<br>Miami, Florida 33132<br>(305) 961-9306<br>Email: Natalie.Diaz@usdoj.gov | */s/ Michael A. Celone*<br>MICHAEL A. CELONE<br>Senior Litigation Counsel<br>District Court Section<br>Office of Immigration Litigation<br>Civil Division, U.S. Department of Justice<br>P.O. Box 868, Ben Franklin Station<br>Washington, D.C. 20044<br>Tel: (202) 305-2040<br>Email: Michael.A.Celone@usdoj.gov |

*Attorneys for Respondents/Defendants*