UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-21553-CIV-COOKE

PATRICK GAYLE, et al.,

        Petitioners/Plaintiffs,

vs.

MICHAEL W. MEADE,
Field Office Director, Miami Field
Office, U.S. Immigration and
Customs Enforcement, et al.,

        Respondents/Defendants.
_____/

DEFENDANTS' RESPONSE TO PETITIONERS' OBJECTIONS
TO REPORT AND RECOMMENDATION

Defendants, by and through their undersigned counsel, file their Response to Petitioners' Objections to Report and Recommendation and state:

I.     THE REPORT AND RECOMMENDATION APPLIED THE CORRECT LEGAL STANDARD TO THE MEDICAL CARE OWED TO IMMIGRATION DETAINEES

Petitioners assail the Report and Recommendation for incorrectly applying the standards of medical care owed to persons serving criminal sentences to petitioners, who are in civil immigration detention. D.E. 70 at 3-6. Petitioners argue that civil immigration detainees are afforded greater protection under the due process clause "than convicted prisoners or even pretrial criminal detained individuals." D.E. 70 at 4. For this proposition, petitioners rely upon Youngberg v. Romeo, 457 U.S. 307 (1982), which involved a mentally retarded individual who was involuntarily committed to a Pennsylvania state institution. Youngberg claimed he had constitutional rights to safe conditions of confinement, freedom from bodily restraint, and

habilitation. The Supreme Court observed that, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." 457 U.S. at 321-22.

Having a right to more considerate treatment and conditions of confinement than convicted criminals does not necessarily mean having greater rights than a pretrial detainee. In Bell v. Wolfish, 441 U.S. 520 (1979), the Supreme Court rejected the notion that the presumption of innocence a pretrial detainee enjoys provides a substantive right to be free from conditions of confinement that are not justified by compelling necessity. Id. at 532-33. After noting the importance that the presumption of innocence plays in our criminal justice system, the Court added, "[b]ut it has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun." Id. at 533.

In Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985), the Eleventh Circuit held that a pretrial detainee's right to basic necessities like food, living space, and medical care, emanates from the due process clause, not the Eighth Amendment. Id. at 1572. Further, the due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner. Id. at 1574. In the end, the appellate court stated:

> This court holds that in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons.

Id. With specific reference to Hamm's claim of inadequate medical care, the Eleventh Circuit stated, "[t]o recover on his claim of inadequate medical care, Hamm had to prove that jail officials engaged in 'acts or omissions sufficiently harmful to evidence deliberate indifference to [his] serious medical needs.'" Id. at 1574-75, citing Estelle v. Gamble, 429 U.S. 105, 106 (1976).

The Report and Recommendation properly found that the standard to be applied to petitioners' claims of unreasonable exposure to COVID-19 infection is whether ICE "has been deliberately indifferent to their serious medical needs." D.E. 63 at 63, citing Estelle, supra; Hamm, supra; and Jordan v. Doe, 38 F.3d 1559, 1564 (11th Cir. 1994).

Pretrial detainees may not be subjected to conditions that amount to punishment. Bell, 441 U.S. at 536-37. Petitioners contend they are living in worse conditions than people serving criminal sentences, so they are being unlawfully punished. D.E. 70 at 4-5. The Bell court noted that a court must decide whether a disability is imposed for the purpose of punishment, or whether it is but an incident of some other legitimate governmental purpose. "Absent a showing of an express intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." 441 U.S. at 538, citing Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963).

Petitioners are not being subjected to conditions of confinement that amount to punishment. The fact that prisons operated by the United States and State of Florida are reducing their populations to prevent the spread of COVID-19 does not mean that petitioners, who remain detained, are being punished. United States Immigration and Customs Enforcement (ICE) issued its COVID-19 Pandemic Response Requirements on April 10, 2020. This was referenced extensively in the Report and Recommendation. D.E. 63 at 5, 8. ICE has also implemented procedures to review high-risk detainees' detention status, and has released such individuals at the Broward Transitional Center. The detention population at Broward Transitional Center was reduced by 35 per cent, in part by releasing all detainees age 60 or older.

Declaration of Juan A. Lopez-Vega, D.E. 30-1 at 6-7.  Such reviews are continuing.

Petitioners also rely upon two memoranda issued by Attorney General William Barr, relating to the increased use of home confinement at Bureau of Prisons' facilities due to COVID-19 (April 3, 2020)(D.E. 70-2), and the litigation of pre-trial detention during the COVID-19 Pandemic.  D.E. 70-3.  Petitioners state, "[i]n short, Attorney General Barr directed federal prosecutors and the Federal Bureau of Prisons to do what ICE refuses to do – evaluate and release individuals in custody to home confinement." D.E. 70 at 5.  This statement is incorrect for several reasons.  First, ICE has taken steps to reduce its detainee population, such as the 35 per cent reduction at Broward Transitional Center.  Second, ICE has an obligation to protect the public, as does the Department of Justice.  In the April 3, 2020 memo, Attorney General Barr cautions:

> While we have a solemn obligation to protect the people in BOP custody, we also have an obligation to protect the public.  That means we cannot simply release prison populations en masse onto the streets.  Doing so would pose profound risks to the public from released prisoners engaging in additional criminal activity, potentially including violence or heinous sex offenses. D.E. 70-3 at 3.

Moreover, the Attorney General added, "while I am directing you to maximize the use of home confinement at affected institutions, it is essential that you continue making the careful, individualized determinations BOP makes in the typical case.  Each inmate is unique and each requires the same individualized determinations we have always made in this context."[1]  D.E. 70-2 at 4.  Civil immigration detainees are no less unique, and require the same individualized determination to ensure release is appropriate, and the detainee will not pose a threat to the

---

[1] Attorney General Barr's April 6, 2020 memorandum, regarding pre-trial detention, includes similar admonitions. "We simply cannot agree to anything that will put the public at risk.  COVID-19 presents real risks, but so does allowing violent gang members and child predators to roam free." D.E. 70-3 at 2.

public.

The Report and Recommendation correctly found that deliberate indifference to serious medical need is the appropriate standard to be applied to petitioners' claims.

> II. THE REPORT CORRECTLY CONCLUDED THAT RELEASE FROM DETENTION IS NOT AN AVAILABLE REMEDY, EVEN IF PETITIONERS CAN ESTABLISH DELIBERATE INDIFFERENCE TO THEIR SERIOUS MEDICAL NEEDS

Despite devoting pages in their habeas petition, motion for preliminary injunction, and exhibits to support their claim that ICE has failed to adhere to CDC Guidelines on COVID-19, to include allegations of lack of soap; inadequate social distancing space in the detention facilities; being cohorted with other detainees due to suspected exposure; and lack of masks, petitioners chide the Magistrate Judge for incorrectly framing their case as one "challenging the *conditions* of confinement, when Petitioners are challenging the *fact* of their confinement." D.E. 70 at 6 (emphasis in original).

A challenge to the fact of their confinement is when one of the petitioners claims he is a United States citizen, and therefore not subject to removal from the United States, or if a petitioner has a final order of removal, but has been detained more than six months, with removal not likely to occur in the reasonably foreseeable future. No petitioner is making such a claim. Instead, petitioners complain about how they are being detained.

Petitioners attempt to re-cast their claims in order to avoid Gomez v. United States, 899 F.2d 1124 (11th Cir. 1990). While they deny they are challenging the conditions of their confinement, they describe their action as, "challenging *the fact* of their confinement by alleging that their confinement is improper under the circumstances and conditions at the detention facilities." D.E. 70 at 7 (italics in original)(emphasis supplied). If the "circumstances and conditions at the detention facilities" are what makes petitioners' confinement improper, then

5

they are challenging the conditions of their confinement.

The Report and Recommendation correctly analyzed the nature of petitioners' claims, and how Gomez's holding directly applies to the instant case. D.E. 63 at 51-55. Subsequent Eleventh Circuit cases have followed it. Fernandez v. United States, 941 F.2d 1488, 1494 (11th Cir. 1991)("[t]he appropriate Eleventh Circuit relief from prison conditions that violate the Eighth Amendment … is to require the discontinuance of any improper practices, or to require correction of any condition causing cruel and unusual punishment."), citing Gomez, 899 F.2d at 1126. "Release from confinement is not a possible remedy." Fernandez, 941 F.2d at 1494. Vaz v. Skinner, 634 Fed.Appx. 778, 781 (11th Cir. 2015).

Moreover, other circuits have also concluded that the remedy for unlawful conditions of confinement does not include release from detention. Glaus v. Anderson, 408 F.3d 382 (7th Cir. 2005)("As release is not available under Bivens, Glaus's habeas corpus petition would be proper if release were among the possible remedies for an Eighth Amendment deliberate indifference claim. Unfortunately for Glaus, it is not.")(citations omitted); Crawford v. Bell, 599 F.2d 890, 891-92 (9th Cir. 1979); and Cook v. Hanberry, 596 F.2d 658, 660 (5th Cir. 1979).

Petitioners rely upon the Magistrate Judge's opinion that prohibiting the release of prisoners based on the conditions of their confinement is the minority view, D.E. 70 at 10, citing D.E. 63 at 53, and argue that "other circuits that have addressed the issue allow the release of prisoners under similar circumstances." Defendants disagree that Gomez's holding is a minority view, since the Fifth, Seventh, and Ninth Circuits have come to the same conclusion. More importantly, in Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc., 331 F.3d 834 (11th Cir. 2003), one of the parties argued that an Eleventh Circuit precedent decision was no longer valid because it relied upon a First Circuit decision, which subsequently had been

overruled by the First Circuit. Id. at 840 n.1. This argument was rejected by the Eleventh Circuit, observing, "[t]hat does not matter to us as a panel, because the binding effect of our prior precedents in this circuit is impervious to the decisions of other circuits." Id. (citation omitted).

In Gomez, the petitioner had been convicted and sentenced to imprisonment. He suffered from AIDS, and claimed the medical treatment he was receiving was inadequate. 899 F.2d at 1125. Gomez sought release pending the resolution of his habeas, and the district court held a hearing to determine if the two circumstances in Calley v. Callaway, 496 F.2d 701 (5th Cir. 1974), were met. Those two circumstances are: (1) whether the petitioner has raised substantial constitutional claims upon which he has a high probability of success; and (2) whether extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective. Calley, 496 F.2d at 702. The district court in Gomez concluded that both factors had been met, and granted a bond. On appeal, the Eleventh Circuit reversed, noting that, "[t]he district court apparently overlooked the fact that even if Gomez prevails on his habeas corpus petition, he would not be entitled to be released from prison." Gomez. 899 F.2d at 1125.

Petitioners' argument that release on bail is available in a habeas action challenging the alleged inadequacies of ICE's efforts to protect petitioners from COVID-19 infection, D.E. 70 at 11-12, is completely inconsistent with the holdings in Gomez and Calley v. Callaway. In Calley, the petitioner was U.S. Army Lieutenant William Calley, who had been court-martialed by the Army for his role in the My Lai massacre. Calley was convicted by an Army court-martial of premeditated murder of not less than 22 Vietnamese civilians, and assault with intent to murder one Vietnamese civilian. His conviction and sentence were reviewed and approved by the Army Court of Military Review, U.S. Court of Military Appeals, and the Secretary of the

7

Army. Calley's court-martial sentence to life imprisonment was reduced to ten years. During this period, Calley was under house arrest at Fort Benning, Georgia. In 1974, Calley learned he was to be moved to the disciplinary barracks at Fort Leavenworth, Kansas. 496 F.2d at 702. He filed a habeas petition, seeking an order preventing his transfer, and an application for bail. The district court granted bail to Calley.

On appeal, the Fifth Circuit set out the two factors for bail being granted to a military prisoner pending post conviction habeas review. Id. The appellate court reversed the district court's grant of bail, finding the lower court had not applied the two-fold standard. After applying the proper standard, the Fifth Circuit concluded that the circumstances did not warrant grant of bail pending the determination of the merits of the petition. Id. at 703.

Release on bail pending the resolution of the habeas was permitted in Calley because the petitioner was attacking his court-martial conviction in the habeas. Thus, he was challenging the fact of his conviction. In contrast, Gomez was not challenging his criminal conviction and ten year sentence. Instead, he was challenging the adequacy of medical care being provided by the Bureau of Prisons for his AIDS condition, a condition of his confinement. That is why the Eleventh Circuit concluded that, "[t]he grant of bail pending consideration of his petition for writ of habeas corpus gave Gomez more relief on a preliminary basis that he would be entitled to if he ultimately prevails on his constitutional claims." 899 F.2d at 1127. The appellate court in Gomez plainly understood that Gomez was challenging a condition of his confinement, since it observed that, "[w]hile the petition for writ of habeas corpus is the sole remedy for prisoners challenging the fact or duration of their imprisonment … its use as a vehicle for relief from prison conditions has not been addressed by the Supreme Court." Id. at 1125-26 (citations omitted). After noting that the government had not argued that a habeas petition was an

8

improper vehicle for Gomez's claim, the Eleventh Circuit added, "[i]f these claims are considered in a habeas context, however, this Court has held that even if a prisoner proves an allegation of mistreatment in prison that amounts to cruel and unusual punishment, he is not entitled to release." Id., citing Cook v. Hanberry, 596 F.2d at 660.

Inasmuch as petitioners raise claims relating to the conditions of their confinement, they are not eligible for bail. The Report and Recommendation correctly analyzed Gomez.

### III. THE REPORT AND RECOMMENDATION CORRECTLY FOUND THAT THE STATE CREATED DANGER DOCTRINE DOES NOT APPLY

The Report and Recommendation found that petitioners had failed to demonstrate a substantial likelihood of success on their state created danger claim, alleged in Count Three (D.E. 1 at 105-107). D.E. 63 at 56-60. Petitioners contend the Report and Recommendation misconstrues the law and facts in concluding that the state created danger doctrine does not apply. D.E. 70 at 12-16.

The constitutional underpinning of the state created danger doctrine is the due process clause. In Doe v. Braddy, 673 F.3d 1313 (11th Cir. 2012), the Eleventh Circuit stated that, "only custodial relationships automatically give rise to a governmental duty, under substantive due process, to protect persons from harm by third parties." Id. at 1318, citing White v. Lemacks, 183 F.3d 1253, 1257 (11th Cir. 1999). In Doe v. Braddy, the plaintiff was a five-year old child, who while living in his grandparents' home, was sexually assaulted by a teenaged minor placed in the grandparents' home by state social workers. 673 F.3d at 1314-17. In White v. Lemacks, plaintiff White was a nurse working at a prison infirmary, where she was assaulted by a county jail inmate. 183 F.3d at 1254-55. In Perez-Guerrero v. U.S. Atty General, 717 F.3d 1224 (11th Cir. 1994), Perez-Guerrero claimed his deportation to Mexico would violate his substantive due process right to protection by the government, because he had cooperated with the government in

testifying against corrupt Mexican law enforcement officials, and would likely be killed by those individuals if returned to Mexico.

All of these cases involved a claim, under substantive due process, to a right to protection from a third party's criminal conduct. Moreover, as the Report and Recommendation correctly noted, the doctrine is triggered, if at all, when the government affirmatively places the individual in a position of danger which was distinguishable from that of the general public. D.E. 63 at 58, citing Mitchell v. Duval County Sch. Bd., 107 F.3d 837, 839 (11th Cir. 1997).

Petitioners seek protection from a communicable disease, which is not a third party. Moreover, petitioners assail the government for failing to implement CDC Guidelines and detention standards to protect them from the COVID-19 virus. However, the Supreme Court has noted that, "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)(citation omitted). Consequently, the Report and Recommendation's finding that affirmative conduct would be required is correct.

Petitioners' claim that substantive due process includes protection from a virus in a custodial setting should be rejected for another reason. In Collins v. City of Harker Heights, Texas, 503 U.S. 115 (1992), the Supreme Court rejected the notion that the due process clause imposes a duty upon a municipality to train or warn employees about known hazards in the workplace. In doing so, the Supreme Court noted that, "the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open ended." Id. at 125, citing Regents v. Univ. of Mich. v. Ewing, 474 U.S. 214, 225-226 (1985). The Court added, "[t]he doctrine of

judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." Id.

Petitioners' state created danger theory would clearly be an unwarranted expansion of substantive due process rights. In their Objections, petitioners rely upon Kaucher v. County of Bucks, 455 F.3d 418 (3rd Cir. 2006), where a corrections officer and his wife sued his county employer after being infected with the MRSA skin infection. D.E. 70 at 12-13. They claimed the county engaged in "conscience shocking" conduct in creating dangerous conditions that led to the spread of the infection, in failing to offer sufficient medical treatment to infected inmates and corrections officers, and in misrepresenting the risks of infection. Id. at 424. They contended that defendants should be held liable for this conduct under the state created danger doctrine. The district court granted summary judgment to the defendants.

On appeal, the Third Circuit affirmed, finding that the Kauchers failed to state a cognizable substantive due process claim. Specifically, the court found that the Kauchers could not state a valid claim under the state created danger doctrine. "At best, they claim defendants failed to provide a safe working environment at the jail, free from risk of infection. *Collins* forecloses this claim as a basis for substantive due process liability." Id.

The Report and Recommendation properly found that petitioners have not established a substantial likelihood of succeeding on the merits of their state created danger claim.

    IV.    THE REPORT AND RECOMMENDATION CORRECTLY FOUND THAT PETITIONERS HAD NOT SHOWN A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THEIR *ACCARDI* CLAIM

In their objections to the Report and Recommendation's finding that petitioners had not demonstrated a substantial likelihood of success on the merits of their *Accardi* claim, petitioners argued defendants "attempt to blunt the force of the *Accardi* doctrine by mistakenly attempting

to reframe the dispute as one about medical care, which it is not." D.E. 70 at 19.   They even go so far as to state, "Put simply, this is not a case about medical care." D.E. 70 at 20.

If this is not a case about medical care, then one wonders why petitioners submitted the declarations of three physicians, rendering opinions critical of the manner in which ICE was failing to follow proper procedures to minimize the risk of COVID-19 infection to detainees in their custody.   Indeed, the *Accardi* claim is based upon petitioners' assertion that ICE has not followed the Centers for Disease Control (CDC) Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (March 23, 2020).   The CDC Guidelines petitioners rely upon were prepared by physicians and other medical scientists, to provide guidance on practices to prevent the spread of COVID-19 infection in detention facilities.   Physicians not only treat individuals who have infectious diseases, they provide guidance and counsel on how to avoid being infected by such diseases.   Thus, medical care in a detention facility is not only the diagnosis and treatment of detainees' illnesses, but also the implementation of procedures to prevent infection of detainees and staff by communicable diseases.

The Report and Recommendation correctly analyzed the CDC Guidelines, and concluded that, "[p]etitioners have not established a substantial likelihood of prevailing on the merits because applicable CDC Guidelines contain a substantial amount of flexibility and courts confronted with emergency motions to release state and federal prisoners and detainees because of COVID-19 have relied on this adaptability when denying applications for release of inmates or detainees." D.E. 63 at 61.

The front cover page of the CDC Guidelines contains the following statement:

> **The guidance may need to be adapted based on individual facilities' physical space, staffing, population, operations, and**

**other resources and conditions.**

CDC Guidelines at 1 (emphasis in original). Plainly, the CDC recognized that each detention facility's administrator and health care professionals would have to adapt the Guidelines to suit each individual facility. **"At this time, different facility types (e.g. prison vs. jail) and sizes are not differentiated. Administrators and agencies should adapt these guiding principles to the specific needs of their facility."** CDC Guidelines at 3 (emphasis in original).

Petitioners appear to believe that their *Accardi* claim, if proven, entitles them to release. D.E. 70 at 18. They assail the Magistrate Judge for concluding that, "regardless of which of the counts they rely on, Petitioners are seeking **release** from custody – but that remedy is *unavailable* in the Eleventh Circuit under these circumstances." D.E. 63 at 51(emphasis in original).

The Magistrate Judge is correct. Under Gomez, even if petitioners could demonstrate that ICE violated their rights under the due process clause by providing inadequate medical care, the only appropriate remedy "would be an injunction against practices that are in violation of the Eighth Amendment or a mandatory injunction to bring his treatment up to constitutional standards." Gomez, 899 F.2d at 1127. If a violation of a constitutional right would not entitle them to release, petitioners can hardly claim they would be entitled to more relief for an *Accardi* violation, even if it was proven.

## CONCLUSION

Petitioners' Objections to the Report and Recommendation are meritless. The Report and Recommendation correctly determined the legal standard applicable to immigration detainees, and properly applied Gomez to find that release is not an available remedy. Also, the Report correctly found that the state created danger doctrine does not apply, and that petitioners had not

demonstrated a substantial likelihood of success on their *Accardi* theory.

DATED:		April 26, 2020			Respectfully submitted,

| | |
|---|---|
| JOSEPH H. HUNT<br>Assistant Attorney General<br>Civil Division<br>U.S. Department of Justice | ARIANA FAJARDO ORSHAN<br>UNITED STATES ATTORNEY |
| WILLIAM C. PEACHEY<br>Director, District Court Section<br>Office of Immigration Litigation | By:   \_\_s/ Dexter A. Lee_____<br>DEXTER A. LEE<br>Assistant U.S. Attorney<br>Fla. Bar No. 0936693 |
| YAMILETH G. DAVILA<br>Assistant Director | 99 N.E. 4th Street, Suite 300<br>Miami, Florida  33132<br>(305) 961-9320 |
| MICHAEL A. CELONE<br>Senior Litigation Counsel<br>District Court Section<br>Office of Immigration Litigation<br>Civil Division<br>U.S. Department of Justice<br>P.O. Box 878, Ben Franklin Station<br>Washington, D.C.  20044<br>(202) 305-2040<br>E-mail:  Michael.A.Celone@usdoj.gov | Fax:  (305) 530-7139<br>E-mail:  dexter.lee@usdoj.gov<br><br>s/Natalie Diaz_____<br>NATALIE DIAZ<br>ASSISTANT U.S. ATTORNEY<br>Florida Bar No. 85834<br>E-mail: Natalie.Diaz@usdoj.gov<br>99 N.E. 4th Street, Suite 300<br>Miami, Florida 33132<br>Telephone: (305) 961-9306 |

ATTORNEYS FOR DEFENDANTS

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 26, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

\_\_s/ Dexter A. Lee_____
DEXTER A. LEE
Assistant U.S. Attorney