## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-21553-Civ-COOKE/GOODMAN

**PATRICK GAYLE**, *et al.*,

      Petitioners-Plaintiffs, on behalf of
themselves and those similarly situated,

**v.**

**MICHAEL W. MEADE**, *et al.*,

      Respondents-Defendants.

_____/


## PETITIONERS-PLAINTIFFS' EXPEDITED MOTION FOR CLASS CERTIFICATION, REQUEST FOR EXPEDITED CONSIDERATION, AND MEMORANDUM OF LAW IN SUPPORT

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF FACTS ...................................................................................... 2

*A.    Proposed Class Members* ......................................................................................*2*

*B.    Proposed Class Counsel* ........................................................................................*4*

*C.    Procedural Background* .........................................................................................*7*

III.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS FOR CLASS
        CERTIFICATION UNDER RULE 23 .................................................................... 7

*A.    The Class Meets the Four Requirements of Rule 23(a).* ........................................*8*

        1.     The Class Is So Numerous that Joinder Is Impracticable ...................... 8

        2.     The Low Threshold for Commonality Requirement of Rule 23(a)(2) Is Satisfied
               Because the Challenged Policies Present Common Questions of Fact and Law ..... 9

        3.     The Claims of the Class Representatives Are Typical of the Claims of the Class . . 12

        4.     Class Representatives and Class Counsel Will Adequately Protect the Interests of
               the Class. .............................................................................................. 13

*B.    Certification Is Appropriate Under Rule 23(b)(2).* ............................................*14*

IV.     GIVEN THE EXIGENCIES, THE COURT SHOULD ACCELERATE THE
        BRIEFING AND ITS CONSIDERATION. ........................................................ 15

CONCLUSION ................................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Cases**

*Andrews v. Bechtel Power Corp.*, 780 F.3d 124 (1st Cir. 1985)....................................................13

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001).........................................................................12

*Baby Neal v. Casey,* 43 F.3d 48, 59 (3d Cir. 1994) .....................................................................14

*Braggs v. Dunn,* 321 F.R.D. 653, 664 (M.D. Ala. 2017) ........................................................ 10, 13

*Butler v. Suffolk Cty.*, 289 F.R.D. 80, 98 (E.D.N.Y. 2013) ...................................................10

*Cheney v. Cyberguard Corp.*, 213 F.R.D. 484 (S.D. Fla. 2003)...........................................7, 13

*Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.* 546 U.S. 454, 126 S.Ct. 1195 (2006)................................................ 8

*Gordon v. Johnson, 300 F.R.D. 28 (D. Mass. 2014)* .....................................................................7

*Ibrahim v. Acosta*, 326 F.R.D. 696 (S.D. Fla. 2018) ................................................. 11, 12, 14

*Helling v. McKinney*, 509 U.S. 25, 32 (1993) .......................................................... 9

*Hernandez v. City of Monterey,* 305 F.R.D. 132, 139 (N.D. Cal. 2015) .............................9-10

*Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983) ..................................14

*In re Checking Account Overdraft Litig.*, 286 F.R.D. 645 (S.D. Fla. 2012)...............................11

*In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17 (D. Mass. 2008)........................................12

*In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672 (S.D. Fla. 2004) ......................12

*Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987) ..................................13

*Masingene v. Martin*, __ F. Supp. 3d __, 2020 WL 465587 (S.D. Fla. Jan. 27, 2020) ............. 4

*Reid v. Donelan*, 297 F.R.D. 185 (D. Mass. 2014), *reversed on other grounds*, 819 F.3d 486 (1st Cir. 2016) ......................................passim

*R.F.M. v. Nielsen*, 365 F. Supp. 3d 350 (S.D.N.Y. 2019) ...................................................... 8

*Rosas v. Baca*, No. CV 12-00428 DDP (SHx), 2012 WL 2061694, at *2 (C.D. Cal. June 7, 2012) ........................................................................................................................8, 10

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. ___, 136 S. Ct. 1036 (2016) ..................................11

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) ..................................10-11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..........................................................6, 9

*Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) ..............................10

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................passim

**Other Sources**

7A Wright & Miller, Federal Practice & Procedure § 1775 (3d ed. 2018) ........................... 7

iii

## I.    INTRODUCTION

This action is filed on behalf of a highly vulnerable putative class: approximately 1400 individuals in civil immigration detention at three Florida detention centers, Krome Service Processing Center, Broward Transitional Center, and Glades County Detention Center. Every individual is at imminent risk of contracting COVID-19 because of the atrocious conditions of their confinement—conditions that, as this Court recognized in its April 30 Order Adopting in Part Magistrate Judge's Report and Recommendation [ECF 76], violate the Centers for Disease Control & Prevention's ("CDC's") Guidelines, as well as State and County orders pertaining to COVID-19.  Common questions of both fact and law pervade this matter.  Petitioners-Plaintiffs are subject to the **same confinement** under the **same conditions** which imposes the **same risk** of developing COVID-19.  Class certification is appropriate.

Petitioners-Plaintiffs seek class certification pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2).  Specifically, Petitioners-Plaintiffs seek certification of the following class:

> All civil immigration detained individuals held by Respondents at the Krome Service Processing Center ("Krome"), the Broward Transitional Center ("BTC"), or at Glades County Detention Facility ("Glades") when this action was filed, since this action was filed, or in the future.

The proposed class easily meets the requirements of Federal Rules of Civil Procedure 23(a) and (b).  All approximately 1400 members of the class (a number of class members that makes joinder impracticable) are bound together by common questions of law and fact—most prominently, whether in the face of the lethal COVID-19 pandemic, the continued detention of class members at Krome, BTC, and Glades by ICE in a way that violates CDC Guidelines and places the detained individuals' safety and health at grave risk amounts to a violation of their rights.  These are the very questions of law and fact this Court addressed in its April 30 Order.  All class members face the common risk of COVID-19 infection by virtue of confinement in one of the three ICE facilities at issue here under the same unsanitary and unconstitutional conditions—conditions created by the same deliberate indifference.

The Named Petitioners-Plaintiffs are proper class representatives because their claims are typical of the absent class members and because they and their counsel will adequately

and vigorously represent the class.  Finally, Rule 23(b)(2) is satisfied here because the Respondents have "acted or refused to act on grounds that apply generally to the class" through creating and maintaining conditions that put the class at imminent risk of contracting COVID-19, the deadly virus that is currently sweeping the globe.

## II.    STATEMENT OF FACTS

### A. Proposed Class Members

ICE is uniformly failing to follow the CDC Guidelines in each of the detention facilities at issue in this case.  This Court has repeatedly ordered the Respondents to provide information about the conditions in these facilities via declarations.  None of the declarations claimed that ICE was protecting the class members by properly implementing CDC Guidelines.  Instead, the declarations illustrate a consistent pattern of unhygienically cramped conditions, inadequate personal protective equipment, and grossly inadequate practices by ICE, such as late screening and use of massive cohort quarantining.  The class members are uniformly not provided basic necessities to fight against COVID-19, such as space, face masks, soap, and hand sanitizer.  Each class member is therefore not only subject to similar conditions, but similarly subject to the same devastating risk of contracting COVID-19.

Krome detains an average of 600 people in ICE custody at any time, with a population fluctuating between 550 and 875 people since 2006.  *See* Southern Poverty Law Center, *Prison by any Other Name: A Report on South Florida Detention Centers* (Appx I, Exh. K, at 131-234, 152).  "[T]here is little doubt that social distancing is currently impossible at Krome because the sleeping arrangements and some of the toilet and shower arrangements are too tight to permit it."  ECF 76 at 6.  Social distancing at six feet (72 inches) or greater is not possible at Krome given its current population:

- **Sleeping**—Dormitories have a paltry ~4 feet between beds.  *Id.* at 31-32.
- **Eating**—Meals are now served in day rooms, meaning that many areas have only ~3 feet between detained people.  *Id.* at 32.
- **Screening**—Medical screenings are conducted on all newly detained individuals within 12 hours.  Castano Declaration [ECF 33-1] at 3.
- **Medical**—Staff provides daily access to sick calls.  Report & Recommendation ("R&R") [ECF 63] at 28.

ICE reports on its website that as of May 3, 2020, there are 10 detained people at Krome who have tested positive for COVID-19.[1]  The following Named Petitioners-Plaintiffs are held or were held during the pendency of this action under the same unsanitary and unconstitutional conditions at Krome:  Patrick Gayle, Aparicio P. Jeronimo, Tolentino Martinez-Rios, Wilder Perez Limones, Javier Antonio Arias-Martinez, Juan Carlos Alfaro Garcia, Fermin Tepetate-Martinez, Abdul Jalloh, Darwyn Yovanny Navarrete Sanchez, Muhammad Alam Khan, Jose Chavez, Lazaro Ocana Guzman, Naim Arrak, Agane Warsame, Hassan Mohamed Farah, Ruben Orlando Flores Ramos, Mohamed Hasan, Eliseo Antonio Zamora Mendoza, Cesar Ariel Mendez Escobar, Julio Edwards, Eitan Yefet, Fernando Goncalves, Manuel Lopez Perez, Ricardo Perezo Alonzo, Thomas Lenor, Alejandro Vincenzo Mugaburu Tapia, Ariel Lucien, Mohamed Hassan Ali, Carlos Hedman Perdomo, Evarado Orantes Acevedo, and Jose Galdino Montalvo Rodriguez.[2]

Glades detains an average of 407 people in ICE custody at a time.  (Appx I, Exh. K, at 165.)  As with Krome, social distancing at six feet or greater is not possible and CDC Guidelines are not followed at Glades.

- **Sleeping**—As this Court recognized, "the bunk beds are a paltry 12 inches apart, the distance between the upper bunk and the lower bunk is 34 inches apart. *Id.*at 6.

- **Eating**—"[T]he chairs and benches where detainees eat are only three feet apart, contrary to CDC guidelines." *Id.* at 6.

- **Screening**—Medical screenings are conducted on all newly detained individuals within 12 hours.  Castano Declaration [ECF 33-1] at 3.

- **Medical**—Staff provides daily access to sick calls.  R&R at 28.

---

[1]      *See* https://www.ice.gov/coronavirus (visited May 4, 2020).

[2]      Petitioners-Plaintiffs have listed the locations where the Named Petitioners-Plaintiffs were located at the time this action was filed or at the time they joined this action as party Petitioners-Plaintiffs.  However, since the filing of this action, ICE has transferred some detained individuals at these facilities.  To prevent these transfers from frustrating the Court's jurisdiction and its ability to fashion meaningful relief, the Class Petitioners-Plaintiffs propose include all who have passed through the three facilities at issue here during this action's pendency.

As of May 4, ICE's website does not currently report that any individuals detained at Glades have tested positive for COVID-19.  The following Named Petitioners-Plaintiffs are held or were held during the pendency of this action under the same unsanitary and unconstitutional conditions at Glades:  Roseline Ostine, Tahimi Perez, Franklin Ramon Gonzalez, Francisco Rivero Valeron, Irvin Mendoza Silis, Gerardo Vargas, Dairon Barredo Sanchez, Rolando Aguabella Martinez, Yaniel Machado Aguila, Omar Lopez-Jaramillo, Farhan Nawabit, and Maxual a de Souza.

BTC detains on average 700 people in ICE custody at a time, with a mandatory minimum of 500 beds for people in immigrant detention.  (Appx I, Exh. K, at 156.)  As is the case at both Krome and Glades, social distancing at six feet or greater is not possible and CDC Guidelines are not followed at BTC.

- **Sleeping**—Bunk beds for males detained at BTC are 2 feet apart.  *Id.* at 26.
- **Eating**—After ICE removed chairs "so detainees are not seated next to each other or directly across from each other," they still eat only 4 feet apart.  *Id.*
- **Screening**—Medical screenings are conducted on all newly detained individuals within 12 hours.  R&R at 22.
- **Medical**—Staff provides daily access to sick calls.  *Id.* at 23.

As of May 4, ICE's website does not currently report that any individuals detained at BTC have tested positive for COVID-19.  The following Named Petitioners-Plaintiffs are held or were held during the pendency of this action under the same unsanitary and unconstitutional conditions at BTC:  Rene Jonathan Rosas Cardens, Adrian Sosa Fletes, Alejandro Ferreira Borges, Maikel Betancourt, Gelber Sontay Funez, Sirvanildo Bibiano Soares, Maykel Valera Ramirez, Ervin David Rodas Pedro, Abel Carrillo, Maikel Carrasco Polo, Miguel Angel Marroquin Perez, Maria Eugenia Rodriguez Claras, Crisley Sacrab-Bin, Danny Ruiz Garcia, and Deivys Perez Valladares.

Everyone ICE has detained at Krome, BTC, and Glades is detained under the same authority: Respondent Field Office Director, Miami Field Office, U.S. Immigration and Customs Enforcement.  [*See* ECF 76 at 3 & n.9 (citing *Masingene v. Martin*, __ F. Supp. 3d __, 2020 WL 465587 (S.D. Fla. Jan. 27, 2020)].

### B. Proposed Class Counsel

Proposed Class Counsel have significant experience with complex immigration, class

action litigation, including regarding conditions in detention facilities, and will fairly and adequately protect the interests of the Class.

- King & Spalding LLP, an international law firm which routinely represents clients around the world in complex litigation, will serve as lead class counsel. King & Spalding regularly litigates civil rights pro bono matters in federal court across the country, including cases representing individuals in prison and civil detention raising issues regarding the conditions of their detainment. Additional facts establishing the adequacy of Proposed Class Counsel are set forth fully in the concurrently filed declaration of Kathryn S. Lehman. (Ex. A).

- The Immigration Clinic of the University of Miami School of Law is a nonprofit organization with expertise in both immigration law and complex litigation. The Clinic has litigated numerous immigration cases in the Southern District of Florida, the Eleventh Circuit, and other federal courts across the country. The Clinic has served as lead counsel in class action involving immigration matters. Additional facts establishing the adequacy of Proposed Class Counsel are set forth in the concurrently filed declaration of Rebecca Sharpless, Director of the Immigration Clinic. (Ex. B).

- Rapid Defense Network is a New York State nonprofit legal services organization specializing in federal habeas corpus litigation for non-citizens detained by immigration authorities facing removal from the United States. RDN has extensive experience litigating detention issues in impact litigation and habeas corpus litigation across the county. Additional facts establishing the adequacy of Proposed Class Counsel are set forth fully in the concurrently filed declaration of Gregory P. Copeland. (Ex. C).

- Prada Urizar, PLLC is a private immigration law firm located in Miami, Florida specializing in solving complex immigration cases before both immigration agencies and federal courts. Attorneys Mark Prada and Anthony Dominguez of Prada Urizar regularly litigate immigration cases, including habeas corpus and APA litigation, against U.S. Immigration and Customs Enforcement and U.S. Citizenship and Immigration Services in the Southern District of Florida and before the U.S. Court of Appeals for the Eleventh

Circuit.  Additional facts establishing the adequacy of Proposed Class Counsel are set forth fully in the concurrently filed declaration of Mark Prada and Anthony Dominguez.  (Ex. D).

- The Southern Poverty Law Center ("SPLC"), based in Montgomery, Alabama, is a non-profit civil rights organization dedicated to seeking justice for the most vulnerable members of society.   The SPLC focuses on impact litigation in various practice areas, which include immigrant justice and criminal justice reform issues.   The SPLC has served as class counsel in more than 30 cases, many of which include challenges to conditions of confinement.   Additional facts establishing the adequacy of Proposed Class Counsel are set forth fully in the concurrently filed declaration of Paul R. Chavez.  (Ex. E).

- Americans for Immigrant Justice ("AI Justice") is a non-profit law firm dedicated to promoting and protecting the basic rights of immigrants. AI Justice provides direct legal services to immigrants who are detained and facing removal proceedings in all three of South Florida detention facilities.  AI Justice serves as a watchdog on immigration detention practices and policies and its Detention and Advocacy staff have authored numerous reports concerning conditions at ICE detention facilities in Florida.  AI Justice has represented immigrants in federal civil rights cases in the Southern and Middle Districts of Florida.  Additional facts establishing the adequacy of Proposed Class Counsel are set forth fully in the concurrently filed declaration of Lisa Berlow-Lehner (Ex. F).

- Legal Aid Service of Broward County ("LASBC") is a non-profit legal services organization location in Plantation, Florida.  LASBC was founded in 1973 to provide high quality, free civil legal advice, representation and education to low-income residents of Broward County.  LASBC has been involved in many federal and state class action lawsuits on behalf of Broward County residents, and has dedicated resources to becoming familiar with the relevant laws and procedures.   Additional facts establishing the adequacy of Proposed Class Counsel are set forth fully in the concurrently filed declaration of Andrea Montavon-McKillip (Ex G).

### C. Procedural Background

As COVID-19 ravaged every corner of American society, including ICE detention facilities, potential class members initiated this lawsuit on April 13, 2020. They filed an Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction for Proposed Class and Incorporated Memorandum of Law on the same date. Judge Goodman held a nearly three-hour hearing on April 17, 2020 and subsequently issued his Report and Recommendation on April 22, 2020. Based on the exigent circumstances, Judge Goodman required an expedited briefing schedule for any objections. This Court then entered an Order Adopting in Part Magistrate Judge's Report and Recommendation on April 30, 2020 [ECF 76].

### III.   THE PROPOSED CLASS SATISFIES THE REQUIREMENTS FOR CLASS CERTIFICATION UNDER RULE 23.

Class certification is governed by Federal Rule of Civil Procedure 23. Class certification is proper where the party seeking certification demonstrates that (1) each of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met; and (2) the proposed class satisfies at least one of the requirements listed in Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Both elements are met here.

As explained below, the proposed Class satisfies each of the Rule 23(a) requirements, which are as follows:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The proposed Class easily satisfies the requirements listed in Rule 23(b)(2). Certification is appropriate under Rule 23(b)(2) because Respondents have acted or refused to act on grounds generally applicable to the Class, making injunctive relief appropriate with respect to the Class as a whole.

Notably, civil rights actions are particularly amenable to class treatment as Rule 23 was enacted to "facilitate the bringing of class actions in the civil-rights area." 7A Wright & Miller, Federal Practice & Procedure § 1775 (3d ed. 2018). The arguments in favor of class

certification are especially strong in this context, where individual Class members are unlikely to be able to pursue their claims individually. Even in normal times, people in civil immigration detention are hard-pressed to bring their own civil rights claims, since they are all detained, largely lack counsel, and many do not speak English. *See Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014), *reversed on other grounds*, 819 F.3d 486 (1st Cir. 2016) (certifying class of people in immigration detention because, among other things, "many do not speak English, a majority do not have counsel, and most are unlikely even to know that they are members of the proposed class"); *Gordon v. Johnson*, 300 F.R.D. 28, 29 (D. Mass. 2014). But, of course, these are not normal times. The difficulties Class members would face in pursing their own claims are compounded by a world that is essentially on lock-down. Furthermore, the exigencies of the present COVID-19 crisis that the Court so aptly summarized in its recent ruling (ECF 76) do not allow the time needed for the Class members to each bring separate actions to vindicate their rights: COVID-19 has no interest in waiting while each Class member is afforded a day in court.

### A. The Class Meets the Four Requirements of Rule 23(a).

#### 1. The Class Is So Numerous that Joinder Is Impracticable.

The proposed class satisfies the requirement that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed rule, generally a class size less than twenty-one is typically considered inadequate, while a class size of more than forty is generally adequate. *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 489-90 (S.D. Fla. 2003) (*citing Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

This requirement is easily met here because there are hundreds of people (indeed, approximately 1400) in civil immigration detention who are being held by the same Respondent across Krome, BTC, and Glades, and each of them is affected by the policies and practices challenged in this lawsuit.

Additionally, the Class includes not only individuals detained when this suit was filed and those currently detained, but also all future detained individuals at these three centers since both men and women detained now and in the future are or will be subject to Respondents' policies and practices related to the conditions of detainment. ICE has refused to stop transferring individuals into these three facilities, so the current number of detained men and women represents "merely the floor for this numerosity inquiry." *Reid*, 297 F.R.D.

at 189; *see also R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 368 (S.D.N.Y. 2019) (finding joinder impracticable for certain immigrants applying for legal status certain in part because "[n]ew members regularly and continuously join the proposed class as their SIJ status petitions are adjudicated.").

Other courts presented with similar proposed classes of current and future people in custody have agreed that the numerosity requirement is readily met on circumstances such as those here. *See, e.g., Rosas v. Baca*, No. CV 12-00428 DDP (SHx), 2012 WL 2061694, at *2 (C.D. Cal. June 7, 2012) ("The Jails currently house thousands of inmates, and are certain to house many more in the future. The court therefore agrees with Plaintiffs' undisputed assertion that the numerosity requirement has been satisfied."). The size of the proposed Class and the fact that the Class includes future members seeking injunctive or declaratory relief make joinder impracticable. The proposed Class thus satisfies the numerosity requirement of Rule 23(a)(1).

> ## 2. The Low Threshold for Commonality Requirement of Rule 23(a)(2) Is Satisfied Because the Challenged Policies Present Common Questions of Fact and Law.

As distinct from the requirement that common questions of law or fact "predominate" in Rule 23(b)(3) (which Petitioners-Plaintiffs do not invoke here), the commonality requirement in Rule 23(a)(2) is exceedingly slight—it simply requires that there are **some** common questions of law or fact. Thus, Rule 23(a)(2) commonality can be met where, notwithstanding some factual differences between the class members claims, controlling questions of law and fact are common to the entire class. *See Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.* 546 U.S. 454, 457 (2006) (stating that "factual differences among the claims of the putative class members do no defeat certification.").

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The common contention of injury "must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is . . . the capacity of a class wide proceeding to general common answers apt

to drive the resolution of the litigation." *Id.* (citation omitted).

The Class satisfies the commonality requirement because they share at least one question of law and fact—several, in fact. A critical question of law for the Class is whether Respondents have been deliberately indifferent to the risk that people detained at Krome, BTC, and Glades will contract COVID-19 due to the unhygienic conditions and an inability to protect themselves through social distancing. *See Helling v. McKinney*, 509 U.S. 25, 32 (1993) (the Constitution confers upon the Government a duty to assume responsibility for safety and general well-being of people detained). As this Court has recognized, "to the extent that ICE fails to commit to addressing the conditions complained of, ICE has demonstrated deliberate indifference." [ECF 76 at 6.] And given how viruses spread, that deliberate indifference applies uniformly to all people in ICE custody at the three facilities at issue here.

Common questions also circle on the (in)adequacy of Respondents' policies and practices governing the conditions of confinement, including ICE's failure to follow CDC Guidelines. These issues, which are at the core of the claims asserted by Petitioners-Plaintiffs and the Class constitute the type of common questions that courts have found sufficient to meet the commonality requirement. For example, in *Hernandez v. City of Monterey*, the court certified "a class of inmates challenging jail safety and health care policies and practices, and a subclass of inmates challenging jail disability policies and practices." 305 F.R.D. 132, 139 (N.D. Cal. 2015). The *Hernandez* court found that the commonality requirement was met for both the proposed class and subclass because "all members of the putative class and subclass have in common their alleged exposure to a substantial risk of serious future harm to which Defendants are allegedly deliberately indifferent, as a result of policies and practices that govern the overall conditions of health care services and confinement." *Id.* at 157. The court further concluded that "[w]hile results of exposure may vary, ranging from no harm to death, each inmate suffers the same constitutional or statutory injury when exposed to a policy or practice that **creates a substantial risk** of serious harm." *Id.* (emphasis added)*; see also Rosas*, 2012 WL 2061694, at *5 (certifying prisoner class where the issue of whether officials were deliberately indifferent to a pattern or practice of violence was a common question likely to yield a common answer); *Butler v. Suffolk Cty.*, 289 F.R.D. 80, 98 (E.D.N.Y. 2013) ("Whether the County was aware of and deliberately indifferent to the conditions at the [prison] is a common question subject to class-wide resolution.").

10

The nature of this suit and the relief requested also support a finding of commonality. In a civil rights lawsuit such as this, "commonality requires only that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Braggs v. Dunn,* 321 F.R.D. 653, 664 (M.D. Ala. 2017) (quoting *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal brackets omitted). This "relatively light burden" does not require that all questions of law and fact be common to the putative class members. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009).

Here, ICE's uniformly unsanitary practices and its consistent refusal to follow CDC Guidelines at Krome, BTC, and Glades expose each class member to the same "substantial risk of serious harm." *See Hernandez*, 305 F.R.D. at 157. Specifically, in the face of the lethal COVID-19 pandemic, the continued detention of the class members at Krome, BTC, and Glades in a manner that defies CDC Guidelines places the detained individuals' safety and health at grave risk in a manner that amounts to unconstitutional punishment. [ECF 76 at 6–9.] All of the class members either have been, or will be, subjected to these common conditions and common policies and practices, and a determination that Respondents' conduct is unconstitutional and violated CDC guidelines will therefore "resolve an issue that is central to the validity" of each and every class member's detention. *Dukes*, 564 U.S. at 350 (2011). Respondents are holding all members of the Class in the same horrific conditions, and the Court should find the necessary facts and rule on the constitutionality of those common conditions "in one stroke." *See id.*

The fact that certain details relating to their conditions of confinement will vary between class members does not defeat commonality. *Reid*, 297 F.R.D. at 191 (class certification granted despite individual differences among class members, where common issues pervade). Those inevitable differences—which at most might entail some tailoring in the **ultimate remedy** the Court might fashion—do not change the fact that conditions experienced in all three South Florida detention centers at issue here are uniformly unsanitary and unconstitutional, or that Respondents have uniformly shown deliberate indifference towards the risk of COVID-19 infection to all people they are detaining at those facilities. Indeed, Respondents' briefing in this Court shows that they believe they are categorically under no judicially administrable, constitutional obligation to actually protect the people who they are confining from COVID-19. [*See, e.g.*, ECF 72 at 10 (contending that state-created-

danger doctrine categorically does not apply to the dangers that arise from "a communicable disease" because the virus "is not a third party").] Because that question can be answered in one fell swoop, the commonality requirement of Rule 23(a)(2) is met.

As courts have repeatedly recognized, even under the more stringent requirement that common questions predominate that applies to damages class actions under Rule 23(b)(3), class action treatment can still be appropriate despite the existence of minor variations among class members. *Tyson Foods, Inc. v. Bouaphakeo*, --- U.S. ---, 136 S. Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." (internal quotation marks and citations omitted)). Where, as here, the commonalities are readily apparent, Rule 23(a)(2) is readily satisfied.

### 3. The Claims of the Class Representatives Are Typical of the Claims of the Class.

The typicality requirement centers on the relationship between the proposed class representatives and the other members of the class. *Ibrahim v. Acosta*, 326 F.R.D. 696, 700 (S.D. Fla. 2018) (*citing Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009)). This analysis turns on "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named class plaintiffs, and whether other class members have been injured by the same course of conduct." *In re checking Account Overdraft Litig.*, 286 F.R.D. 645, 653 (S.D. Fla. 2012). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004).

Commonality and typicality tend to overlap, as each looks to the nature of the claims presented in the case, and whether the class members and the named plaintiffs are similarly situated as to those claims. *Dukes*, 564 U.S. at 349 n.5 ("Both [commonality and typicality] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately

12

protected in their absence."). Thus, in *Ibrahim*, having already discussed the questions of law and fact common to the class, the court had no trouble concluding that the typicality requirement was met for the same reasons—with virtually no additional discussion. *See* 326 F.R.D. at 700 (citing *Dukes*).

Here, the proposed class representatives (themselves members of the Class) have suffered the **same injury** because they are subject to the **same confinement** under the **same unconstitutional conditions** caused by the **same deliberate indifference** by the **same Respondents** which is exposing them to the **same risk** of developing COVID-19. [*See* ECF 76 at 6–10.] *See also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) (typicality requirement is satisfied when "the cause of the injury is the same—here, the Board's discriminatory policy and practice"). All Class members are forced to live in dangerously close quarters with others in civil detention—when they sleep, eat, shower, and use the toilet. Furthermore, all Class members are exposed to an appalling lack of screening, personal protective equipment and medical oversight.

There is, moreover, no risk that issues involving the Named Petitioners-Plaintiffs' individual claims will impede their litigation on behalf of the class. The Named Petitioners-Plaintiffs are challenging the same practices and the same pattern of deliberate indifference to the same serious threat all people confined at these facilities face. They "can fairly and adequately pursue the interests of the absent class members without being sidetracked by [their] own particular concerns." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). Indeed, given the nature of the claims at issue here, swapping out any of the Named Petitioners-Plaintiffs for any of the Class members would do nothing to change the quality of the litigation here—which is the very definition of having claims that are typical to those of the other class members. The Court should find this requirement met.

### 4. Class Representatives and Class Counsel Will Adequately Protect the Interests of the Class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy depends on the resolution of two questions: "(1) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and . . . (2) whether plaintiffs have interests antagonistic to those of the rest of the class." *See Cheney*, 213 F.R.D. at 496 (quoting *Kirkpatrick v. J.C.*

*Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987)).

Here, "the interests of the representative party will not conflict with the interests of any of the class members," *Andrews v. Bechtel Power Corp.*, 780 F.3d 124, 130 (1st Cir. 1985), because—as already explained—those interests are aligned. The Named Petitioners-Plaintiffs have alleged the same injuries, arising from the same conduct, and they seek the same injunctive and declaratory relief, which will apply equally to the benefit of all class members.

In addition, "counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Id.* The Named Petitioners-Plaintiffs are represented by King & Spalding LLP; the Immigration Clinic of the University of Miami School of Law; Rapid Defense Network; The Southern Poverty Law Center ("SPLC"); Prada Urizar, PLLC; Americans for Immigrant Justice; and Legal Aid Service of Broward County. Collectively, counsel has significant experience in the areas of immigration law, constitutional law, class action and complex civil litigation, and habeas corpus actions. The collective experience of Petitioners' counsel is vast, and Petitioners-Plaintiffs' counsel have the resources needed to prosecute this matter to the fullest.

## B.        Certification Is Appropriate Under Rule 23(b)(2).

Class certification is warranted under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) has been liberally applied in the area of civil rights, including suits challenging conditions and practices at various detention facilities." *Braggs*, 317 F.R.D. at 667 (internal quotation marks omitted). Indeed, "some courts have gone so far as to say that the rule's requirements are almost automatically satisfied in actions primarily seeking injunctive relief." *Id.* (quoting *Baby Neal v. Casey,* 43 F.3d 48, 59 (3d Cir. 1994) (internal quotation marks omitted). "The critical inquiry is whether the class members have suffered a common injury that may properly be addressed by class-wide injunctive or equitable relief." *Ibrahim*, 326 F.R.D. at 701 (*citing Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983)); *see also Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'").

14

This action falls squarely within the category of cases contemplated by Rule 23(b)(2). Sadly, the constitutional violations and deliberate indifference this Court outlined in its April 30 order fall uniformly on all members of the Class. [*See* ECF 76 at 6–9.] Each Class member is endangered by the same noncompliance by the same Respondents with the same CDC Guidelines, which is exposing them to the same virus. They are being denied the same opportunity to socially distance, the same soap and cleaning items, and the same personal protective equipment.

Indeed, although class treatment is appropriate under Rule 23(b)(2), it is notable that the concerns that animated Rule 23(b)(1) are present here. If the approximately 1400 Class members brought separate actions for declaratory and injunctive relief, those actions could very well lead to overlapping and contradictory injunctions that required ICE to take inconsistent steps in response to the COVID-19 crisis. Class treatment here allows this Court to address these issues together in one stroke, and (as it has already done on a preliminary basis, [*see* ECF 76 at 10–11]) to develop a comprehensive plan that addresses all people being detained by Respondents at the three facilities at issue here. Respondents' common deliberate indifference can only be remedied with a common solution, and the practical way to accomplish that is with a common action.

## IV.   GIVEN THE EXIGENCIES, THE COURT SHOULD ACCELERATE THE BRIEFING AND ITS CONSIDERATION.

As the Court is well aware, time is of the essence given the exigencies of the COVID-19 crisis. In order to reflect this reality, Petitioners-Plaintiffs ask the Court to expedite the consideration of this motion, including the briefing schedule.

## CONCLUSION

Petitioners-Plaintiffs are subject to the same confinement under the same conditions which impose the same risk of developing COVID-19.  Petitioners-Plaintiffs respectfully ask the Court to:

(1)     Expedite the briefing and consideration of this motion;

(2)     Certify a class consisting of all civil immigration detained individuals who are held as of the time of the filing of this action, who have been held since the filing of this action, or who will be held, by Respondents at the Krome Service Processing Center, the Broward Transitional Center, or at Glades County Detention Facility;

(3)     Appoint named the Named Petitioners-Plaintiffs as Class representatives; and

(4)     Appoint the undersigned as class counsel.

Date:  May 5, 2020

Respectfully Submitted,

*/s/ Scott M. Edson*
Scott M. Edson, Esq.
Florida Bar No. 17258

Gregory P. Copeland*                         Scott M. Edson, Esq.
Sarah T. Gillman*                              Florida Bar No. 17258
**RAPID DEFENSE NETWORK**            **KING & SPALDING LLP**
11 Broadway, Suite 615                      1700 Pennsylvania Avenue NW, STE 200
New York, NY 10004                          Washington, DC 20006-4707
Tel.: (212) 843-0910                          Telephone:   (202) 737-0500
Fax: (212) 257-7033                          Facsimile:  (202) 626-3737
gregory@defensenetwork.org              sedson@kslaw.com
sarah@defensenetwork.org
*Appearing Pro Hac Vice*

Rebecca Sharpless
Florida Bar No. 0131024
Romy Lerner
Florida Bar No. 116713
**UNIVERSITY OF MIAMI SCHOOL OF LAW - IMMIGRATION CLINIC**
1311 Miller Drive Suite, E-273
Coral Gables, Florida 33146
Tel: (305) 284-3576
Fax: (305) 284-6092
rsharpless@law.miami.edu

Paul R. Chavez
FL Bar No. 1021395
Maia Fleischman
FL Bar No. 1010709
**SOUTHERN POVERTY LAW CENTER**
2 S. Biscayne Blvd., Ste. 3200
Miami, FL 33101
Tel: (305) 537-0577
paul.chavez@splcenter.org
maia.fleischman@splcenter.org

Lisa Lehner
Florida Bar No. 382191
**AMERICANS FOR IMMIGRANT JUSTICE**
5355 NW 36 Street, Suite 2201
Miami, FL 33166
Tel: (305) 573-1106 Ext. 1020
Fax: (305) 576-6273
Llehner@aijustice.org

Kathryn S. Lehman
Florida Bar No.: 95642
Chad A. Peterson
Florida Bar No.: 91585
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
klehman@kslaw.com
cpeterson@kslaw.com

Mark Andrew Prada
Fla. Bar No. 91997
Anthony Richard Dominguez
Fla. Bar No. 1002234
**PRADA URIZAR, PLLC**
3191 Coral Way, Suite 500
Miami, FL 33145
Tel.:   (786) 703-2061
Fax:   (786) 708-9508
mprada@pradaurizar.com
adominguez@pradaurizar.com

Andrea Montavon McKillip
Florida Bar No. 56401
**LEGAL AID SERVICE OF BROWARD COUNTY, INC.**
491 North State Road 7
Plantation, Florida 33317
Tel. (954) 736-2493
Fax (954) 736-2484
amontavon@legalaid.org

*Counsel for Petitioners-Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 5th day of May, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

<u>*/s/ Scott M. Edson*</u>
Scott M. Edson, Esq.
Florida Bar No. 17258
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW, STE 200
Washington, DC 20006-4707
Telephone:   (202) 737-0500
Facsimile:  (202) 626-3737
<u>sedson@kslaw.com</u>

*Attorney for Petitioners-Plaintiffs*