UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 20-21553-CIV-COOKE/GOODMAN

PATRICK GAYLE, et al.,

    Petitioners,

v.

MICHAEL W. MEADE, et al.,

    Respondents.

_____/

RESPONDENTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION

Respondents, by and through their undersigned counsel, file their Response and Opposition to Petitioners' Motion for Class Certification (DE:81), and state:

I.    PROCEDURAL HISTORY

The 58 named petitioners are detainees[1] in the custody of U.S. Immigration and Customs Enforcement, at three separate locations: (1) Krome Detention Center, Miami, Florida ("Krome"); (2) Broward Transitional Center, Pompano Beach, Florida ("BTC"); and (3) Glades County Detention Center, Moore Haven, Florida ("Glades"). Petitioners allege that class certification is proper because respondents have "acted or refused to act on grounds that apply generally to the class through creating and maintaining conditions that put the class at imminent risk of contracting COVID-19." (DE:81:6).

In the District Court's Order Adopting in Part the Magistrate's Judge's Report and Recommendations, the Court found that respondents failed in their duty to protect the safety and

---

[1] Respondents have released 6 of the named petitioners: Tahimi Perez, Francisco Rivero Valeron, Eitan Yefet, Fernando Goncalves, Maxuel De Souza, and Maria Rodriguez Claras. Respondents have also released an additional two petitioners on alternatives to detention, Eliseo Zamora-Mendoza and Alejandro Mugaburu Tapia. (DE:89:1,2).

well-being of petitioners because social distancing was not possible due to the arrangements of the bed and showers, and some were not provided with masks, soap, and other cleaning supplies. (DE:76:6). Further, the Court found that respondents' inadequate measures amounted to deliberate indifference and cruel and unusual punishment. Id. Thereafter, petitioners filed a motion for class certification (DE:81)

## II. PETITIONERS' MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)). To fall within the exception, Plaintiffs "must affirmatively demonstrate [their] compliance" with Federal Rule of Civil Procedure 23. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

Federal Rule of Civil Procedure 23(a) sets out four requirements for class certification. Those requirements are: (1) the class is so numerous that joinder is impractical ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the named plaintiffs are typical of claims or defenses of the class ("typicality"); and (4) the named plaintiffs will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a).

The Supreme Court has held that "actual, not presumed, conformance with Rule 23(a) [is] indispensable." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 160 (1982). The party seeking class certification bears the burden of demonstrating it has satisfied all four Rule 23(a) prerequisites and that the class lawsuit falls within one of the three types of actions permitted under Rule 23(b). Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 614 (1997). In this case,

2

petitioners seek certification under subsection (b)(2) of Rule 23, which permits class certification "because Respondents have acted or refused to act on grounds generally applicable to the Class, making injunctive relief appropriate with respect to the Class as a whole." (DE:81:7). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted— the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" Dukes, 564 U.S. at 360.

Consequently, the Court must conduct a rigorous analysis to determine whether the requirements of Rule 23 have been met; if the court is not fully satisfied, the class cannot be certified. Falcon, 457 U.S. at 161. The party seeking class certification has the burden of proof such that "[a]ll else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." Brown v. Electrolux Home Prod., Inc., 817 F.3d 1225, 1233 (11th Cir. 2016).

Moreover, the rigorous analysis "will frequently entail 'overlap with the merits of the plaintiff's underlying claim. That cannot be helped." Dukes, 564 U.S. at 351. Further, "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id., citing Falcon, 457 U.S. at 160.

Petitioners allege three claims for relief: (1) violation of detention standards under the Accardi doctrine (D.E. 1 at 98-104); (2) Fifth Amendment violation of right to reasonable safety (D.E. 1 at 104-105); and (3) violation of Fifth Amendment under state created danger (D.E. 1 at 105-107).

A. The Proposed Class is Not Adequately Defined

As an initial matter, petitioners have failed to establish the "essential prerequisite" of an

3

adequately-defined class. Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012). An adequate class definition must not be "defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 824-25 (7th Cir. 2012); Oshana v. Coca-Cola Co., 472 F.3d 506, 514 (7th Cir. 2006) (affirming denial of certification of class defined so broadly that it included millions of individuals who were not deceived).

Petitioners' propose one class:

All civil immigration detained individuals held by Respondents at the Krome Service Processing Center ("Krome"), the Broward Transitional Center ("BTC"), or at Glades County Detention Facility ("Glades") when this action was filed, since this action was filed, or in the future. (DE:81:5)

Petitioners also maintain that, because ICE has transferred some detained individuals from these facilities since the filing of their action, "[t]o prevent these transfers from frustrating the Court's jurisdiction and its ability to fashion meaningful relief, the Class Petitioners-Plaintiffs propose include all who have passed through the three facilities at issue here during this action's pendency."   D.E. 81 at 7 n.2

Petitioners' proposed class is overbroad because it would include detainees who are not detained at the Krome Detention Center, Broward Transitional Center, or Glades County Detention Facility, so long as the alien transited through one of those facilities. As the Court clarified in its order on Petitioners' Motion for Clarification, respondents are allowed to transfer detainees to other facilities with the condition that the detainee has been evaluated for release pursuant to ICE's COVID-19 April 19, 2020 Pandemic Response Requirement. (DE:78).   In 8 U.S.C. § 1231(g)(1), Congress provided that, "[t]he Attorney General shall arrange for

4

appropriate places of detention for aliens detained pending removal or a decision on removal." One appellate court has observed that, "as a part of DHS, ICE 'necessarily has the authority to determine the location of detention of an alien in deportation proceedings … and therefore, to transfer aliens from one detention center to another.'" Calla-Collado v. Atty General, 663 F.3d 680, 685 (3rd Cir. 2011), citing Gandarillas-Zambrana v. Bd. of Immigration Appeals, 44 F.3d 1251, 1256 (4th Cir. 1995).

Inasmuch as the members of the putative class are complaining about allegedly unlawful conditions of confinement, in that those conditions unreasonably expose them to infection from the COVID-19 virus at Krome, BTC, and Glades, a detainee who is now detained at none of those facilities can hardly complain of conditions where he or she no longer resides. Indeed, the Eleventh Circuit has held that, "[t]he general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief." McKinnon v. Talladega Cty., Alabama, 745 F.2d 1360, 1363 (11th Cir. 1984)(citation omitted). Consequently, inclusion of detainees who no longer are detained at Krome, BTC, or Glades renders the class overbroad.

Accordingly, the proposed class is not adequately defined because it is overbroad as it includes putative class members that might not be harmed by Respondent's allegedly unlawful conduct; that is, the facilities' alleged failure to comply with ICE's COVID-19 Pandemic Response Requirements.

B.      Petitioners Have Not Satisfied the Commonality Requirement

The "commonality" requirement mandates that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). More specifically, the putative class' "claims

5

must depend upon a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 349. Although for purposes of Rule 23(a)(2) even a single common question will do, "[w]hat matters to class certification . . . is not the raising of common questions — even in droves — but, rather the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation." Id. "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Id. at 350 (citation omitted). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311 (3d Cir. 2009).

The putative class members are detained at one of three separate facilities. Each facility has a different physical plant, configuration, as well as capacity for detaining individuals. This is why the Court required respondents to provide declarations as to each separate location. Acting Officer in Charge Castano provided a declaration pertaining to the physical dimensions and conditions at Krome and Glades. D.E. 33-1. Assistant Field Office Director Lopez Vega provided a declaration regarding the physical plant and conditions at BTC. D.E. 30-1.

Petitioners make specific claims regarding the alleged failure of ICE to comply with CDC Guidelines, and the alleged deliberate indifference of respondents to their serious medical needs. They focus on sleeping arrangements, and the amount of space between beds. D.E. 81 at 6. Also included are allegations regarding the locations where detainees eat; the medical screenings for new detainees; and the medical care provided to detainees. D.E, 81 at 6-8.

Rule 23(a)(2)'s commonality requirement "is easy to misread."  Naylor Farms, Inc. v. Chaparral Energy, LLC, 923 F.3d 779, 789 (10th Cir. 2019), citing Dukes, 564 U.S. at 349.  It is not sufficient for petitioners to allege that there are questions of law or fact common to the class because they all claim they are being harmed because of respondents' failure to comply with CDC Guidelines, or respondents' deliberate indifference to their serious medical needs.  Instead, "Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution 'will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke.'"  Stukenberg v. Perry, 675 F.3d 832, 840 (5th Cir. 2012), citing Dukes, 564 U.S. at 350 (emphasis and brackets in original).

Petitioners cannot satisfy the commonality requirement because the putative class members are detained at three different locations, each with its own set of unique conditions.[2]  As of May 7, 2020, Krome's population was at 71% of its capacity.  Castano Decl., D.E. 89-1 at 1, ¶ 3.  The detainee population at Glades is at 74% of its capacity, while the detainee population at BTC is at 65% capacity.  Id.  With the decrease in detainee population at each location, the facility administrators have the flexibility to place detainees in housing units which allow for more social distancing space, as well as more spacing for beds and consumption of meals.  Whether a particular detainee's living arrangement meets CDC Guidelines, or demonstrates a lack of deliberate indifference, will depend upon an individualized determination.  This is not a resolution of a claim central to each class member's claim "in one stroke."

Moreover, there are not only dissimilarities between the named petitioners themselves,

---

[2] Even within a detention facility, there are variations in the amount of living space available.  At the Krome Detention Center, detainees can be housed in six different PODS, as well as Buildings 11, 14, a medical unit, and a Behavioral Health Unit.  D.E. 33-1 at 7-8.

7

but amongst the named petitioners and putative class members. The detainees at the three facilities differ in age, gender, state of their general health, status of their removal proceedings, and amenability to release from detention under the Immigration and Nationality Act. In the description of the parties, petitioners describe each named petitioner and include references to particular medical conditions, where applicable. Some of the petitioners with medial conditions include Alejandro Ferreira Borges at D.E. 1 at 16, ¶ 38, Franklin Ramon Id. at 17, ¶ 40, and Irvin Mendoza Silis at Id. at 19, ¶ 46. Plainly, each named petitioner, as well as the putative class members, have individual characteristics that would have to be considered in determining whether a violation of law has occurred. Presumably, petitioners would not disagree that a detainee with significant health issues would have to be dealt with differently than a detainee who is 22 years old, with no health issues.

From the examples above, it is clear that an analysis of how each detention center is complying with the COVID-19 Pandemic Response Requirements necessitates not just an individualized inquiry of each facility, but an inquiry that considers the conditions of confinement at that time period because the conditions of confinement can vary.

Indeed, the Supreme Court recently recognized in Jennings v. Rodriguez, 138 S. Ct. 830, 852 (2018), that a class action may not be the proper vehicle to resolve Due Process claims because of the flexibility inherent in a Due Process analysis. Id. (remanding to the Court of Appeals to consider this question). Because due process is a flexible concept, these dissimilarities would require this Court to delve into the specific facts of each detainee and detention facility's case; thereby, rendering it impossible to dispose of the class wide claims in an efficient manner. Id. Accordingly, petitioners' proposed class does not meet the commonality

requirement under Rule 23(a)(2).

      C.      Petitioners Do Not Satisfy the Typicality Requirement

The Petitioners also fail to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement of Rule 23(a)(3) "derives its independent legal significance from its ability to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 598 (3rd Cir. 2012). Thus, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class member." Falcon, 457 U.S. at 156. The proposed class lacks typicality because an individualized analysis of the petitioners' claims is required—the claims may vary depending on what detention facility is at issue and also differ from other future putative class members because the conditions of confinement may vary over time.

      D.      The Named Petitioners Are Not Adequate Class Representatives

The proposed class cannot satisfy the adequacy requirement of Rule 23(a)(4). An adequate representative is one who will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Due process requires that absent class members have an adequate representative. See Hansberry v. Lee, 311 U.S. 32, 43 (1940). The adequacy "inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). The named petitioners are not adequate class members for the same reason the proposed class lacks typicality—the claims may vary depending on what detention facility is at issue and also differ from other future

9

putative class members because the conditions of confinement may vary over time. Thus, the named petitioners cannot adequately represent the interests of all the putative current and future class members.

### III. PETITIONERS FAIL TO MEET THE REQUIREMENT OF FED.R.CIV.P. 23(B)(2)

Petitioners seek certification of their proposed class under Fed.R.Civ.P. 23(b)(2), which provides that a class action can be maintained if, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole …"

"The touchstone of a 23(b)(2) class is that the class claims must be cohesive." Harris v. Union Pacific R.R. Co., 953 F.3d 1030, 1033 (8th Cir. 2020). Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. Dukes, 564 U.S. at 360. More importantly, a "Rule 23(b)(2) class action is appropriate only 'when a single injunction or declaratory judgment would provide relief to each member of the class,' not 'when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." Id.

In this case, petitioners assert claims under the CDC Guidelines that their rights have been violated. "At BTC, beds in male rooms are only two feet apart, when they should be six feet apart under the CDC's guidelines." April 30, 2020 Order, D.E. 76 at 6. "At Glades the bunk beds are a paltry 12 inches apart, the distance between the upper bunk and the lower bunk is 34 inches, and the chairs and benches where detainees eat at Glades are only three feet apart, contrary to CDC guidelines." D.E. 76 at 6. Thus, it may make a difference if a putative class member is detained at Glades, as opposed to BTC or Krome, insofar as the viability of the

10

Accardi claim.   In Hohider v. United Parcel Service, Inc., 574 F.3d 169 (3rd Cir. 2009), a nationwide class of plaintiffs, employees of United Parcel Service, were alleging unlawful discrimination by UPS under the Americans with Disabilities Act (ADA).   The district court certified a nationwide class.   On appeal, the Third Circuit reversed the district court, noting that, "establishing the unlawful discrimination alleged by plaintiffs would require determining whether class members are 'qualified' under the ADA, an assessment that encompasses inquiries acknowledged by the District Court to be too individualized and divergent with respect to this class to warrant certification under Rule 23(a) and (b)(2)."   Id. at 186.

The resolution of petitioners' claims would also require individualized and divergent inquires since three separate detention facilities are at issue, with different physical plants, detainee capacities, and current detainee population.   Moreover, each putative class member's own set of circumstances would have to be reviewed by the district court, such as vulnerabilities to COVID-19 infection, as well as amenability to release under the Immigration and Nationality Act.   In Lakeland Regional Medical Ctr. Inc. v. Astellas US, LLC, 763 F.3d 1280 (11th Cir. 2014), the Eleventh Circuit affirmed the district court's refusal to certify a class under Rule 23(b)(2).   The appellate court observed that, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted."   Id. at 1291, citing Dukes, 564 U.S. at 360.   Further, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."   Id.

In this case, petitioners allege three claims for relief.   The Court would have to consider both the Accardi claim, the deliberate indifference claim under the Fifth Amendment due process clause, and the Fifth Amendment state created danger due process claim.   If deliberate

11

indifference by respondents could not be established, petitioners would doubtless argue they might be entitled to injunctive or declaratory relief under the Accardi claim, because ICE failed to comply with CDC guidelines.   This is not the "indivisible nature of the injunctive or declaratory remedy" which Rule 23(b)(2) requires.   Consequently, petitioners fail to establish they have a viable class under Rule 23(b)(2).

      IV.      OTHER COVID-19 CLASS ACTIONS IN THE UNITED STATES

      A.      Swain v. Junior, Case No. 20-11622 (11th Cir. 2020)

There is a similar action in the Southern District of Florida, Swain v. Junior, where detainees at the Metro West Detention Center, operated by Miami-Dade County, raised claims under 42 U.S.C. § 1983 challenging the conditions of their confinement.   The district court granted a preliminary injunction requiring Miami-Dade County to employ numerous safety measures to prevent the spread of COVID-19, as well as imposing extensive reporting requirements.   Miami-Dade County appealed to the Eleventh Circuit, and sought a stay of the injunction pending appeal.

On May 5, 2020, the Eleventh Circuit, in a 2-1 decision, granted a stay of the injunction. Swain v. Junior, -- F.3d --, 2020 WL 2161317 (11th Cir. May 5, 2020).   The appellate court found that Miami-Dade County was substantially likely to succeed on the merits of their appeal "because the district court likely committed errors of law in granting the preliminary injunction." 2020 WL 2161317 at *4.   First, in conducting its deliberate indifference inquiry, the district court incorrectly collapsed the subjective and objective components.   Id.   The district court treated the increase in COVID-19 infections as proof that the defendants deliberately disregarded an intolerable risk, the Eleventh Circuit found, and in doing so, "it likely violated the admonition

12

that resultant harm does not establish a liable state of mind." Id., citing Farmer v. Brennan, 511 U.S. 825, 844, 114 S.Ct. 1970 (1994).

In this case, petitioners did not establish any resultant harm. As of April 16, 2020, at 12:00 noon, there were two detainees at Krome with laboratory confirmed cases of COVID-19. D.E. 33-1 at 4, ¶ 15(a). As of 2:00 pm on April 2020, there were eight staff members at Krome with laboratory confirmed cases of COVID-19. D.E. 53-1 at 2, ¶ 3.

Also, the Eleventh Circuit found the district court likely erred by treating Metro-West's inability to achieve meaningful social distancing as evincing a reckless state of mind when the district court found that social distancing was impossible and could not be achieved absent an additional reduction in Metro-West's population. 2020 WL 2161317 at *4. This was incorrect since "the inability to take a positive action likely does not constitute 'a state of mind more blameworthy than negligence.'" Id. In this case, the Report and Recommendation found that, "[T]here is little doubt that social distancing is currently impossible at Krome because the sleeping arrangements and some of the toilet and shower arrangements are too tight to permit it." D.E. 63 at 63.

Last, the Eleventh Circuit in Swain found the district court "cited no evidence to establish that the defendants subjectively believed the measures they were taking were inadequate." 2020 WL 2161317 at *4. In the instant case, ICE began taking measures, prior to the filing of the lawsuit, to address the threat posed by COVID-19. These measures including curtailing social visits, requiring attorneys visiting clients to wear personal protective equipment, implementation of screening procedures for new detainees, and isolation of detainees who may have been exposed to COVID-19. D.E. 33-1. Respondents respectfully submit this conduct by ICE does

not evince deliberate indifference to detainees' serious medical needs.

Petitioners' <u>Accardi</u> and deliberate indifference claims require different analyses by the Court.  In order to determine if injunctive and/or declaratory relief is appropriate on the deliberate indifference claim, the Court must make findings as to the subjective beliefs of respondents.  In contrast, the <u>Accardi</u> claims requires inquiry into specific details such as the space between beds, the distance between detainees when they are eating meals, and whether social distancing space is available.  These two different types of inquiries require individualized analyses, which is contrary to the indivisible nature of the injunctive or declaratory remedy warranted in a Rule 23(b)(2) class action.

> B. <u>Faour Abdallah Fraihat, et al. v. U.S. Immigration and Customs Enforcement, et al</u>. No. EDCV 19-1546 JGB (SHKx) (C.D. Cal April 20, 2020).

In <u>Fraihat</u>, Plaintiffs filed a class action lawsuit against ICE alleging that ICE had failed to ensure minimum lawful conditions of confinement at immigration detention facilities across the country in violation of the Due Process Clause of the Fifth Amendment and 29 U.S.C. § 794. <u>Id</u>. at *7.

> The District Court certified the following two subclasses ("Subclasses"):
>
> Subclass One: All people who are detained in ICE custody who have one of the Risk Factors placing them at heightened risk of severe illness and death upon contracting the COVID-19 virus.
>
> Subclass Two: All people who are detained in ICE custody whose disabilities place them at heightened risk of severe illness and death upon contacting the COVID-19 virus.

<u>Id</u>. at *50-51.

14

The District Court granted Plaintiffs' request for a preliminary injunction and granted various forms of injunctive relief; including, track all detainees with risk factors identified in the subclass, make custody determinations, and provide training to the staff. Id. at *86-*87.

Respondents maintain that the procedures implemented in Krome, BTC, and Glades in response to COVID-19, and the Court's TRO comply with the Fraihat decision as respondents are evaluating all of its current population to determine if any detainee is eligible for the Alternative to Detention program or other form of release in order to reduce its population to 75% capacity, as required by the District Court's Order Adopting in Part the Magistrate's Judge's Report and Recommendations (DE:76).

## CONCLUSION

Petitioners' motion for class certification should be denied.

DATED:   May 9, 2020                              Respectfully submitted,

                                            ARIANA FAJARDO ORSHAN
                                            UNITED STATES ATTORNEY

By:     __s/ Dexter A. Lee_____
       DEXTER A. LEE
       ASSISTANT U.S. ATTORNEY
       Florida Bar No. 0936693
       E-mail: dexter.lee@usdoj.gov
       99 N.E. 4th Street, Suite 300
       Miami, Florida 33132
       Telephone: (305) 961-9320

By:     __s/ Natalie Diaz_____
       NATALIE DIAZ
       ASSISTANT U.S. ATTORNEY
       Florida Bar No. 85834
       E-mail: Natalie.Diaz@usdoj.gov
       99 N.E. 4th Street, Suite 300
       Miami, Florida 33132

Telephone: (305) 961-9306

Counsel for Respondents

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 9, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

          __s/ Dexter A. Lee_____
          DEXTER A. LEE
          Assistant U.S. Attorney