# Ex. C

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
## Case No. 20-21543-CIV-WILLIAMS

ANGEL PORTUONDO,

   Petitioner,

vs.

FIELD OFFICE DIRECTOR
MIAMI FIELD OFFICE, *et al.*,

   Respondents.

_____/

## **ORDER**

**THIS MATTER** is before the Court on Petitioner Angel Portuondo's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (DE 1). Respondents filed a response in opposition (DE 10) and Mr. Portuondo filed a reply (DE 17). The Court also held a telephonic conference on May 4, 2020, during which the Parties presented arguments on their positions.

**I. BACKGROUND**

Mr. Portuondo, a 51-year-old Cuban native, has lived in the United States since 1994. (DE 1). In 1995, his status was adjusted to that of a lawful permanent resident. (DE 10). Because of prior convictions, Mr. Portuondo is now in removal proceedings under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act.[1] *Id.* Specifically, in 2016, Mr. Portuondo was convicted for use of unauthorized access device in violation of 18

---

[1] Mr. Portuondo is separately seeking asylum, withholding of removal, protection under the Convention Against Torture, and readjustment of status under the Cuban Adjustment Act. (DE 1).

U.S.C. §1029(a)(2) and aggravated identity theft in violation of 18 U.S.C. § 1028(a)(1).[2] *Id.* He was sentenced to a 42 month term of imprisonment followed by a 3 year term of supervised release. *Id.* On July 5, 2019, upon being released from federal custody, Mr. Portuondo was detained by ICE and transferred to the Krome Service Processing Center ("Krome"). *Id.* As of the date of this Order, Mr. Portuondo remains detained at Krome and has still not been given the opportunity for a bond hearing, nor has his case been heard (or scheduled) on the merits. (DE 1). According to Respondents, an immigration judge denied Mr. Portuondo's request for bond on the basis that he is subject to mandatory detention under 8 U.S.C. § 1226(c). (DE 10).

Mr. Portuondo filed this Petition not only in light of his prolonged detention without a bond hearing or any hearing on the merits, but also because he suffers from a recurrence of prostate cancer—"Mr. Portuondo has a medical history of prostate cancer and partial prostatectomy with recent positive prostate biopsy results"—and is therefore more vulnerable to severe illness or death if infected by COVID-19. (DE 1; DE 12-1; DE 18-1). In February 2020, Mr. Portuondo was transported to Larkin Community Hospital where an oncologist made various recommendations for treatment.[3] *Id.* According to Mr. Portuondo's petition, "his cancer has progressed, including possible metastasis, and he is experiencing major neurological and musculoskeletal conditions including major

---

[2] The Court notes that in 2010, based on previous convictions, Mr. Portuondo was placed in removal proceedings. However, on January 31, 2014, Immigration Judge John Opaciuch granted Mr. Portuondo relief from removal in the form of cancellation of removal under Section 240A(a) for lawful permanent residents. (DE 10-7).

[3] Specifically, "(1) a PSA to assess the progression of biochemical recurrence; (2) CT of the abdomen/pelvis and NM Bonescan to assess for metastatic disease; (3) CBC and CMP; (4) treatment with an androgen-receptor antagonist, either Lupron or Enzalutamide; and potentially radiation therapy." (DE 1).

headaches, dizziness, loss of sensation in the perineal region, and bilateral chronic pain." (DE 1; DE 1-3).

Michelle El-Hajjaoui, D.O. from the Cancer Center at Larkin ("Larkin"), provided an affidavit further confirming that Mr. Portuondo "has **high grade** prostate cancer with biochemical recurrence" and has been under Larkin's care since February 13, 2020. (DE 18-1). Dr. El-Hajjaoui states that it is Larkin's recommendation that Mr. Portuondo strictly adhere to the required therapy "to improve his overall survival and prevent progression of disease that can increase morbidity/mortality with organ crisis and bone lesions." *Id.* Despite Dr. El-Hajjaoui's recommendation, during the May 4, 2020 telephonic conference, Mr. Portuondo's counsel advised the Court that, although Mr. Portuondo had a medical appointment scheduled on May 2, 2020, he was not taken to the appointment or advised whether it will be rescheduled. Respondents did not dispute counsel's statement or provide any indication as to when Mr. Portuondo would be transported to Larkin for required treatment and/or examination.

Respondents do not contest the serious health risks Mr. Portuondo faces in the wake of the COVID-19 pandemic. Indeed, the affidavit Respondents submitted by Dr. Luis A. Ortega, the Clinical Director of the Krome Medical Referral Center, confirms that Mr. Portuondo is in a "high-risk category." (DE 12-1). Dr. Ortega explains that "CDC guidelines stipulate that immunocompromised patients, to include those patients who are undergoing cancer treatment, are in high risk category for severe disease if infected by COVID 19." *Id.* Dr. Ortega goes on to state that "Mr. Portuondo meets said criteria and is therefore in a high-risk category." *Id.*

Finally, Mr. Portuondo states that he "has been identified by Krome staff as someone who was exposed to COVID-19." (DE 1). Notwithstanding his particular health conditions and Dr. Ortega's finding that he is in a high-risk category, at the time of filing his Petition, Mr. Portuondo had been placed "in a unit of many other people who have been exposed. He sleeps on a bunk bed in close proximity to other people, is forced to eat near many others, and must use a communal bathroom." *Id.* Mr. Portuondo's counsel indicated during the May 4, 2020 telephonic conference that she visited Mr. Portuondo on May 3, 2020 and observed significant deterioration in his health; for example, she stated that Mr. Portuondo had difficulty breathing while speaking. Respondents did not dispute that Mr. Portuondo's health has worsened.

## II. ANALYSIS

Mr. Portuondo challenges his continued detention on two grounds. First, in violation of his Fifth Amendment rights on the basis that he "is imminent danger of contracting [COVID-19]" and, second, in violation of his procedural due process rights under the Fifth Amendment and in violation of the Eighth Amendment for being detained since July 2019 without the opportunity for a bond hearing. (DE 1).

Mr. Portuondo has been detained since July 2019 without the opportunity for a bond hearing. Respondents emphasize that because of his criminal history, he is subject to mandatory detention under 8 U.S.C. § 1226(c)(2) and is not eligible for release.[4] As discussed during the May 4 telephonic hearing, numerous courts have reviewed petitions

---

[4] During the telephonic hearing, the Court inquired as to the Respondents' position in light of the decisions in *Gayle v. Meade,* No. 20-21453-CIV-MGC (S.D. Fla. Apr. 30, 2020) and *Fraihat v. U.S. Immigration & Customs Enf't,* No. EDCV191546JGBSHKX, 2020 WL 1932570 (C.D. Cal. Apr. 20, 2020). Respondents did not challenge the deterioration of Mr. Portuondo's health or the high risks he faces as a cancer patient, but represented that because of his mandatory detention status, he is not on track for consideration of release.

4

by those who are allegedly detained in violation of their due process rights, notwithstanding mandatory detention under Section 1226(c). Indeed, "the Supreme Court has consistently allowed for habeas challenges to detention statutorily mandated by the Immigration and Nationality Act." *Vazquez Barrera v. Wolf*, No. 4:20-CV-1241, 2020 WL 1904497, at *5 (S.D. Tex. Apr. 17, 2020) (citing *Jennings,* 138 S. Ct. at 837-38, 838-39); *see also Moore v. Nielsen*, No. 418CV01722LSCHNJ, 2019 WL 2152582, at *9 (N.D. Ala. May 3, 2019) ("[A]n appreciable number of district courts since *Jennings* have ruled that immigrants facing §§ 1225(b) and 1226(c) removal proceedings, regardless of their immigration status, enjoy due process rights against prolonged detention.").

For example, in *Vazquez Barrera v. Wolf*, the defendants argued that the court was "barred from granting habeas relief because [p]laintiffs [were] mandatorily detained under 8 U.S.C. §§1226(c) and 1231(a)(a)." *Id.* Finding that "mandatory detention statutes do not bar [the court's] power to issue relief through a writ of habeas corpus", the court turned to the merits of plaintiffs' claims—that the defendants were violating the plaintiffs' rights "under the Fifth Amendment to substantive due process by continuing to detain them during the ongoing pandemic." *Id.; see also Valenzuela Arias v. Decker*, No. 20 CIV. 2802 (AT), 2020 WL 1847986 (S.D.N.Y. Apr. 10, 2020) (concluding that the respondents "failed to justify [p]etitoners' continued detention in unsafe conditions" and "courts have the authority to order those detained in violation of their due process rights released, notwithstanding § 1226(c)"); *Basank v. Decker*, No. 20 CIV. 2518 (AT), 2020 WL 1481503, at *6 (S.D.N.Y. Mar. 26, 2020) ("[C]ourts have the authority to order those detained in violation of their due process rights released, notwithstanding § 1226(c)"); *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1812850, at *2 (N.D. Cal. Apr. 9, 2020)

("To the extent that Respondents claim Bent is absolutely prohibited from seeking release because he is mandatorily detained under 18 U.S.C. § 1226(c), the court has already rejected that argument."); *Ferreyra v. Decker*, No. 20 CIV. 3170 (AT), 2020 WL 1989417, at *11 (S.D.N.Y. Apr. 27, 2020) ("[C]ourts have the authority to order those held in violation of their due process rights released, notwithstanding § 1226(c)").

Respondents acknowledge that "courts have generally held that prolonged detention under Section 1226(c) that is unreasonable and arbitrary is subject to challenge under the Due Process Clause" but argue that Mr. Portuondo's continued detention remains reasonable and lawful. (DE 10). According to Respondents, "the touchstone for this analysis is whether mandatory detention without a bond hearing under the circumstances of the case is so 'unreasonable or unjustified' that it amounts to an arbitrary deprivation of liberty." *Id.* (quoting *Misquitta v. Warden Pine Prairie ICE Processing Ctr.*, 353 F. Supp. 3d 518, 525 (W.D. La. 2018)); *see also Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1217 (11th Cir. 2016), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018) ("As instructed by *Zadvydas* and *Demore*, we begin with the core principle that 'the reasonableness of any given detention pursuant to § 1226(c) is a function of whether it is necessary to fulfill the purpose of the statute.'").

In *Misquitta*, the court explained that following the Supreme Court's ruling in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), courts adopt a "case-by-case approach that . . . examine[s] a number of case specific-factors to determine whether a given period of detention is unreasonable or arbitrary." *Misquitta*, 353 F. Supp. 3d at 524. Respondents claim that "courts, including the district courts in the Eleventh Circuit, have relied primarily on the following factors to make their determination: (1) length of the detention without a

6

bond hearing, (2) the cause of any delays (including the party responsible for the delay), (3) whether any impediments exist to final removal if ordered, (4) the length of the petitioner's criminal sentences as compared to the length of mandatory detention and (5) whether the facility for civil immigration detention is meaningfully different from a penal institution for criminal detention." (DE 10). Respondents acknowledge that "[t]hese factors must be tied back to the ultimate question for the court: has prolonged detention become unreasonable, unjustified, or arbitrary in light of the purpose of Section 1226(c)." *Id*. As *Misquitta* recognizes, courts may examine an array of factors[5] but ultimately, the determination of whether "detention [has] become so unreasonable and arbitrary that it violates a petitioner's right to due process" hinges on an individualized assessment "of whether section 1226(c) violates due process *as applied* to the petitioner before the court." *Misquitta*, 353 F. Supp. 3d at 525–26. Based on the specific facts here, the Court finds that Mr. Portuondo's continued detention has become unreasonable such that it violates his right to due process.

As stated above, Mr. Portuondo has been detained for nearly 10 months without a bond hearing or a scheduled hearing on his removal. "Given that Congress and the Supreme Court believed that most removal proceedings would be completed within five months, and the Supreme Court provided for a six-month rule in Zadvydas, the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past those thresholds." *Sopo v. U.S.*

---

[5] Mr. Portuondo relies on the following three: (1) "whether the noncitizen has raised a 'good faith' challenge to removal—that is, the challenge is 'legitimately raised' and presents 'real issues.'"; (2) "reasonableness is a 'function of the length of the detention,' with detention presumptively unreasonable if it lasts six months to a year"; and (3) "the likelihood that detention will continue pending future proceedings." (DE 1)

*Attorney Gen.*, 825 F.3d 1199, 1217 (11th Cir. 2016) (internal quotations omitted), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018). Notwithstanding the length of time Mr. Portuondo has been detained, Respondents claim that there has been no unreasonable delay by the Government in pursuing and completing immigration proceedings and, further, there are no impediments to Mr. Portuondo's removal at the conclusion of the proceedings (whenever they might occur). Although Respondents represent that Mr. Portuondo has a hearing scheduled for May 7, 2020 on his application for relief from removal, Mr. Portuondo's counsel advised the Court during the telephonic conference that the upcoming hearing is only a calendar call where a future date to adjudicate Mr. Portuondo's application for relief will be scheduled. Respondents did not dispute this clarification. Accordingly, as of the date of this Order, Mr. Portuondo's case remains pending indefinitely in a period where matters are being delayed due to the COVID-19 pandemic.

Respondents also rely on data from an ICE Enforcement and Removal Operations report to establish that there is no impediment to deporting Cuban nationals like Mr. Portuondo. (DE 10). However, the report cited provides data from Fiscal Year 2019—when removals were not delayed or cancelled due to COVID-19. Courts, including a judge in this district, have found that the current pandemic poses an impediment to the removal of detainees. *See, e.g., Ferrer v. Barr*, No. 19-25265-CIV-CMA (S.D. Fla. Apr. 14, 2020) ("Petitioner shows the COVID-19 pandemic is likely to affect future flights to Venezuela. Respondents fail to rebut this point."); *see also Ali v. Dep't of Homeland Sec.*, No. 4:20-CV-0140, 2020 WL 1666074 (S.D. Tex. Apr. 2, 2020) ("[D]ue to grave circumstances beyond the control of either party, the Government can no longer remove [p]etitioner to

8

Pakistan in the foreseeable future. The COVID-19 pandemic has now reached at least 171 countries and disrupted international travel and the regular course of business both in the United States and around the world.").

In *Ferrer*, the court found that the COVID-19 pandemic is likely to affect the reasonable foreseeability of removal from the United States. *Ferrer*, No. 19-25265-CIV-CMA (S.D. Fla. Apr. 14, 2020). The petitioner in *Ferrer* was convicted of cocaine trafficking and sentenced to seven years of imprisonment. After completing his sentence in June 2019, he was taken into ICE custody and detained at Krome. Like Mr. Portuondo, he "remained in custody for well over six months." *Id.* And although the parties disputed whether U.S.-Venezuela relations would permit removal to Venezuela, the respondents in *Ferrer* did not address COVID-19's impact on international travel. Respondents had twice failed to remove the petitioner—a flight scheduled to Venezuela in January 2020 was canceled, and one in March 2020 was canceled. The respondents did not explain why the first flight was cancelled, but "to rebut [the] [p]etitioner's contention that poor U.S.-Venezuela relations make it unlikely he will be removed", the respondents pointed to the fact that the petitioner's second flight was cancelled due to COVID-19. *Id.* Despite the respondents' advising the court that the petitioner is now rescheduled to be removed the week of July 6, the court still found their assertion insufficient in light of the ongoing health crisis and the uncertainty of his actual removal in July. Granting the petition for habeas corpus, the court found that "[a]s [r]espondents have already detained [p]etitioner for several months past the presumptively reasonable period and continue to delay removal, keeping [p]etitioner in custody for at least another three months would be unreasonable." *Id.*

The petitioner in *Ferrer* was transferred to Krome in June 2019 and ordered released on April 14, 2020. Here, Mr. Portuondo was transferred to Krome on July 5, 2019; he has been detained for nearly the same amount of time as the petitioner in *Ferrer*. And, considering the length of the criminal sentences in relationship to the length of the mandatory detention, it should be noted that Mr. Portuondo received half the sentence the petitioner in *Ferrer* received. Moreover, although the petitioner in *Ferrer* had specific medical needs "due to a birth defect called arthrogryposis", he did not appear to be as medically vulnerable to serious illness or death if infected with COVID-19 as Mr. Portuondo currently is.

It is undisputed that Mr. Portuondo is suffering from prostate cancer and needs medical treatment, that his health is deteriorating, and that while all persons are at risk of being infected by COVID-19, he faces a particularly higher risk because of his medical conditions. Accordingly, Mr. Portuondo's nearly 10 month detention, combined with the ongoing threat of COVID-19, makes his continued detention unreasonable in light of his uniquely precarious health situation. Moreover, to assure Respondents that he will not fail to appear for removal hearings, the purpose underlying Section 1226(c), Mr. Portuondo has submitted a detailed release plan as well as a sworn declaration by his local sponsor[6], Corey Fields, stating that he is willing to act as a surety and that he "understand[s] that if Angel Portuondo fails to appear the Court may impose a monetary fine against [him] up to $25,000." (DE 23-1). Finally, as Respondents aver, the Court must ultimately consider whether "prolonged detention become[s] unreasonable, unjustified, or arbitrary in light of

---

[6] Mr. Portuondo has been married to a U.S. citizen for almost 4 years, but his partner lives in North Carolina. (DE 1). Accordingly, Mr. Portuondo's release plan provides that he will reside in an efficiency at the house of his longtime friend and sponsor, Corey Fields in Miami, Florida. (DE 17; DE 23).

10

the purpose of Section 1226(c)." (DE 10). Given Mr. Portuondo's rapidly deteriorating health in the midst of the extraordinary threat posed by this pandemic, the Court finds that after 10 months, his continued detention in light of his medical situation is unreasonable.

Accordingly, based on the individualized assessment of Mr. Portuondo's worsening health and prolonged detention with the ongoing threat of COVID-19, it is **ORDERED AND ADJUDGED** that:

1. The Petition (DE 1) is **GRANTED**.

2. Petitioner Angel Portuondo shall be released from custody under appropriate conditions of supervised release, including any electronic monitoring required by the Respondents and home confinement at 5730 SW 62nd Terrace, Miami, Florida 33143.

3. Mr. Portuondo shall only be permitted to leave home confinement to attend necessary medical appointments and court proceedings.

4. Mr. Portuondo shall check in with his attorney twice weekly, and his counsel shall file a weekly status report confirming that he remains in home confinement. Counsel shall also file a bi-monthly status report outlining Mr. Portuondo's medical condition.

5. Should Mr. Portuondo's medical condition improve, the Court will revisit this Order on the Respondents' request.

**DONE AND ORDERED** in Chambers in Miami, Florida, this <u>7th</u> day of May, 2020.

_____
KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE