**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-21553-Civ-COOKE/GOODMAN

**PATRICK GAYLE**, *et al.*,

      Petitioners-Plaintiffs, on behalf of
themselves and those similarly situated,

**v.**

**MICHAEL W. MEADE**, *et al.*,

      Respondents-Defendants.

_____/

## PETITIONERS' NOTICE OF FILING DECLARATIONS

Petitioners, by and through undersigned counsel, submit this notice of filing of the following declarations:

1. Danny Ruiz Garcia;

2. Maykel Valera Ramirez;

3. Maikel Carrasco Polo;

4. Lathario Glenwood Rolle;

5. Astley Thomas;

6. Windys Faro Monge;

7. Ruben Diaz;

8. Steve Cooper; and

9. Hythalo Gonzalez-Ortiz.

Date:  June 1, 2020

Respectfully Submitted,

*/s/ Scott M. Edson*
Scott M. Edson, Esq.
Florida Bar No. 17258

Gregory P. Copeland*
Sarah T. Gillman*
**RAPID DEFENSE NETWORK**
11 Broadway, Suite 615
New York, NY 10004
Tel.: (212) 843-0910
Fax: (212) 257-7033
gregory@defensenetwork.org
sarah@defensenetwork.org
*Appearing Pro Hac Vice*

Scott M. Edson, Esq.
Florida Bar No. 17258
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW, STE 200
Washington, DC 20006-4707
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737
sedson@kslaw.com

Rebecca Sharpless
Florida Bar No. 0131024
Romy Lerner
Florida Bar No. 116713
**UNIVERSITY OF MIAMI SCHOOL OF
LAW - IMMIGRATION CLINIC**
1311 Miller Drive Suite, E-273
Coral Gables, Florida 33146
Tel: (305) 284-3576
Fax: (305) 284-6092
rsharpless@law.miami.edu

Kathryn S. Lehman
Florida Bar No.: 95642
Chad A. Peterson
Florida Bar No.: 91585
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
klehman@kslaw.com
cpeterson@kslaw.com

Paul R. Chavez
FL Bar No. 1021395
Maia Fleischman
FL Bar No. 1010709
**SOUTHERN POVERTY LAW CENTER**
2 S. Biscayne Blvd., Ste. 3200
Miami, FL 33101
Tel: (305) 537-0577
paul.chavez@splcenter.org
maia.fleischman@splcenter.org

Mark Andrew Prada
Fla. Bar No. 91997
Anthony Richard Dominguez
Fla. Bar No. 1002234
**PRADA URIZAR, PLLC**
3191 Coral Way, Suite 500
Miami, FL 33145
Tel.:  (786) 703-2061
Fax:   (786) 708-9508
mprada@pradaurizar.com
adominguez@pradaurizar.com

Lisa Lehner
Florida Bar No. 382191
**AMERICANS FOR IMMIGRANT JUSTICE**
5355 NW 36 Street, Suite 2201
Miami, FL 33166
Tel: (305) 573-1106 Ext. 1020
Fax: (305) 576-6273
Llehner@aijustice.org

Andrea Montavon McKillip
Florida Bar No. 56401
**LEGAL AID SERVICE OF BROWARD COUNTY, INC.**
491 North State Road 7
Plantation, Florida 33317
Tel. (954) 736-2493
Fax (954) 736-2484
amontavon@legalaid.org

*Counsel for Petitioners-Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of June, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

*/s/ Scott M. Edson*
Scott M. Edson, Esq.
Florida Bar No. 17258
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW, STE 200
Washington, DC 20006-4707
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737
sedson@kslaw.com

*Attorney for Petitioners-Plaintiffs*

## DECLARATION OF DANNY RUIZ GARCIA

I, Danny Ruiz Garcia, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1.     I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2.     I am currently detained at Broward Transitional Center (BTC). I have been detained here since March 26, 2020. I was previously detained in Pine Prairie ICE Processing Center in Louisiana.  I provided a declaration in the Gayles case on May 8, 2020. Since that time, conditions at BTC have not improved.

3.     I suffer from permanent lung damage on my right lung from pneumonia and a surgery when I was a child. On May 31, 2020 I was seen by a cardiologist at BTC and he told me I had a clean bill of health. I am not a doctor, but I have had this ailment since I was a child and do not know how this is possible. The doctor told me that even if I did have this issue with my lung, I would not be at special risk for COVID-19. I am not sure this is accurate. I did not question this though, for fear of being seen as problematic and then being transferred to a facility with even worse conditions than BTC.

4.     I am afraid of getting COVID-19 here at BTC. There are 19 detainees that tested positive for COVID-19 that I know of and it is possible I have had contact with them at some point in the facility in the past (i.e., playing soccer in the yard), especially since many are/were asymptomatic.

5.     As I stated in my last declaration, at BTC we get masks every three days, but virtually no one wears them. Mask wearing amongst the detainees is not enforced. BTC guards began wearing masks to protect themselves once cases of COVID-19 within the detention center were confirmed.

6.     There is a hand sanitizer pump by the cafeteria and medical area, but none near the telephones. We are only given hand sanitizer before eating. There is no hand sanitizer available upon request outside of eating areas.

7.      We are all given shower gel to wash ourselves once a week. It is not enough to last the week.

8.      The telephones used by detainees are generally not disinfected in-between all uses. As far as I've observed, the phones are only wiped down after detainees that tested positive for COVID-19 use them. Phones labeled for use by quarantined detainees only are often used by other detainees anyways, at a detainee's discretion, without BTC staff intervention.

9.      I believe the bathrooms in the detention center are cleaned twice a week. Rooms are cleaned by the detainees at the discretion of the detainees. I know many rooms are not cleaned on a regular basis.

10.     We are five people sleeping in my room. Most rooms have six people. There are three bunk beds in each room. It is impossible to stay six feet away from my roommates.

11.     When we wait in line in the cafeteria at BTC we stand next to one another. When we sit down to eat in the cafeteria there is an empty stool between each one of us, but we are still not six feet apart from each other as we eat. We cannot choose to eat at another time when the cafeteria is less crowded. We either eat then or not at all.

12.     In the recreational areas, like by the billiards tables, there are three tables with two people at each. The area is small and I feel it is impossible to practice social distancing at any point. In the yard there is probably enough space for people to social distance, but they don't.

13.     I have not received any education regarding hygiene or how to prevent the spread of COVID-19 at BTC. Recently, some posters were hung in the facility in the medical clinic area and by the seating area in the yard, but many are too small to notice. What I know about COVID-19 is all from watching the news and speaking to family members.

14.     I have authorized Elanny Lago, law student intern at the University of Miami School of Law Immigration Clinic,  to sign this declaration on my behalf

given the difficulty of arranging visitation and travel in light of the current COVID-19 pandemic. If required to do so, I will provide a signature when I am able to do so.

I declare under penalty of perjury that the things described above are true and correct.

Executed on June 1, 2020.

*Elanny Lago*
_____
Elanny Lago, on behalf of Danny Ruiz Garcia

## CERTIFICATION

I, Elanny Lago, declare that I am proficient in English and Spanish languages.

On June 1, 2020, I read the foregoing declaration to Danny Ruiz Garcia and orally translated it faithfully and accurately into Spanish in the presence of the declarant. After I completed translating the declaration, the declarant verified that the contents of the foregoing declaration are true and accurate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 1, 2020.

*Elanny Lago*
_____
Elanny Lago

## <u>LEGAL INTERN DECLARATION</u>

I, Elanny Lago, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. My name is Elanny Lago. I am a law student intern for the Immigration Clinic at the University of Miami School of Law.

2. I signed the declarant's declaration on his behalf with his express consent out of necessity in light of the COVID-19 pandemic.

3. ICE is now requiring legal visitors to provide and wear personal protective equipment, including disposable vinyl gloves, surgical masks, and eye protection while visiting any detention facility. These supplies are not easily accessible, given the increase in demand. Any available supplies are prioritized for hospitals and other medical facilities that are experiencing dangerous shortages.

4. In light of the above, to protect public health, I did not travel to Broward Transitional Center.

5. I spoke with Danny Ruiz Garcia via skype and drafted the declaration based on the information he provided. I read the declaration to him in the Spanish language and confirmed the accuracy of the information therein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 1, 2020.

*Elanny Lago*

_____

Elanny Lago

## DECLARATION OF MAYKEL VALERA RAMIREZ

I, Maykel Valera Ramirez, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2.      I am currently detained at Broward Transitional Center (BTC). As of May 31, 2020, I have been detained at BTC for two months and twelve days. I was previously detained in Port Isabel Detention Center in Texas.

3.      I suffer from hypertension. I fear getting COVID-19 here at BTC.

4.      A few weeks ago in BTC we began getting masks every three days. If the mask gets broken or soiled before then, you must wait the three days to get a new one. Virtually no one wears the masks and there is no enforcement to do so. Also, not all BTC staff members wear masks at all times.

5.      There has been a hand sanitizer pump installed by the cafeteria and medical area, but I have not noticed hand sanitizer pumps anywhere else at BTC, for example near the telephones or common areas that detainees use. My room is also given one bottle of hand soap, once a week, for the six of us in the room to share. It is not enough hand soap and while we can ask for more, there are times we are not given more because they ran out.

6.      We are each given two small bottles of shower gel a week and it must be rationed. It is often not enough to last the week. Frequently, like this week, we were only given one bottle. I have not been able to get additional shower gel.

7.      Every morning, except for Sundays, we are given cleaning supplies to clean our rooms. There is a cleaning cart that we then have to wait in line to use, that is moved from room to room without being disinfected in-between uses. I am not sure how many cleaning carts there are, but I know there are few and we must share them. I have seen people not be able to clean their rooms because the time allotted to clean had ended before they could get a turn to use the cleaning cart.

8.      As far as I have observed, the general areas of the detention center are cleaned once a day in the mornings and the shared bathrooms are cleaned once a week.

9.      There are six people per room. We sleep on three sets of bunk beds set up in a U-shape. The rooms are small, and so social distancing is not possible. All rooms are like this.

10.      Being at least six feet apart is not possible and not enforced in any area of the detention center because there is not enough space, there is overcrowding, and people do not follow the rules.  Recently, lines that indicate social distances were painted on the ground in the cafeteria, but they are never used. When we sit down to eat in the cafeteria there is an empty stool between each one of us, but we are still not six feet apart from each other as we eat. You cannot request to eat at a different time with less people in the room. You must eat then or not at all.

11.      I have not received any education regarding hygiene or how to prevent the spread of COVID-19 at BTC. There are only a few posters in the facility and I have only seen them in the medical clinic area. The posters are mostly in English, only a few being in Spanish.

12.      When I was transferred to BTC I was sick with what appeared to be a common cold or flu, but I was not placed in quarantine. I was not feeling well, and was coughing often, but was not given any medication to treat my symptoms by the medical clinic staff. Only after explaining my situation to a guard several times, did he finally help me by taking me to the medical clinic and speaking to the staff there himself. It was only after the guard's intervention that they took me seriously in the medical clinic and gave me medication.

13.      I am not sure if I have been exposed to someone who has tested positive for COVID-19, but two of my roommates had been in contact with a detainee who tested positive for COVID-19. My roommates were never quarantined and have had contact with me, given the lack of social distancing in our shared room.

14.     BTC staff members initially denied allegations that certain detainees had tested positive for COVID-19, but they eventually confirmed to us that there had been at least 19 cases of COVID-19 in the facility.

15.     I have authorized Elanny Lago, law student intern at the University of Miami School of Law Immigration Clinic, to sign this declaration on my behalf given the difficulty of arranging visitation and travel in light of the current COVID-19 pandemic. If required to do so, I will provide a signature when I am able to do so.

I declare under penalty of perjury that the things described above are true and correct.

Executed on June 1, 2020.

*Elanny Lago*

_____
Elanny Lago, on behalf of Maykel Valera Ramirez

CERTIFICATION

I, Elanny Lago, declare that I am proficient in English and Spanish languages.

On June 1, 2020, I read the foregoing declaration to Maykel Valera Ramirez and orally translated it faithfully and accurately into Spanish in the presence of the declarant. After I completed translating the declaration, the declarant verified that the contents of the foregoing declaration are true and accurate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 1, 2020.

*Elanny Lago*

_____
Elanny Lago

## **<u>LEGAL INTERN DECLARATION</u>**

I, Elanny Lago, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. My name is Elanny Lago. I am a law student intern for the Immigration Clinic at the University of Miami School of Law.

2. I signed the declarant's declaration on his behalf with his express consent out of necessity in light of the COVID-19 pandemic.

3. ICE is now requiring legal visitors to provide and wear personal protective equipment, including disposable vinyl gloves, surgical masks, and eye protection while visiting any detention facility. These supplies are not easily accessible, given the increase in demand. Any available supplies are prioritized for hospitals and other medical facilities that are experiencing dangerous shortages.

4. In light of the above, to protect public health, I did not travel to Broward Transitional Center.

5. I spoke with Maykel Valera Ramirez via skype and drafted the declaration based on the information he provided. I read the declaration to him in the Spanish language and confirmed the accuracy of the information therein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 1, 2020.

*Elanny Lago*

_____

Elanny Lago

## DECLARATION OF MAIKEL CARRASCO POLO

I, Maikel Carrasco Polo, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1.     This declaration is based on my personal knowledge and if called as a witness, I could and would testify truthfully to these matters.

2.     I am thirty-eight years old.

3.     I am currently detained at Broward Transitional Center (BTC) since March 20, 2020.

4.     I am particularly susceptible to COVID-19 because I am asthmatic and have shortness of breath. Also, I am unable to obtain proper medication for my asthma at BTC. To treat my asthma, I use an inhaler. However, I only have one spray which I brought from a different facility and it is almost empty. I also take other medication. Although I have repeatedly requested a refill for my inhaler and my medication, I have not received either. One time, in the middle of the night, I had shortness of breath and asked to have some water, but I was not allowed to drink water. I thank God that I have not experienced any other COVID-19 related symptoms. But I am afraid of catching it and dying here.

5.     At BTC, we are provided with masks, but very few detainees use them to protect themselves and others from COVID-19. We were never given instructions on how and when to wear masks. There are no repercussions for not wearing a mask. New masks are handed out every three days, but only to those who have their old mask at the time the new masks are available. Most detainees do not bother to get a new mask.

6.     Some guards and staff members wear masks while others do not.

7.     A hand sanitizer pump was installed outside the cafeteria, but it is often empty. There is one outside of the medical center as well but, again, it is often empty.

8.      We are given a small amount of shampoo each week to wash ourselves. The amount of shampoo is so small that sometimes it does not last the whole week and we must shower with only water. When I have asked for more, I have been told either it is not available or I would get it later but I never have.

9.      I have never received any training regarding COVID-19. There is one wall within the center that has a few small signs about COVID-19, but it is not in the common areas, so it is difficult to stop and read them.

10.     There are six detainees assigned to each room, so it is impossible to practice social distancing in our rooms. We are locked in our room for most of the day. In the cafeteria, we are not able to maintain social distance. During our recreation time, no one practices social distancing and it is not enforced. If the cafeteria or recreation areas are overcrowded, we are not able to choose to eat or take recreation time when it is less crowded.

11.     We detainees are responsible for cleaning our own rooms. I try to keep my room as clean as possible because of allergies and my asthma but we are not provided with enough cleaning supplies. The supplies are passed from room to room and twice by the time they got to my room, there was nothing left. As far as I know, the communal bathrooms are cleaned just once a week.

12.     I have been exposed to many people with COVID-19 symptoms. Detainees with fevers just take pills for relief and do not disclose their fevers. Many detainees are coughing and sneezing. I try to stay in my room to isolate myself, but my roommates bring others into our room. Sometimes, there are up to twelve people in our room. There is a new roommate in our room who is constantly coughing. Unfortunately, we do not speak the same language so I cannot communicate with him.

13.     The guards and staff at BTC take no action when detainees appear sick. The staff interacts with all detainees in the same manner. When a sick detainee is

served at the commissary or the cafeteria, the staff then helps healthy detainees without changing their gloves. I, along with others, truly fear that we will die here.

14.     I have authorized Taylor Larson, law student intern at the University of Miami School of Law Immigration Clinic, to sign this declaration on my behalf given the difficulty of arranging visitation and travel in light of the current COVID-19 pandemic. If required to do so, I will provide a signature when I am able to do so.

I declare under penalty of perjury that the things described above are true and correct.

Executed on June 1, 2020.

*Taylor M. Larson*
_____
Taylor M. Larson, on behalf of Maikel Carrasco Polo

## **CERTIFICATION**

I, Roseliris Dominguez, declare that I am proficient in English and Spanish languages.

On June 1, 2020, I read the foregoing declaration to Maikel Carrrasco Polo and orally translated it faithfully and accurately into Spanish in the presence of the declarant. After I completed translating the declaration, the declarant verified that the contents of the foregoing declaration are true and accurate.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on June 1, 2020.

*Roseliris Dominguez*

_____
Roseliris Dominguez

## **LEGAL INTERN DECLARATION**

I, Taylor M. Larson, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. My name is Taylor M. Larson. I am a law student intern for the Immigration Clinic at the University of Miami School of Law.

2. I signed the declarant's declaration on his behalf with his express consent out of necessity in light of the COVID-19 pandemic.

3. ICE is now requiring legal visitors to provide and wear personal protective equipment, including disposable vinyl gloves, surgical masks, and eye protection while visiting any detention facility. These supplies are not easily accessible, given the increase in demand. Any available supplies are prioritized for hospitals and other medical facilities that are experiencing dangerous shortages.

4. There are documented cases of COVID-19 in all fifty U.S. states and most inhabited U.S. territories. The Centers for Disease Control and Protection (CDC) has issued statements warning that individuals are at a higher risk of infection when traveling.

5. In light of the above, to protect public health, I am not able to travel to Broward Transitional Center.

6. I spoke with Maikel Carrasco Polo via skype and drafted the declaration based on the information he provided.  Roseliris Dominguez read the declaration to him in the Spanish language, and confirmed the accuracy of the information therein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 1, 2020.

*Taylor M. Larson*

_____

Taylor M. Larson

## DECLARATION OF LATHARIO GLENWOOD ROLLE

I, Lathario Glenwood Rolle, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2.      I am currently detained at Krome Service Processing Center ("Krome").

3.      I entered ICE custody on January 25, 2020. I was initially detained at Glades County Detention Center ("Glades"). I was transferred to federal criminal custody for a reentry charge on February 25, 2020. I was in federal custody for about two months. On May 4, 2020, ICE picked me up from federal custody, and I was processed into ICE's custody again. On May 5, 2020, I was taken to Baker County Jail ("Baker"). On May 22, 2020, I was transferred from Baker to Krome.

4.      I am thirty-one years old. I am a Bahamian national.

5.      I suffer from asthma and high blood pressure.

6.      On May 22, 2020, I was transferred with approximately 7 people out of Baker to Krome. On the way, we stopped in Orlando and picked up approximately another 5 people. From Baker to Orlando, we were in a van, sitting in very close proximity, side by side. While in Orlando, we switched from the van to a larger bus. The officers who were with us also switched with another two officers. Only one of the two new officers wore a mask. In the larger bus, I was able to sit in a row by myself, but everyone else was sitting side by side. None of us were given masks at any point.

7.      We also stopped at Broward Transitional Center ("BTC") and the two officers who were with us switched again with another two officers. Those new two officers did wear masks.

8.    During the transfer, we were not provided any hand sanitizer or wipes at any point. There was also no water to wash our hands with after using the bathroom.

9.    When we arrived at Krome, we were all put straight into general population. The guards in booking at Krome said there was no need for us to be in quarantine because we had been in quarantine at Baker. I did not understand why they did this when we picked up other people in Orlando.

10.    None of the detained individuals who were transferred were given a mask at any point during the transfer.

11.    When we arrived at Krome, even the processing guards noted that they were annoyed we did not have masks and said if we had a temperature higher than 99 degrees, they would send us back to Baker.

12.    Since I have been at Krome, there have been new people added to my pod. Some have been people transferred from other ICE facilities, such as Broward Transitional Center and Baker. Others were brought into ICE custody from prison.

13.    This morning there were about 60 people in my pod. There were some who were taken out to be deported and two people were taken out to be put in medical isolation. There are currently about 45 people in my pod. My pod itself is not under quarantine at this time, despite two people being taken out for medical isolation.

14.    I notice a lot of people are coughing and sneezing in my pod. This makes me feel very uncomfortable, especially because I am at higher risk of serious illness if I contract the coronavirus.

15.    We are definitely not able to practice social distancing. I sleep in a lower bunk. I have people sleeping directly next to me on both sides, as well as someone in the bunk above me.

16.   There is no way to practice social distancing at all in any part of the pod. When we use the bathroom, the shower, when we are in bed, or eating, it feels like there are people everywhere.

17.   I have authorized Sawyeh Esmaili to sign on my behalf given the difficulty of arranging visitation and travel in light of the current COVID-19 pandemic. If required to do so, I will provide a signature when I am able to do so.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 29, 2020 at Miami, Florida.

_____
Sawyeh Esmaili, on behalf of Lathario Glenwood Rolle

## ATTORNEY DECLARATION

I, Sawyeh Esmaili, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.  My name is Sawyeh Esmaili. I am a licensed attorney in good standing in the state of Florida.

2.  Out of necessity in light of the COVID-19 pandemic, I signed Lathario Glenwood Rolle's declaration on his behalf and with his express consent.

3.  ICE is now requiring legal visitors to provide and wear personal protective equipment, including disposably vinyl gloves, surgical masks, and eye protection while visiting any detention facility. These supplies are not easily accessible, given the increase in demand. Any available supplies are prioritized for hospitals and other medical facilities that are experiencing dangerous shortages.

4.  There are documented cases of COVID-19 in all fifty U.S. states and most inhabited U.S. territories. The Centers for Disease Control and Protection (CDC) has issued statements warning that individuals are at a higher risk of infection when traveling. I am a resident of Miami Dade County, Florida and unable to travel to visit Krome Service Processing Center.

5.  In light of the above, to protect public health, I am not able to travel to Krome Service Processing Center.

6.  I spoke with Lathario Glenwood Rolle on the phone, read the declaration to him, and confirmed the accuracy of the information therein. Lathario Glenwood Rolle has confirmed the accuracy of the information therein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 29, 2020 at Miami, Florida.

_____

Sawyeh Esmaili, on behalf of Lathario Glenwood Rolle

## DECLARATION OF ASTLEY THOMAS

I, Astley Thomas, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2.      I am detained at Glades County Detention Center ("Glades").

3.      I entered ICE custody on August 5, 2019. I was initially detained at Krome Service Processing Center ("Krome"). I was transferred from Krome to Glades on May 3, 2020.

4.      I am fifty years old. I am a Jamaican national.

5.      I suffer from asthma, which I have lived with since I was a teenager.

6.      I submitted a release request to ICE on May 14, 2020, but I have not received a response yet.

7.      Approximately on May 5, 2020, Glades staff began to spray the pods with a cleaner called "Mint." The pod is sprayed while we are still inside of it. When they spray the harsh chemicals, it causes me to experience difficulty breathing.

8.      There are currently 69 people in my pod.

9.      On May 27, 2020, two of my pod-mates fainted in my pod. This happened at different times but on the same day. One of the guys fainted in the bathroom. I believe it was because his temperature was so high because I noticed he was very sweaty when the officer went to pick him up from the bathroom. The other man fainted on the second floor of the unit. The same officer went to go get him. Once he regained consciousness, the officer helped him down the stairs and waited with him to be escorted out of the pod. Both men were escorted out of the pod on a wheelchair. The nurse who came with the wheelchair at one point said, "the virus is

in the pod," when she came to pick up one of the men. This made me feel very scared.

10. On May 27, 2020, a captain and a maintenance man came into the pod and began to measure the distances between the bunk beds. They moved about three people upstairs, which I believe was their attempt at creating some sort of social distancing inside the pod. However, the population in the pod remains the same, and we are still not able to practice social distancing.

11. I do not believe they can make it so that we can practice social distancing. I sleep with someone just two feet away from me. We are in danger here.

12. On the morning of May 28, 2020, a nurse came in to take the temperatures of everyone in the pod. I was told I had a 100-degree fever. After the nurse informed me of my fever, she wrote down my temperature and walked out. Despite my fever, I am still in the pod with others. I am also experiencing a little bit of difficulty breathing and am only able to breathe out of one nostril. I also have no appetite.

13. All I have received for my fever is a small cup of Gatorade or other flavored drink and two Tylenols.

14. There are about fifteen other people in my pod who have fevers as well.

15. I am worried because I have asthma and I am at high risk if I contract the virus.

16. In the afternoon of May 28, 2020, I requested to go to the medical unit, but I was told that I could not go. An officer told me that they are not taking anyone in medical right now. I was not given any other reason or explanation.

17. We have not been provided any hand sanitizer. We only receive soap once a week but usually run out before the refill day, which leads to us going without soap sometimes for several days. I have to buy body wash from the commissary to use as soap when there is no soap available in the pod.

18.    I have authorized Sawyeh Esmaili to sign on my behalf given the difficulty of arranging visitation and travel in light of the current COVID-19 pandemic. If required to do so, I will provide a signature when I am able to do so.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 29, 2020 at Miami, Florida.

_____
Sawyeh Esmaili, on behalf of Astley Thomas

## ATTORNEY DECLARATION

I, Sawyeh Esmaili, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.  My name is Sawyeh Esmaili. I am a licensed attorney in good standing in the state of Florida.

2.  Out of necessity in light of the COVID-19 pandemic, I signed Astley Thomas' declaration on his behalf and with his express consent.

3.  ICE is now requiring legal visitors to provide and wear personal protective equipment, including disposably vinyl gloves, surgical masks, and eye protection while visiting any detention facility. These supplies are not easily accessible, given

the increase in demand. Any available supplies are prioritized for hospitals and other medical facilities that are experiencing dangerous shortages.

4.   There are documented cases of COVID-19 in all fifty U.S. states and most inhabited U.S. territories. The Centers for Disease Control and Protection (CDC) has issued statements warning that individuals are at a higher risk of infection when traveling. I am a resident of Miami Dade County, Florida and unable to travel to visit the Glades County Detention Center.

5.   In light of the above, to protect public health, I am not able to travel to Glades County Detention Center.

6.   I spoke with Astley Thomas on the phone, read the declaration to him, and confirmed the accuracy of the information therein. Astley Thomas has confirmed the accuracy of the information therein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 29, 2020 at Miami, Florida.

_____
Sawyeh Esmaili, on behalf of Astley Thomas

## DECLARATION OF WINDYS FARO MONGE

I, Windys Faro Monge, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2.      My name is Windys Faro Monge and I am 29 years old and a citizen of Haiti. I am currently detained at the Glades County Detention Center ("GCDC") in Moore Haven, Florida. I have been in the custody of Immigration and Customs Enforcement ("ICE") since approximately January 31, 2020. I was previously detained at the Krome Service Processing Center ("Krome") in Miami, Florida. On or about April 21, 2020, I was transferred to GCDC.

3.      I have lived in the United States for about fourteen years. My wife and child also live in the United States as well as my cousins and uncle.

4.      I experience complex mental health issues and have been diagnosed at different points with depression, anxiety, and schizoaffective disorder. I currently take two psychiatric medications daily: Prozac and Abilify.

5.      When I first arrived at GCDC, I was told that people who worked in the kitchen had tested positive for the coronavirus.

6.      I am currently detained in Pod B1. There are approximately 70 people in the pod. About five days ago, the officers started wearing face shields in addition to their masks and gloves whenever they enter the pod. The nurses who enter the pod now wear masks and protective suits; the ones doctors would wear if they are doing surgery. We have been told that people are no longer able to move between pods. We no longer are taken to the recreation yard on the regular schedule. Yesterday, we were taken to recreation around one p.m., usually we

attend recreation at around eight or nine a.m. in the morning. It seems that we are on some sort of lockdown now, but the GCDC have not provided any information on what is going on or whether people detained at the facility have recently tested positive for the coronavirus.

7.      About five days ago, the nursing staff at Glades starting to enter the pod each day to conduct temperature checks of each individual. Initially, they used a thermometer that was placed under your tongue, but now they have a thermometer that scans your forehead. At first, the nursing staff took our temperatures twice a day but now they will check our temperatures up to five times a day.

8.      About three days ago, the nurse took my temperature and stated that it was 106 degrees. The nurse told me to take showers and wash my hands. I did not receive any further medical attention.

9.      For about two days, my temperature ranged from 100 degrees to 106 degrees to 102 degrees. Every time my temperature was high the nurse told me to shower, wash my hands, and take pain medications.

10.     In addition to the high fever, I am experiencing body aches, trouble breathing out of my nose, dizziness, and chills. I feel like I have to cough but nothing comes out. Whenever I try to stand up, I feel light-headed. I started experiencing these symptoms about five days ago. I just feel terrible.

11.     After I started experiencing these symptoms, I put in a sick call request for medical attention. However, I have yet to be escorted to the medical department. On May 27 and May 28, 2020, the nurse came to the pod and gave me a cold pack, Gatorade, and some painkillers, but I am still feeling terrible. They refuse to take people to the medical department at GCDC or to the local hospital for assessment or treatment for coronavirus symptoms.

12.     The man who sleeps in the bed next to me is experiencing chest pains. On May 27, 2020, he was having trouble breathing. On May 28, 2020 in the morning, the nurse took his temperature and said it was 101.1 degrees. He has not been taken out of the pod for medical care.

13.     One person was taken out of the pod to go into quarantine about four or five days ago. He has since returned to the pod.

14.     There is an older man in his sixties in the same pod where I am. On May 27, 2020, he told the medical staff that his body was hurting him, he felt weak, and he could not move. The nurse only took his temperature. The nurse said that because he did not have a high temperature that the man did not need medical attention. The staff did not bring him to the medical department and just left him on his bed. It is troubling to see how the GCDC medical staff handled this situation.

15.     I would estimate that at least half of the people in the pod are sick right now; many people are experiencing body aches. Many people have the chills and lots of people are coughing. I have also seen the nursing staff walk by to bring medical supplies to other dorms.

16.     In addition to many people being sick, the pod is not cleaned properly on a regular basis. The people who clean the pod use the toilet water to clean the bathroom floors. There is water dripping from the fire alarm system on the wall that has to be mopped up frequently.

17.     The people who clean the pods spray a chemical solution that smells like bleach. They spray it on the tables and the railings. We are stuck inside the pod when it is sprayed. One man in the pod who sleeps near me has chronic obstructive pulmonary disease ("COPD") and he experiences chest pains whenever they spray this chemical in the pod. At Krome, when they sprayed a cleaning solution, we were allowed to wait outside until the spray went away. This does not happen at GCDC.

18.     Our clothes are taken to laundry and are returned to us still wet. We have no choice but to leave the clothes out to dry on our bunks or near the window or wear the wet clothes.

19.     I do not feel safe at GCDC. There is a feeling of hysteria in the pod and fear because of the lack of information we have and the fact that so many people are showing coronavirus symptoms right now.

20.     I previously requested release from detention based on my significant mental health issues and the risk I face to contracting COVID-19 in this facility, but ICE never responded to my request. The ICE officers do not come visit GCDC, therefore, the only way we can currently communicate with the officers is through phone calls. The officer assigned to my case has not answered my calls.

21.     I have authorized Lily Hartmann to sign on my behalf given the difficulty of arranging visitation and travel in light of the current COVID-19 pandemic. If required to do so, I will provide a signature when I am able to do so.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on May 28, 2020

_____
Lily Hartmann, on behalf of Windys Faro Monge

## LEGAL ASSISTANT DECLARATION

I, Lily Hartmann, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      My name is Lily Hartmann. I am a legal assistant at Americans for Immigrant Justice, a legal services organization located in Miami, Florida.

2.      I am a legal assistant working with the legal team in *Gayle v. Meade et al.* Out of necessity in light of the COVID-19 pandemic, I signed Windys Faro Monge's declaration on his behalf and with his expressed consent.

3.      Further, ICE is now requiring legal visitors to provide and wear personal protective equipment, including disposable latex gloves, surgical masks, and eye protection while visiting any detention facility. These supplies are not easily accessible, given the increase in demand. Any available supplies are prioritized for hospitals and other medical facilities that are experiencing dangerous shortages.

4.      There are documented cases of COVID-19 in all fifty U.S. states and most inhabited U.S. territories. The Center for Disease Control and Prevention ("CDC") issued statements warning that individuals are at a higher risk of infection while traveling. In addition, I am a resident of Miami-Dade County, Florida and unable to travel to visit Windys Faro Monge under a state "Stay at Home" order issued by the Governor of Florida Ron DeSantis on April 1, 2020. Furthermore, the State of Florida has a State of Emergency in place that the Governor renewed for sixty (60) additional days on Monday, May 11, 2020.

5.      In light of the above, to protect public health, I am not able to travel to the Glades County Detention Center to obtain Windys Faro Monge's signature.

6.      I spoke with Windys Faro Monge via phone call, read the declaration to him, and confirmed the accuracy of the information therein. Windys Faro Monge confirmed the accuracy of the information therein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 28, 2020 at Miami, Florida.

Lily Hartmann

## DECLARATION OF RUBEN DIAZ

I, Ruben Diaz, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2.      I am currently detained at Glades County Detention Center ("Glades").

3.      I entered ICE custody on June 25, 2019. I have been at Glades ever since.

4.      I am thirty-two years old. I am a Guatemalan national.

5.      I was diagnosed with schizophrenia, bipolar disorder, depression, and anxiety when I was eighteen years old. I continue to live with these mental health conditions.

6.      Approximately on May 23, 2020, I started to feel body aches, lightheaded, and the chills.

7.      On May 23, 2020, I had a fever of about 100.4 degrees. I was taken out of my pod to the medical unit in the facility. I was put in quarantine. I was housed in the medical unit until June 1, 2020. I was in a cell by myself the whole time.

8.      Just the day before, one of my "bunkees," or people who I share a sleeping area with, started to feel the same symptoms. He was taken to quarantine the day before I was.

9.      While I was in quarantine, I was tested twice for the coronavirus. I do not remember the exact dates of when I was tested.

10.     The last time I was tested for the coronavirus was either Thursday, May 28, 2020, or Friday, May 29, 2020. I was never told or given the results of that test.

11.     On June 1, 2020, the doctor told me that I tested positive for coronavirus. On the same day, I was taken back to the pod.

12.   I thought it was weird because I never really experienced any symptoms.

13.   As of now, I have not been told whether I still have the coronavirus. I do not know if I ever tested negative after my initial positive test results.

14.   In the "cubicle," where I sleep in the pod, there are five of us, including myself. I will be sleeping about four feet away from the person in the bed next to me.

15.   In the pod, we are not able to practice social distancing.

16.   I have authorized Sawyeh Esmaili to sign on my behalf given the difficulty of arranging visitation and travel in light of the current COVID-19 pandemic. If required to do so, I will provide a signature when I am able to do so.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 1, 2020 at Miami, Florida.

_____

Sawyeh Esmaili, on behalf of Ruben Diaz

## ATTORNEY DECLARATION

I, Sawyeh Esmaili, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.  My name is Sawyeh Esmaili. I am a licensed attorney in good standing in the state of Florida.

2.  Out of necessity in light of the COVID-19 pandemic, I signed Ruben Diaz's declaration on his behalf and with his express consent.

3.  ICE is now requiring legal visitors to provide and wear personal protective equipment, including disposably vinyl gloves, surgical masks, and eye protection while visiting any detention facility. These supplies are not easily accessible, given the increase in demand. Any available supplies are prioritized for hospitals and other medical facilities that are experiencing dangerous shortages.

4.  There are documented cases of COVID-19 in all fifty U.S. states and most inhabited U.S. territories. The Centers for Disease Control and Protection (CDC) has issued statements warning that individuals are at a higher risk of infection when traveling. I am a resident of Miami Dade County, Florida and unable to travel to visit Glades County Detention Center.

5.  In light of the above, to protect public health, I am not able to travel to Glades County Detention Center.

6.  I spoke with Ruben Diaz on the phone, read the declaration to him, and confirmed the accuracy of the information therein. Ruben Diaz has confirmed the accuracy of the information therein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 1, 2020 at Miami, Florida.

_____
Sawyeh Esmaili, on behalf of Ruben Diaz

## DECLARATION OF STEVE COOPER

I, Steve Cooper, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2.      My name is Steve Cooper and I am 39 years old and a citizen of Jamaica. I am currently detained at the Glades County Detention Center ("GCDC") in Moore Haven, Florida. I have been in the custody of Immigration and Customs Enforcement ("ICE") since May 2, 2019. I have been detained at GCDC the whole time.

3.      I have asthma but I do not receive treatment for it at GCDC. Previously, in Jamaica, I used an inhaler to manage my asthma, but I have not used an inhaler since 2015. Occasionally, when I do physical activity during recreation, like play soccer, I get short of breath.

4.      I also sustained an injury to my wrist after I fell out of my bunk at GCDC on approximately June 22, 2019. At the time, I was receiving medication for an infection related to a tooth extraction that was done by the dentist at GCDC. The medical staff at GCDC gave me the incorrect medication, and I fainted and fell off the bed. A specialist found that I had torn ligaments in my wrist, and on approximately February 13, 2020, I had an operation to put in screws and restructure my wrist. Since the operation took place, medical staff said that I was supposed to receive weekly physical therapy. However, I have been waiting three months to go to therapy. I still have pain in my wrist, and it has not healed.

5.      Currently, I am housed in Pod A1 where there are approximately 70 other people.

6.      In each section of Pod A1, there are a total of six beds. The section where I am assigned to sleep is currently full; there are five other people sleeping the section in addition to myself. I sleep on a bottom bed. The bottom beds are just a few inches apart. While in my bed, I can kick or touch the person in the bed next to mine.

7.      I have learned that a staff person who manages with the kitchen tested positive for COVID-19. Approximately five people who lived in my pod and worked in the kitchen became sick and never returned to the pod. Two people from Pod A1 who worked in the barbershop got sick and never came back.

8.      The GCDC staff does not say that our pod is on quarantine, but it seems like our movement is restricted. Now, only trustees, people enrolled in the work program, who sleep in Pod A1 can serve food in our pod. Previously, trustees from other pods would enter our pod. I have also been told that male trustees are no longer permitted to work in the kitchen. The barbershop is now closed. The law library is still open, but the GCDC staff has restricted the number of people who can go to two at a time.

9.      About a week ago, the officers began to wear face shields in addition to the masks that cover their mouths whenever they enter the pod. When the nurses come to provide medications or take temperature checks, they wear a protective suit over their regular uniform. Before, the GCDC staff never dressed this way, so I am concerned that there are cases of the coronavirus in this facility and the staff is not telling us.

10.     About one week ago, the GCDC medical staff began to come to the pod and do daily temperature checks. The nursing staff now come about three times a day to check each person's temperature. I have not been told why these temperature checks are being done.

11.     Two people in my section of the pod have had high fevers. One man was told by the nurse that his fever was 106 degree, and the other man was told by the nurse that his temperature was 108 degrees. He was not removed from the pod for medical treatment. The man whose fever registered at 108 degrees sleeps just one foot away from me.

12.     Currently, I am experiencing strong headaches and I feel weak. My body feels like it is shutting down.

13.     On May 27, 2020, the GCDC staff finally allowed me to go to medical to speak to the nurse about my headaches and body aches. The nurse told me that because I did not have a high fever, there was nothing they would do. I asked to speak to the doctor, but the nurses stated the doctor was not there.

14.     There are many people in the pod who have a high fever and are coughing. Many people are feeling weak and have symptoms of the coronavirus.

15.     The medical staff refuses to remove these people from the pods. The medical staff will not allow people in my pod to go to medical. All they do is bring Gatorade and Tylenol to hand out in the pod.

16.     I have been told that there is no space to isolate individuals who are sick in the medical unit, the booking area, or confinement, and the GCDC staff is refusing to escort people to medical or even the hospital. The booking area has approximately six cells, medical has about four or five observation rooms, and I believe there are eight cells in confinement. This facility has limited space to isolate people with coronavirus symptoms.

17.     On May 28, 2020, a Haitian man fainted and fell in the pod. He collapsed onto the woman who was handing out medication in the pod. The staff took him out of the pod, and he has yet to return. Three other people have recently fainted in the pod.

18.     The GCDC officers are not providing us with information on who has been tested for coronavirus at GCDC and how many of those tests were positive.

19.     About one month ago, I wrote to my deportation officer to request to be released from detention. Since I made that request, my deportation officer has not called or spoken to me. I have not received an answer to my request for release.

20.     If I were to be released from detention, I would live with my father who is a United States citizen and lives in Florida.

21.     I have authorized Lily Hartmann to sign on my behalf given the difficulty of arranging visitation and travel in light of the current COVID-19 pandemic. If required to do so, I will provide a signature when I am able to do so.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on May 29, 2020


Lily Hartmann, on behalf of Steve Cooper

## LEGAL ASSISTANT DECLARATION

I, Lily Hartmann, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      My name is Lily Hartmann. I am a legal assistant at Americans for Immigrant Justice, a legal services organization located in Miami, Florida.

2.      I am a legal assistant working with the legal team in *Gayle v. Meade et al.* Out of necessity in light of the COVID-19 pandemic, I signed Steve Cooper's declaration on his behalf and with his expressed consent.

3.      Further, ICE is now requiring legal visitors to provide and wear personal protective equipment, including disposable latex gloves, surgical masks, and eye protection while visiting any detention facility. These supplies are not easily accessible, given the increase in demand. Any available supplies are prioritized for hospitals and other medical facilities that are experiencing dangerous shortages.

4.      There are documented cases of COVID-19 in all fifty U.S. states and most inhabited U.S. territories. The Center for Disease Control and Prevention ("CDC") issued statements warning that individuals are at a higher risk of infection while traveling.

5.      In light of the above, to protect public health, I am not able to travel to the Glades County Detention Center to obtain Steve Cooper's signature.

6.      I spoke with Steve Cooper via phone call, read the declaration to him, and confirmed the accuracy of the information therein. Steve Cooper confirmed the accuracy of the information therein.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 29, 2020 at Miami, Florida.


Lily Hartmann

## DECLARATION OF HYTHALO GONZALEZ-ORTIZ

I, Hythalo Gonzalez Ortiz, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify completely and truthfully to this maters.

2.      My name is Hythalo Gonzalez Ortiz. I am currently detained in Pod 3 in general population of the Krome Services Processing Center ("Krome"). I have been in the custody of Immigration and Customs Enforcement ("ICE") since March 16, 2020. I have had two open heart surgeries and I take blood thinner medication.

3.      I have tracked people transferring into my housing pod at Krome because I have a heart condition and a family on the outside. All of the transfers makes everyone upset. There are a lot of people here in Pod 3 with health issues. When we take our medication for asthma, blood thinners, high blood pressure, or whatever, there are a lot of people who would die from the virus.

4.      ICE and AGS are putting our lives at risks. They go home every day, come back, and the only test they receive is their temperature. This is scary because they could still have the virus for 14 days and not have symptoms. We are have kids. We have loved ones waiting for us. At the end of the day, it makes us angry because they are playing with our lives.

5.      I have tracked the following information:

      a.   A man from Mexico was detained at Turner Guilford Knight Correctional Center ("TGK") for a week and then an ICE facility in Pompano Beach,

Florida. He came into Pod 3 last night after ten days in the Segregated

Housing Unit ("SHU") for quarantine.

b.  A man from Honduras spent one week in a jail in Tampa and then went

into Krome quarantine for 10 days. ICE moved him into Pod 3 last night.

c.  A man from the Bahamas spent 3 days at Broward Main Jail and was then

transferred to the North Broward Jail on the 4th day. He was transferred to

Krome that same day. He was never quarantined. He's in Pod 3.

d.  Another man from the Bahamas was in Broward Main Jail for 3 days and

then Krome. He was never quarantined.

e.  A man from Haiti was in Glades County Detention Center ("Glades") for a

month and a half. He was transferred to Krome without quarantine.

6.  Last week, the following men came into Pod 3, general population, without

any quarantine prior to entering:

a.  A man from Cuba who was formerly at Glades for unknown period of

time.

b.  A man from Ukraine who was at Glades for 3.5 months.

c.  A man from Jamaica who was at Collier County Jail for 8 months.

d.  A man from Canada who was formerly at Orlando County Jail.

e.  A man from Haiti who was detained at Orlando County Jail for 5 days and

then Pasco County jail for 51 days.

f.  A man who was formerly at Homestead 10 days.

g.  Another man who was at Glades for 2 months.

7.    Last week, following two men were segregated for 12 days in the SHU prior to entering Krome:

      a.  A man who was in Okeechobee County Jail for 45 days and then Broward County Main Jail for 15 days.

      b.  A Mexican man who was in Broward County Main Jail for 7 days.

8.    When I speak with AGS about my concerns, they say, "We're just security. They remind us we're detainees, not inmates and they say: "There's nothing we can do about it."

9.    When we request to talk to ICE, nobody shows up. I have never spoken to an ICE officer. I have been here since March 16, 2020. When the guards say they're putting us on quarantine, I ask to speak with ICE. I have asked AGS guards on three different times. Nothing happens.

10.    We have about forty people in our pod right now. The scary part is that people come in from different facilities and they put all of us at risk. We can't get mad at the new people coming in, it's really on ICE.

11.    The beds, tables, and chairs are bolted down in my pod. As a result, there are only so many places to sit. All Krome has done is add hand sanitizer. This is the only change.

12.    There are only 18 bunk beds where there is one person assigned to the bunk; I am one of them. I have the bottom bunk bed and there is nobody in the upper bed. When we were at 100 people in the pod, people were sleeping two people per bunk and there were portable camping-style beds everywhere.

13.    Nobody in my pod is wearing face masks. AGS told us the masks are not needed. It is only mandatory to use for sick-call and medical clinic. I leave my facemask in

my drawer. We receive new masks once a week. Two deputies come to do his. One throws away our masks while the other one passes out new ones. The last time I received a new mask was last week on Friday.

14.    I have heard from the folks who were in SHU under quarantine. It's hard times because there are sick people and the guards come in and out and lot and they can't sleep; they slam the doors a lot. The locking is also loud.

15.    Yesterday, AGS guards pulled me out of Pod 3 around 3:30 to take my blood pills. Each time I leave the pod, I get patted down and they check for my face mask. Scan my face for a temperature check. Then, the AGS guards put me inside a box or "waiting room." However, they put multiple people in there and they don't clean after every person. I get my blood pills. They do not wipe down the chairs where we sit to get pills. Then, they pat me down again. Then same process repeats when I get back to the dorm; they pat me down again.

16.    My pod is on quarantine right now but we don't know why we're in quarantine. AGS has not told us. We think it's because the AGS guards mixed us with Pod 2 or because of all the people who are being placed directly into general population after they're transferred.

17.    We went into quarantine on May 20th; we were mixed with Pod 2 on May 18th.

18.    With food distribution, they go to SHU before general population. It is the same officers. They're changing gloves but the giant food vessel is like 5 feet tall and five feet long. I imagine those vessels touch everything.

19.    I hope I can get out of here to return to my family. My two children need me.

20.     If I am released from detention, I will comply with any applicable conditions of release including attending check-ins and immigration court hearings. I will live with my mother, her husband, my two children, and the mother of my children. Everyone is a United States citizen except my mother who is a lawful permanent resident.

21.     I will practice social distancing if I am released.

22. I have authorized Andrea Crumrine to sign on my behalf given the difficulty of arranging visitation and travel in light of the current COVID-19 pandemic. If required to do so, I will provide a signature when I am able to do so.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 1, 2020 in Miami, Florida.

Andrea Crumrine, on behalf of Hythalo Gonzalez-Ortiz

## ATTORNEY DECLARATION

I, Andrea Crumrine, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      My name is Andrea Crumrine. I am a licensed attorney in good standing in the state of Minnesota

2.      I represent the declarant, Hythalo Gonzalez Ortiz, in his immigration case. Out of necessity in light of the COVID-19 pandemic, I signed Mr. Gonzalez Ortiz declaration on his behalf and with his express consent.

3.      ICE is now requiring legal visitors to provide and wear personal protective equipment, including disposably vinyl gloves, surgical masks, and eye protection while visiting any detention facility. These supplies are not easily accessible, given the increase in demand. Any available supplies are prioritized for hospitals and other medical facilities that are experiencing dangerous shortages.

4.      There are documented cases of COVID-19 in all fifty U.S. states and most inhabited U.S. territories. The Centers for Disease Control and Protection (CDC) has issued statements warning that individuals are at a higher risk of infection when traveling.

5.      In light of the above, to protect public health, I am not able to travel to the Krome Detention Center in Miami, Florida, to obtain my client's signature.

6.      I spoke with Mr. Gonzalez Ortiz via phone call, read the declaration to him, and confirmed the accuracy of the information therein. Mr. Gonzalez Ortiz has confirmed the accuracy of the information therein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 1, 2020 at Miami, Florida.

Andrea Crumrine, on behalf of Hythalo Gonzalez Oritz
Attorney for Hythalo Gonzalez Oritz