**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 20-21553-CIV-COOKE/GOODMAN**

PATRICK GAYLE, et al.,

      Petitioners/Plaintiffs,

   v.

MICHAEL W. MEADE,
Field Office Director, Miami Field
Office, U.S. Immigration and
Customs Enforcement, et al.,

      Respondents/Defendants.

_____/

## DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S GRANT OF PRELIMINARY INJUNCTION

Defendants, under Fed. R. Civ. P. 59(e), move this Court to reconsider its grant of preliminary injunctive relief, *see* ECF No. 158, to account for recent intervening law from the Eleventh Circuit. The Eleventh Circuit's intervening decision in *Swain v. Junior*, established the standard for a showing of deliberate indifference. *See Swain v. Junior*, 20-11622, — F.3d —, 2020 WL 3167628 (11th Cir. June 15, 2020). Since deliberate indifference served as the basis on which this Court ordered its preliminary injunction, *Swain* compels reconsideration of the Court's Order granting preliminary injunctive relief here.

### BACKGROUND

Petitioners are 58 aliens held at three detention facilities in Florida—Krome Detention Center, Broward Transitional Center (BTC), and Glades County Detention Center—who have medical conditions that, they allege, place them at heightened risk of serious illness or death if they contract COVID-19. *See* ECF No. 158, 1–2. In response to the COVID-19 pandemic, ICE has

taken precautions to prevent the spread of the virus within its facilities, including the facilities here, such as suspending social visitation, conducting pre-intake medical screening for symptoms and temperature checks for all detainees, medically isolating detainees (consistent with CDC guidelines) with laboratory-confirmed positive COVID-19 tests, issuing new surgical masks weekly to all detainees, performing routine medical assessments for all detainees housed in cohort groups, providing education on proper hygiene, using masks and procedures for receiving medical care, and supplying detainees with adequate soap, water, and cleaning materials. ICE has also sought to reduce the detainee population at the three facilities here (consistent with ICE's COVID-19 guidelines) to facilitate social distancing and mitigate the spread of COVID-19. *Id.* at 10–11. Detainees at high risk for COVID-19, and those with chronic conditions, are identified by the facilities and considered for release—for example, by mid-April, BTC had reduced its population by 35% and had released all detainees over the age of 60. *Id.* at 15. At the onset of this litigation, there were no detainees with confirmed cases of COVID-19 at either of the three facilities. *Id.* at 12–15. And, to date, confirmed COVID-19 cases have risen only slightly across the facilities here—as of June 5, there were 20 detainees with COVID-19 positive tests at Krome; 20 at BTC; and 60 at Glades. *Id.*

On April 13, petitioners filed this putative habeas case and moved for a Temporary Restraining Order (TRO) directing their immediate release, requiring protective health measures to mitigate transmission of COVID-19, and enjoining the transfer of the petitioners to other detention facilities. Petitioners alleged that the facilities had violated ICE and CDC recommendations on mitigating the spread of COVID-19 and that this failure violated their substantive-due-process right to protection from serious illness.

On April 22, a magistrate judge issued a report and recommendation concluding that this

is a conditions-of-confinement case that is not cognizable in habeas. *See* Report, ECF No. 63 at 51 ("[T]he law in the Eleventh Circuit . . . does not permit a detained person to pursue a habeas corpus remedy of being released from custody even if cruel and unusual punishment were to be established."). "Instead," as the magistrate judge held, "in [the] Eleventh [C]ircuit, the remedy" for unconstitutional conditions of confinement "is to discontinue the practice or correct the condition." *Id*. (citing *Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990)). The magistrate judge relied heavily on the preliminary injunction in *Fraihat v. ICE*, when the court rejected the argument that it "lacks authority to enter [nationwide] class-wide relief to require a constitutionally adequate response to COVID-19 from ICE." *Id*. at 14 (quoting *Fraihat v. ICE*, No. 19-cv-1546 (C.D. Cal. Apr. 20, 2020)). The magistrate judge embraced the *Fraihat* court's conclusion that "the evidence suggests [ICE's] systemwide inaction" across the country, including the facilities here. *Id*. at 15. Despite noting that the R&R was "based on a less-than-optimum record," *id*. at 43, the magistrate judge determined that "depending on the facts," petitioners may have showed a substantial likelihood of prevailing on their deliberate indifference claim. *Id.* The magistrate judge recommended that the district court issue a TRO ordering ICE to adhere to its own guidelines and the CDC's guidelines in assessing and evaluating whether any petitioners should be released. The magistrate judge also recommended steps to encourage ICE's release of detainees (e.g., twice-weekly reports on number of detainees released, disclosure of number of detainees considered high risk for illness, twice-weekly reports on number of detainees with no prior criminal history). Finally, the magistrate judge endorsed a TRO requiring ICE to provide adequate soap, water, and cleaning materials to all detainees; clean masks each week to all detainees exhibiting COVID-19 symptoms; and training for all staff and detainees on reducing COVID-19 health risks.

On April 30, the district court partially adopted the magistrate judge's report and recommendation and granted an initial 14-day TRO, which the court later extended for another 21 days. Order, ECF No. 76. The district court held that "[t]here is record evidence demonstrating that ICE has failed in its duty to protect the safety and well-being of the Petitioners." *Id.*, 6. The court focused on the "practically impossible" ability to social distance at Krome, that the spacing of detainee furniture at Glades was "contrary to CDC guidelines," and that ICE had generally failed to provide detainees "with masks, soap and other cleaning supplies, and failed to ensure that all detainees housed at the three detention centers can practice social distancing." *Id*. The court held that "[t]hese failures have placed Petitioners at a heightened risk of not only contracting COVID-19, but also succumbing to the fatal effects of the virus as some of the petitioners have serious underlying medical illness." *Id*. And since "it is clear that ICE fully understands the benefit of reducing the detainee population," the court held that ICE's "fail[ure] to commit to addressing the conditions complained of[ ] demonstrated deliberate indifference." *Id*. As a result, the court held that "the present conditions at the three detention facilities constitute a violation of Petitioners' Fifth and Eighth Amendment rights." *Id*. at 6–7; *see also id*. at 4–7. The court also held that "the appropriate relief" from unconstitutional conditions of confinement "is to require the discontinuance of any improper practices, or to require correction of any condition" causing the unconstitutional harm. *Id*. at 9. The court thus held that petitioners' request for release was not a proper remedy. *Id*. at 9–10. Despite that last ruling, the district court directed ICE to evaluate the named petitioners and inform the court within seven days "who among them can be released promptly." *Id*. at 10. The court also directed ICE to take measures to reduce the population at the three facilities, imposed reporting obligations, and ordered ICE to comply with ICE and CDC guidelines on mitigating the spread of COVID-19. *Id*. at 10–11.

On May 5, petitioners moved to certify a class of "all civil immigration detained individuals" who have (since the start of this case) been held at the three facilities as well as those individuals who will be held at the facilities. ECF No. 81, 5. On May 22, the magistrate judge issued a report and recommendation advising that the district court deny petitioners' motion for class certification on their demand for habeas corpus release but grant the motion on their conditions-of-confinement claims. *See* Class Cert. Report, ECF No. 111 at 4–5.

On June 6, the district court entered an omnibus order on petitioners' preliminary-injunction and class-certification motions. *See* PI Op., ECF No. 158. The court certified a class of "All current civil immigration detainees who are now held by ICE at Krome, [Broward Transitional Center (BTC)], and Glades when this action was filed, since this action was filed, or in the future." *Id.* at 37. The court held that the controlling questions of law and fact at issue are common to the entire class: whether ICE has been deliberately indifferent to the risk that detainees will contract COVID-19 due to the conditions of confinement at the three facilities and ICE's failure to implement its Alternatives to Detention Program (which would permit their release from confinement). The court held that the petitioners share two main legal questions—whether ICE's conduct at the three detention centers at issue amounts to deliberate indifference and exposes petitioners to substantial risk of harm, and whether such conduct causes conditions of confinement that violate petitioners' constitutional rights. And because ICE's actions (or lack thereof) apply to the class generally, the court determined that Rule 23(b)(2)'s requirements were satisfied.

On the preliminary injunction, the court held that petitioners were likely to succeed on the merits of their deliberate-indifference claims. To start, the court determined that the petitioners must meet three burdens to satisfy their deliberate indifference claim: (1) that they had a serious medical need; (2) that ICE acted with deliberate indifference to the serious medical need; and

(3) that the injury was caused by ICE's wrongful conduct. On the subjective component, the court held that petitioners met their burden by establishing ICE's subjective knowledge of a risk of serious harm from COVID-19, that ICE disregarded that risk, and that ICE's conduct amounted to more than negligence. Next, the court highlighted detainee testimony (and observations made at the preliminary-injunction hearing) on the limited use of masks to conclude that ICE's "behavior not only violates the spirit and the letter of TRO, it also amounts to deliberate indifference because it demonstrates a blameworthy disregard of the risks posed by COVID-19 by exponentially increasing the risk of spreading the virus to other detention centers." Op. 31. The court characterized this behavior as "conduct that far exceeds mere negligence and evidences a reckless state of mind." *Id*. The court recognized that "ICE does not test all detainees before transferring them because it doesn't have enough tests to do so." *Id.* Yet the court determined that such action "may have resulted in the transfer of some detainees who are asymptomatic but still carry the virus." *Id.* The court held that "[t]ransferring detainees without first screening them for COVID-19 or providing any protective equipment is not only a violation on ICE's authority [under section 1231(g)(1)], it is a violation of Petitioners' constitutional rights." *Id.* at 31–32. Finally, the court said that "[d]espite the fact that its own Guidelines call for detention facilities to avoid group cohorting, ICE flagrantly flouts its own rules on the subject and groups asymptomatic detainees together." *Id*. at 32. Accordingly, the court held that "ICE's failure to comply with its own Guidelines, which explicitly acknowledges the risks involved in cohorting in the manner described herein is further evidence of deliberate indifference." *Id.* In sum, the court held that it was "not satisfied that ICE's commitment to detention has meaningfully shifted since the start of the pandemic." *Id.* at 37. The court reached this conclusion by relying on detainee reports following the TRO stating that "(1) social distancing is still impossible, (2) education on the use and

importance of masks is inconsistent, (3) transfers are conducted haphazardly, and (4) cohorting is conducted in a manner that substantially increases the risk of spread of the contagion." *Id*.

The terms of the preliminary injunction align closely with those of the TRO—rather than ordering any class members' release from detention, both orders impose requirements designed to mitigate the transmission of COVID-19. The preliminary injunction orders that "ICE shall immediately comply with the CDC and ICE guidelines" by providing petitioners and the class members with unrestricted access to sanitation items (i.e., hand soap, hand sanitizer, hand towels); "[p]rovide cleaning supplies for each housing area and CDC-recommended disinfectants in sufficient quantities to facilitate frequent cleaning,"; "[p]rovide all inmates and staff members with masks and educate them on the importance and proper use of masks"; "[i]ncrease regular cleaning and disinfecting of all common areas and surfaces"; "[l]imit transportation of detainees to only instances regarding immediately necessary medical appointments and release from custody"; strictly enforce CDC-recommended social distancing requirements during all transportation; post signage and information in common areas about COVID-19; educate inmates on the COVID-19 pandemic; perform weekly internal reviews and provide reports to the court on number of detainees released, and from which facility; and submit weekly reports on the demographics and detention authority of all current detainees across the three facilities. Op. 38–40. Finally, the injunction orders that "ICE shall not engage in the practice of cohorting unless ICE confirms through testing or other means that a prospective cohort candidate is a confirmed COVID-19 case." Op. 40.

## **LEGAL STANDARD**

The Court's preliminary injunction order is subject to reconsideration under Rule 59(e), which provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). A Rule 59(e) motion for reconsideration

"may only be granted on the grounds of newly discovered evidence or manifest errors of law or fact." *See Porto Venezia Condo. Ass'n, Inc. v. WB Ft. Lauderdale, LLC*, 926 F. Supp. 2d 1330, 1332 (S.D. Fla. 2013). There are three grounds for granting a motion for reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *See Young Apartments, Inc. v. Town of Jupiter, Fla.*, 05-cv-80765, 2007 WL 1490933, at *1 (S.D. Fla. May 21, 2007). "The decision whether to alter or amend a judgment pursuant to Rule 59(e) is 'committed to the sound discretion of the district judge.'" *Mincey v. Head*, 206 F.3d 1106, 1137 (11th Cir. 2000) (quoting *Am. Home Assurance Co. v. Glenn Estess & Assocs.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985)).

To compel reconsideration, an intervening change in controlling law must directly address the basis on which the District Court made its order. *See MSPA Claims 1, LLC v. Infinity Auto Ins. Co.*, 16-20320-CIV, 2017 WL 4286852, at *2 (S.D. Fla. Sept. 27, 2017) (holding that no intervening change in controlling law was present because it was "not the basis on which [the district court judge] dismissed [the] Plaintiff's complaint.").

## **ARGUMENT**

This Court should reconsider its order granting Plaintiffs' motion for preliminary injunction. The Court's holding that U.S. Immigration and Customs Enforcement (ICE) acted with deliberate indifference to the health of its detainee petitioners conflicts with *Swain v. Junior*, an intervening change of controlling law in the Eleventh Circuit. *See Swain*, 2020 WL 3167628. The Eleventh Circuit's decision in *Swain* was decided 10 days after this Court issued its June 6, 2020 preliminary injunction order.

In *Swain*, the Eleventh Circuit set the standard for establishing a claim of deliberate indifference, a standard, the Court held, which "sets an appropriately high bar." *Swain*, 2020 WL

8

3167628, at *5. The *Swain* Court held that in order "[t]o establish a deliberate-indifference claim, a plaintiff must make both an objective and a subjective showing." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The objective prong of the deliberate indifference claim analysis requires a showing of a "substantial risk of serious harm." *Id.* (holding that the risk of a virus such as COVID-19 met the objective component and constitutes a substantial risk of serious harm). The subjective showing requires plaintiffs to establish: "(1) subjective knowledge of a risk of serious harm; (2) *disregard of that risk*; (3) by conduct that is *more than mere negligence*." *Id.* (emphases added).

But the *Swain* Court held that "ordinary malpractice or simple negligence won't" suffice for a showing of reckless disregard of risk. *Id*. Rather "the plaintiff must show subjective recklessness as used in the criminal law." *Id.* (concluding that "even where prison officials . . . actually knew of a substantial risk to inmate health or safety, they may nonetheless be found free from liability if they responded reasonably") (internal citations omitted). Thus, even if the risked harm in question actually occurs, the Eleventh Circuit held that so long as reasonable precautions were taken, there may be no liability. *Id.*

The factual scenario in *Swain* is nearly identical to those here. In *Swain*, the defendants had taken several measures because of the COVID-19 virus: Metro West, the county jail at issue, had reduced its population to less than 70% of its capacity; provided inmates access to cleaning supplies; provided personal hygiene supplies, including liquid soap and paper towels; issued masks to all inmates and employees; cancelled inmate visitation; posted notices that encourage social distancing and proper hygiene and provided other information about the virus; and the defendants had represented that they would continue to take measures even without a court order. *Swain*, 2020 WL 3167628, at *2–*3. And, as here, the district court in *Swain* required the detention facility to

take certain actions, such as considering current population levels; ensuring provision of protective masks, cleaning and hygiene products, and adequate medical care; and imposed reporting requirements. The district court in *Swain* held that the defendants were deliberately indifferent based on: "(1) the increase in the rate of infections at Metro West and (2) the lack—and seeming impossibility—of meaningful social distancing at the facility." *Id*. at *6. The Eleventh Circuit vacated the district court's injunction in *Swain*, concluding that "[n]either the resultant harm of increasing infections nor the impossibility of achieving six-foot social distancing in a jail environment establishes that the defendants acted with subjective recklessness." *Id.* (internal quotations omitted).

Applicable here, the *Swain* Court held that "the district court erred in concluding that the defendants' inability to ensure adequate social distancing constituted deliberate indifference." *Id*. (recognizing that "adequate social distancing" at the facility was either "not possible or impossible"). Instead, the *Swain* Court held that "failing to do the impossible doesn't evince indifference, let alone deliberate indifference." *Id.* In evaluating whether the "defendants exhibited 'a sufficiently culpable state of mind,'" *id*. (quoting *Farmer*, 511 U.S. at 834), which the *Swain* Court characterized as "the fundamental question in any deliberate-indifference case," *id*., the court must "focus not on isolated failures—or impossibilities, as the case may be—but rather on the defendants' entire course of conduct." *Id*.

Following *Swain*, ICE did not act with reckless disregard here. As in *Swain*, the detention facilities here are "faced with [the] perfect storm of a contagious virus and the space constraints inherent in a correctional facility." *Swain*, 2020 WL 3167628, at *8. Indeed, as this Court recognized, ICE has taken reasonable measures to prevent, contain, and treat COVID-19 cases at the three facilities here. *See* ECF No. 158 at 12–19. ICE has implemented CDC guidelines,

including screening and appropriately isolating all new and returning detainees showing COVID-19 symptoms; increased the scope and frequency of sanitation procedures and the availability of cleaning supplies, hand sanitizer, and surgical masks; monitored for symptoms of COVID-19 to permit staff to act quickly; provided detainee education on hygiene and other way to mitigate the spread of COVID-19; and reduced the detainee population at each facility below 75% capacity. *Id.* Under *Swain*, these are reasonable mitigating measures—much like those implemented by the county jail at issue in *Swain*—that do not constitute deliberate indifference. *See Swain*, 2020 WL 3167628 at *7–*8 (county jail "acted reasonably" by imposing measures to mitigate the spread of COVID-19 and therefore "cannot be found liable" for deliberate indifference). As a result, the intervening decision in *Swain* compels reconsideration of this Court's grant of preliminary injunctive relief here because Defendants have taken reasonable steps to quell the spread of COVID-19 that do not amount to a showing of deliberate indifference. Under *Swain*, the Eleventh Circuit's intervening change in the standard for deliberate indifference affects the basis on which this Court entered its preliminary injunction. This Court's deliberate indifference analysis thus conflicts with the *Swain* Court's intervening law. Reconsideration is therefore warranted on this basis.

## **CONCLUSION**

For these reasons, this Court should grant Defendants' motion for reconsideration.

## COMPLIANCE WITH LOCAL RULE 7.1(a) (3)

The parties met and conferred by email on July 6, 2020 in a good-faith effort to resolve whether this motion should be filed. The parties explained their positions, but could not reach an agreement on this issue.

Dated: July 6, 2020

ARIANA FAJARDO ORSHAN
United States Attorney
Southern District of Florida

DEXTER A. LEE
Assistant U.S. Attorney
Fla. Bar No. 0936693
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
(305) 961-9320
Email: dexter.lee@usdoj.gov

NATALIE DIAZ
Assistant U.S. Attorney
Florida Bar No. 85834
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
(305) 961-9306
Email: Natalie.Diaz@usdoj.gov

Respectfully submitted,

SCOTT G. STEWART
Deputy Assistant Attorney General[1]
Civil Division, U.S. Department of Justice

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

JEFFREY ROBINS
Deputy Director

*/s/ Michael A. Celone*
MICHAEL A. CELONE
Senior Litigation Counsel
District Court Section
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel:  (202) 305-2040
Email: Michael.A.Celone@usdoj.gov

*Attorneys for Respondents/Defendants*

---

[1] Acting Assistant Attorney General, Ethan P. Davis, is recused from this matter.

Dated: July 6, 2020

ARIANA FAJARDO ORSHAN
United States Attorney
Southern District of Florida

DEXTER A. LEE
Assistant U.S. Attorney
Fla. Bar No. 0936693
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
(305) 961-9320
Email: dexter.lee@usdoj.gov

NATALIE DIAZ
Assistant U.S. Attorney
Florida Bar No. 85834
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
(305) 961-9306
Email: Natalie.Diaz@usdoj.gov

Respectfully submitted,

SCOTT G. STEWART
Deputy Assistant Attorney General[1]
Civil Division, U.S. Department of Justice

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

JEFFREY ROBINS
Deputy Director

*/s/ Michael A. Celone*
MICHAEL A. CELONE
Senior Litigation Counsel
District Court Section
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel:  (202) 305-2040
Email: Michael.A.Celone@usdoj.gov

*Attorneys for Respondents/Defendants*

---

[1] Acting Assistant Attorney General, Ethan P. Davis, is recused from this matter.