UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-21553-Civ-COOKE/GOODMAN

**PATRICK GAYLE**, *et al.*,

    Petitioners-Plaintiffs, on behalf of
themselves and those similarly situated,

**v.**

**MICHAEL W. MEADE**, *et al.*,

    Respondents-Defendants.
_____/

### PETITIONERS' FIRST SET OF INTERROGATORIES
### TO RESPONDENT MICHAEL W. MEADE, FIELD OFFICE DIRECTOR,
### MIAMI FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

    Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Petitioners-Plaintiffs ("Petitioners") hereby serve their First Interrogatories to Respondents-Defendants Michael W. Meade, and William P. Barr in their official capacities (collectively, "Respondents"). Each Interrogatory shall be answered separately, fully, and in writing under oath within thirty days, or as required by Court order in response to Petitioners' Motion for Expedited Discovery.

### DEFINITIONS

    The following definitions apply to Petitioners' First Set of Interrogatories (the "Interrogatories") set forth below.

    1.    "Krome" means Krome Processing Center located in Miami-Dade County, FL.

    2.    "BTC" means Broward Transitional Center located in Broward County, FL.

    3.    "Glades" means Glades County Detention Center located in Moore Haven, FL.

    4.    The terms "Three Detention Centers" shall refer to Krome Service Processing Center, Glades County Detention Center, Broward Transitional Center, and any other ICE controlled detention center where a Class Member was transferred.

5. "CDC" means the Centers for Disease Control and Prevention.

6. "Cohorting" means grouping or housing persons with a similar condition for observation over a period of time.

7. "COVID-19 Response Plans" shall refer to all plans or procedures created, referenced or implemented by Respondents in preparing for or responding to a COVID-19 outbreak or potential COVID-19 outbreak, including but not limited to plans or procedures for responses to pandemics, infectious diseases, influenza, medical or other emergencies and disasters.

8. "Guards" shall refer to individuals who serve in a guard position at a detention center, regardless of the individual's employer.

9. "Staff" shall refer to individuals who serve in a staff position at a detention center, regardless of the individual's employer.

10. "Communication" includes any occurrence whereby data, expression, facts, opinions, thought, or other information of any kind is transmitted in any form, including, without limitation, in-person conversation, telephone conversation, video chat, correspondence, discussion, meeting, memorandum, email, text message, chat message, voice message, picture message, video message, audio recording, video recording, social media posting, or any other form of in-person, written, or electronic communication.

11. "Concerning" or "relating to" means referring to, and includes, but is not limited to, analyzing, commenting on, comprising, connected with, constituting, containing, contradicting, describing, embodying, establishing, evidencing, memorializing, mentioning, pertaining to, recording, regarding, reflecting, responding to, setting forth, showing, or supporting, directly or indirectly, or having any connection, association, relevance, relation, pertinence, or applicability to, or any implication for, or bearing upon, the subject matter of these Requests for Production.

12. "At-Risk Population" means individuals with one or more of the following risk factors: age of 55 or above, pregnancy or recent pregnancy (within last 6 weeks), and serious underlying medical condition including: chronic kidney disease (including receiving dialysis); chronic liver disease (including cirrhosis and chronic hepatitis); endocrine disorders (including diabetes mellitus); compromised immune system (immunosuppression) (e.g., receiving treatment such as chemotherapy or radiation, received an organ or bone marrow

transplant and is taking immunosuppressant medications, taking high doses of corticosteroids or other immunosuppressant medications, HIV or AIDS); metabolic disorders (including inherited metabolic disorders and mitochondrial disorders); heart disease (including congenital heart disease, congestive heart failure and coronary artery disease); lung disease including asthma or chronic obstructive pulmonary disease (chronic bronchitis or emphysema) or other chronic conditions associated with impaired lung function or that require home oxygen; neurological and neurologic and neurodevelopment conditions (including disorders of the brain, spinal cord, peripheral nerve, and muscle such as cerebral palsy, epilepsy (seizure disorders), stroke, intellectual disability, moderate to severe developmental delay, muscular dystrophy, or spinal cord injury); body mass index (BMI) of 40 or greater; hypertension; smoking or history of smoking; and, any other condition identified by the Centers for Disease Control and Prevention as putting a person at a higher risk of severe illness or death from COVID-19.

13. "Detainees" means all civil immigration detainees under the jurisdiction of U.S. Immigration and Customs Enforcement detained at Krome, BTC and Glades.

14. "Document" has the meaning set forth in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure and includes, but is not limited to, each and every form of Communication and includes, without limitation, all written, printed, typed, recorded, or visual matter of any kind, type, nature, or description, in whatever form (e.g., final and draft versions), that is or has been in Your actual or constructive possession, custody, or control, including, but not limited to, all printed and electronic copies of electronic mail, text messages, chat messages, notes, correspondence, memoranda, tapes, handwritten notes, articles, diaries, letters, photographs, minutes, contracts, agreements, reports, computer printouts, drafts, notebooks, audio recordings, video recordings, or any written or recorded materials of any other kind, however stored (whether in tangible or electronic form), recorded, produced, or reproduced, including on backup tapes, the Internet, or the World Wide Web.

15. "ICE" means U.S. Immigration and Customs Enforcement, including all staff, employees, contractors and agents.

16. "ICE's ERO COVID-19 Pandemic Response Requirements" means Version 1.0, April 10, 2020 of the document available at:

https://www.ice.gov/doclib/coronavirus/eroCOVID19responseReqsCleanFacilities.pdf and any supplements, additions, and changes thereto.

17. "Including" means including without limitation.

18. "Isolation" means the separation of a person or group of people known or reasonably believed to be infected with a communicable disease and potentially infectious from others to prevent the spread of the communicable disease.

19. "Person" includes any natural person or legal entity.

20. "Personal Protective Equipment" or "PPE" means equipment worn to minimize exposure to COVID-19, including, but not limited to, facemasks, N95 respirators, eye protection, disposable medical gloves, and disposable gowns/one-piece coveralls.

21. "Quarantine" means the separation of a person or group of people reasonably believed to have been exposed to a communicable disease but not yet symptomatic, from others who have not been exposed, to prevent the possible spread of the communicable disease.

22. "Social Distancing" means the keeping of space between one person and other people, including staying at least six feet apart, not gathering in groups, staying out of crowded places, and avoiding mass gatherings.

23. "You," Your," "Respondents", or "Defendants" means Respondents-Defendants Michael W. Meade and William P. Barr, together with any of their agents, attorneys, representatives, affiliates, public relations consultants, or any other Person acting under their control or on their behalf.

24. The use of the singular form of any word includes the plural and vice versa.

## INSTRUCTIONS

The following instructions apply to Petitioners' Interrogatories set forth below.

1. In responding to these Interrogatories, you are required to search for and furnish all information in your care, custody, control, or authority, or available to you or subject to your reasonable inquiry, including all information in the possession of your representatives, agents, employees, contractors, or anyone else otherwise subject to your control or authority.

2. If any information responsive to any Interrogatory is withheld on the basis of a claim of privilege or objection, the claimed basis for withholding the information and the

nature of the information withheld should be set forth, together with a statement of all the circumstances relied upon to support such a claim.

3. If you have no information responsive to the subject of a particular Interrogatory, or if for some other reason you are unable to answer it, the response to that Interrogatory should specifically so state. No Interrogatory should be without some response.

### INTERROGATORIES

1. Please provide a complete list of all men or women who have been detained at Krome, Glades and/or BTC at any time since April 13, 2020 including the individual's name, A-number, date of birth, citizenship, dates of detention at the Detention Center, current detention status, and current detention location (if detained).

2. Please provide a complete list of all changes you implemented at Glades, Krome and/or BTC in response to COVID-19. Your response should identify the change, the location, the date implemented, and the name and title of the individuals responsible for implementing the change.

3. Describe the floor plans of each detention center's facilities including:

    a. Total square footage of the space used for detaining individuals at the facility;

    b. Square footage of each space by type (living unit, health services, cafeteria, common areas, outdoor recreational space, and any other space – whether indoor or outdoor – used by any staff); and

    c. Square footage for each living unit by sleeping area (where bunk beds are clustered), bathroom, and sitting/common area, and a detailed description of the proximity of each living unit to other living units and other rooms (i.e. pod 2 is located adjacent to pod 3 – the doors to pods 2 and 3 are 25 feet apart).

    d. Locations and numbers of toilets and urinals, including the presence of any divider between and the distance between the toilets and urinals.

    e. Locations and numbers of sinks, including the presence of any divider between and the distance between the sinks.

    f. Locations and numbers of shower heads, including the presence of any divider between and the distance between the shower heads.

    g. Locations and numbers of beds, including the presence of any divider between and the distance between the beds.

    h. Locations and numbers of soap dispensers, including the capacity of the soap dispenser.

    i. Locations and numbers of hand sanitizer dispensers, including the capacity of the soap dispenser and the date when the dispenser was installed.

    j. Locations and numbers of posters providing education related to COVID-19, including the size of the poster and the date of installation.

    k. Locations of water fountains or water coolers.

  4. How many people have been assigned to each living unit on each day since April 13, 2020? Your response should provide a breakdown of how many men and how many women were present.

  5. Describe the process for making housing assignments at Glades, Krome and BTC from January 1, 2020 to present. Your response should include identifying who makes the housing assignments and all factors considered as part of the assignments.

  6. Identify each detainee, guard, or staff who has been tested for COVID-19, the date of the test, and the test result, from March 1, 2020 to the present. Identify any Named Petitioner and Class Member by name, date of birth, and A-number. Except for any responsive information regarding Named Petitioners and Class Members, this Interrogatory does not seek the names of any non-class member detaineeguard or staff. Instead, individuals other than Petitioners and Class Members can be identified as DetaineeGuard/Staff Person 1, 2, 3 and so on.

  7. What is the total number of detainees, guards, or staff who have had a confirmed COVID-19 infection and the total number of detainees, guards, or staff suspected to have a COVID-19 infection that has not been confirmed at Krome, Glades and BTC?

  8. Identify by name, date of birth, and A-number the detainees at Krome, Glades and BTC who have been in quarantine, cohort, isolation, solitary confinement, medical centers, hospitals or negative pressure rooms for reasons related to COVID-19.

9. Were any detainees who did not have a positive test result for COVID-19 cohorted or quarantined with detainees who had tested positive for COVID-19? If so, provide the names, dates of birth, A numbers, detention location, dates, and justification for the cohorting or quarantining.

10. Identify each Detainee transferred into Krome, Glades or BTC from March 1, 2020 to the present and, for each such Detainee, specify from where and on which date he or she was transferred. Include any person who was brought to Krome, Glades, or BTC even for a short period of time (for example, someone who was brought to Krome, Glades, or BTC but re-transferred immediately after a COVID screening). Except for any responsive information regarding Petitioners and Class Members, this Interrogatory does not seek the names of any detainee. Instead, individuals other than Named Petitioners can be identified as Detainee 1, 2, 3 and so on. Identify Named Petitioners and Class Members by name, date of birth, and A-number.

11. Identify each Detainee transferred from Krome, Glades or BTC from March 1, 2020 to the present and, for each such detainee, specify to where and on which date he or she was transferred. Except for any responsive information regarding Named Petitioners and Class Members, this Interrogatory does not seek the names of any detainee. Instead, individuals other than Petitioners can be identified as Detainees 1, 2, 3 and so on. Identify Named Petitioners and Class Members by name, date of birth, and A-number.

12. Identify every detainee who has been tested for COVID-19 more than once while in ICE custody.

13. Describe the policies and practices that governs Krome, Glades or BTC that was created or changed in response to COVID-19.

14. Identify all guards and staff who have requested or received time off from their job responsibilities since March 1, 2020 and, for each such person, state (a) the basis for the requested or received time off, (b) the duration of the time off, and (c) whether the person's position was filled or substituted by another guard or staff person.

15. Describe the policies and procedures in place for assessing guards and staff for any COVID-19 related symptoms before they enter the Detention Center and begin their shift.

16. Describe the usage of common areas, dining areas, bathrooms, shower and bathing facilities, rooms with telephones that Detainees can use, the infirmary, and other

areas used by Detainees, including the length of time and time of day used, any schedule for which individuals use the space at particular times, and the maximum number of individuals using the space at one time.

17. Describe specifically and in detail (1) procedures and protocols for dining or other regularly scheduled activities (*e.g.,* recreation, education, worship, sleeping arrangements) and (2) any modifications to those procedures and protocols effectuated to comply with the CDC's guidance and other applicable guidelines regarding Social Distancing, including, but not limited to, remaining at least six feet apart and not gathering in groups; or to comply with ICE's ERO COVID-19 Pandemic Response Requirements.

18. Describe specifically and in detail each detention center's (1) inventory of hygiene supplies (including, but not limited to, soap, hand sanitizer, and tissues) and PPE and (2) plans or procedures to maintain sufficient stock of hygiene supplies and PPE pursuant to ICE's ERO COVID-19 Pandemic Response Requirements, at pages 8 and 9.

19. Describe specifically and in detail any plans and procedures for distributing hygiene supplies (including, but not limited to, soap, hand sanitizer, and tissues) as well as PPE to Detainees and Staff, including the frequency of distribution, the amounts of each item distributed, whether hygiene supplies are distributed such that each room throughout the facility is always stocked pursuant to ICE's ERO COVID-19 Pandemic Response Requirements at page 9, and procedures for sanitary disposal. If certain hygiene supplies or PPE are only accessible for Detainees to purchase from their commissary accounts, please provide the name, cost, and availability of each item in the commissary.

20. Describe all action taken against guards or staff (including but not limited to reprimands, suspension, demotions and employment termination) for violating any COVID-19 related rule or procedure, including without limitation rules regarding handwashing, social distancing, wearing masks or other PPE, providing soap to detainees, providing masks to detainees, assigning seats on transportation vehicles that allow social distancing, assigning beds to allow for social distancing, providing medical care to sick detainees and the like.

Date:   July 8, 2020

Respectfully submitted,

/s/ *Scott M. Edson*
Scott M. Edson, Esq.
Florida Bar No. 17258

Gregory P. Copeland*
Sarah T. Gillman*
**RAPID DEFENSE NETWORK**
11 Broadway, Suite 615
New York, NY 10004
Tel.: (212) 843-0910
Fax: (212) 257-7033
gregory@defensenetwork.org
sarah@defensenetwork.org
*Appearing Pro Hac Vice*

Scott M. Edson, Esq.
Florida Bar No. 17258
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW, STE 200
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
sedson@kslaw.com

Rebecca Sharpless
Florida Bar No. 0131024
Romy Lerner
Florida Bar No. 116713
**UNIVERSITY OF MIAMI SCHOOL OF LAW - IMMIGRATION CLINIC**
1311 Miller Drive Suite, E-273
Coral Gables, Florida 33146
Tel: (305) 284-3576
Fax: (305) 284-6092
rsharpless@law.miami.edu

Kathryn S. Lehman
Florida Bar No.: 95642
Chad A. Peterson
Florida Bar No.: 91585
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
klehman@kslaw.com
cpeterson@kslaw.com

Paul R. Chavez
FL Bar No. 1021395
Maia Fleischman
FL Bar No. 1010709
**SOUTHERN POVERTY LAW CENTER**
2 S. Biscayne Blvd., Ste. 3200
Miami, FL 33101
Tel: (305) 537-0577
paul.chavez@splcenter.org
maia.fleischman@splcenter.org

Mark Andrew Prada
Fla. Bar No. 91997
Anthony Richard Dominguez
Fla. Bar No. 1002234
**PRADA URIZAR, PLLC**
3191 Coral Way, Suite 500
Miami, FL 33145
Tel.: (786) 703-2061
Fax: (786) 708-9508
mprada@pradaurizar.com
adominguez@pradaurizar.com

Lisa Lehner
Florida Bar No. 382191
**AMERICANS FOR IMMIGRANT JUSTICE**
5355 NW 36 Street, Suite 2201
Miami, FL 33166
Tel: (305) 573-1106 Ext. 1020

Andrea Montavon McKillip
Florida Bar No. 56401
**LEGAL AID SERVICE OF BROWARD COUNTY, INC.**
491 North State Road 7
Plantation, Florida 33317
Tel. (954) 736-2493

Fax: (305) 576-6273
Llehner@aijustice.org

Fax (954) 736-2484
amontavon@legalaid.org

*Counsel for Petitioners*

- 10 -