UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 20-21553-Civ-COOKE/GOODMAN**

PATRICK GAYLE, *et al.*,

      Petitioners-Plaintiffs, on behalf of
      themselves and those similarly situated,

vs.

MICHAEL W. MEADE, *et al.*,

      Respondents-Defendants.

_____/

## ORDER APPOINTING SPECIAL MASTER

**THIS MATTER** is before the Court on Petitioners' Emergency Motion to Compel Compliance with the Court's June 6, 2020 Preliminary Injunction. ECF No. 163.

On May 20, 2020, Petitioners filed a Motion to Compel alleging that the Miami Field Office of Immigration and Customs Enforcement (hereinafter "ICE") was in violation of the Court's April 30, 2020 Temporary Restraining Order because ICE was conducting transfers under unsanitary and unsafe conditions; social distancing was still not feasible at the detention facilities at issue;[1] and detainees had limited or inadequate access to soap, hand sanitizer, masks, and cleaning supplies. ECF No. 106 at p.3.

On June 6, 2020, this Court entered a Preliminary Injunction, which addressed Petitioners' Motion to Compel, instructing ICE to, *inter alia*, (1) cease the practice of comingling unconfirmed COVID-19 cases with confirmed COVID-19 cases; (2) provide detainees with sufficient quantities of CDC-recommended cleaning supplies and disinfectants; (3) provide all detainees and staff members with masks and educate them on the importance of its use; (4) provide detainees with unrestricted access to hand soap, hand sanitizer, and hand towels; and (5) educate detainees on the COVID-19 pandemic. ECF No.

---

[1] The three detention facilities at issue are the Krome Detention Center in Miami ("Krome"), the Broward Transitional Center in Pompano Beach ("BTC"), and the Glades County Detention Center in Moore Haven ("Glades").

1

158 at pp.38-40. The Preliminary Injunction permitted ICE to conduct transfers, but only after first performing a verbal screening and a temperature check as outlined in the CDC Guidelines before the individual leaves the facility. *Id.*

Yet, for the second time since the commencement of this Action, Petitioners have filed another Motion to Compel, this time alleging that ICE is not in compliance with the Court's June 6, 2020 Preliminary Injunction Order. ECF No. 163 at p.1. Similarly, Petitioners allege that despite the Court's Preliminary Injunction Order, conditions at the detention centers have further deteriorated and ICE continues to (1) cohort detainees confirmed with COVID-19 with individuals who have not been confirmed with the disease[2]; (2) fail to provide cleaning supplies and masks to detainees; and (3) fail to educate detainees about COVID-19. *Id.* at pp.2-4. Moreover, social distancing is not promoted or enforced within the detention centers. Petitioners' voluminous sworn declarations[3] and credible live testimony,[4] support these

---

[2] Petitioner Steve Cooper, detained at Glades, submitted a declaration asserting that he is housed in a pod with about 25 people, some of whom have tested positive for COVID-19 and some of whom have not been tested for the virus. ECF No.163-1 at ¶12. Petitioner Astley Thomas, detained at Glades, tested positive for COVID-19 on June 4, 2020, and is in a pod with approximately 61 people, many of whom have not been confirmed with COVID-19. ECF No. 163-3 at ¶¶7-8. Petitioner Jermaine Scott, detained at Glades, has been told he may have tested positive for COVID-19 and is in a pod with asymptomatic people. ECF No. 163-4 at ¶¶23-24. Petitioner Roberto Leon, detained at Glades, tested positive for COVID-19 and has been assigned to a pod in which people who have been tested for COVID-19 are mixed with people who haven't been tested. ECF No. 163-5 at ¶15. Petitioner Paul Hamilton, detained at Glades, asserts that his pod "is a mix of people who have tested positive for COVID-19, those who are waiting for their test results, and individuals like myself who have not been tested." ECF No. 163-6 at ¶27. Petitioner Terrance Taylor, detained at Glades, is in a pod with people who have tested positive for COVID-19 and people are not "given the chance to [] live separately from those who are COVID-19 positive." ECF No. 163-7 at ¶32.

[3] The Court is in receipt of hundreds of notes and letters from several detainees currently confined at the three detention centers at issue. *See, e.g.*, ECF No. 170. These letters not only corroborate Petitioners' alleged facts, they also expand on the grim conditions of their confinement as related to the coronavirus pandemic.

[4] On June 25, 2020, the Court held a Hearing on Petitioner's Emergency Motion to Compel during which Petitioners presented two live witnesses—Astley Thomas and Jermaine Scott— each detained at Glades. Mr. Thomas testified that he has tested positive for COVID-19 and he is cohorted with individuals who have not been tested for the virus. Mr. Scott testified that he believes he has also contracted COVID-19, which he attributes to living in close quarters with other individuals with the virus. Despite having taken a COVID-19 test, Mr. Scott was never provided with his results. Each witness testified that social distancing is not enforced at Glades.

allegations, which also assert that, ICE continues to transfer detainees without first confirming their COVID-19 status or providing new masks before commencing transfer. *Id.* at p.4.

ICE refutes Petitioners' claims and maintains that it is in compliance with the Court's Preliminary Injunction Order in that it provides and replenishes adequate supplies of personal protective equipment, soap, hand sanitizer, water, and cleaning materials. ECF No. 165-1 at ¶¶4-7; 9-10. ICE further maintains that it has educated detainees. *Id.* at ¶12. ICE admits that it cohorted the entire population at Glades at one point, but it denies that it currently comingles confirmed COVID-19 cases with asymptomatic individuals.[5] *Id.* at ¶¶14; 16; 18-19. ICE makes no response to Petitioners' allegations concerning the lack of social distancing within the detention centers themselves, except to state that it has developed seating charts for its vans and buses "to maximize social distancing while transporting ICE detainees." *Id.* at ¶8.

The Eighth Amendment "'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)). Various conditions, "alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency." *Rhodes*, 452 U.S. at 347. A continued failure to provide detainees with bare minimum necessities and supplies to

---

[5]At the June 25, 2020 Hearing, ICE admitted that during the pendency of this Action, it discovered 58 COVID-19 cases at Glades. Rather than identifying and isolating individuals who had contracted the virus, ICE opted to cohort the entire 320-person population at Glades for 14 days. ICE argues that such cohorting is permitted under the CDC's Guidelines, which states in pertinent part, "[i]f an entire housing unit is under quarantine due to contact with a case from the same housing unit, the entire housing unit may need to be treated as a cohort and quarantine in place." The CDC's *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (March 23, 2020) at p.19. As the Court has previously noted, the CDC's Guidelines on the issue of cohorting is clear—cohorting should be avoided and utilized only as a last resort, not as a primary preemptive measure. The CDC's Guidelines specifically caution that "[c]ohorting multiple quarantined close contacts of a COVID-19 case could transmit COVID-19 from those who are infected to those who are uninfected. Cohorting should only be practiced if there are no other available options." *Id.* In the Court's view, had ICE adhered to the CDC's Guidelines cautioning against arbitrary transfers and comingling symptomatic individuals with non-confirmed COVID-19 cases, the enormous Cohort created at Glades may have been avoided.

survive the pandemic may be evidence of deliberate indifference to medical needs, tantamount to the infliction of cruel and unusual punishment because it increases the risk of exposure to a lethal and highly-contagious disease.[6] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)("[D]eliberate indifference to serious medical needs of prisoners [is] proscribed by the Eighth Amendment."); *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (noting that the Government acts with deliberate indifference when it "ignore[s] a condition of confinement that is sure or very likely to cause serious illness."). And courts may enjoin the knowing detention of people in unsafe conditions even when state law compels that detention. *Id.* at 35.

Generally, special masters have been appointed when resolution of a case or a dispute requires resources or time in excess of what the court can reasonably provide. *See Reynolds v. McInnes*, 338 F.3d 1201, 1219 (11th Cir. 2003) (suggesting that "the district court. . .consider increased use of special masters where appropriate...if the judicial time and effort required to bring [the] litigation to a proper end in a reasonably prompt manner exceeds that which the district court judge with [her] full regular docket can devote to the case.") Further, the question of whether a special master should be appointed is left to the discretion of the trial court. *La Buy v. Howes Leather Co.*, 352 U.S. 249, 262 n.3 (1957) ("[Rule 53] as presently framed vests discretion in the District Courts.") In balancing Petitioners' allegations with ICE's submissions, each of Petitioners' allegations, if true, would be in direct contravention of the Preliminary Injunction Order. However, ICE's submissions to the Court, although conflicting with Petitioners' claims, appear to comply with the Preliminary Injunction Order. Accordingly, the Court finds it appropriate to appoint a Special Master pursuant to Federal Rule of Civil Procedure, Rule 53 to assess whether ICE is committing an ongoing violation of the detainees' constitutional rights.[7]

---

[6] There is a subjective and objective standard that a detainee must meet in order to prove deliberate indifference to a medical need in violation of the Eighth Amendment. The analysis is discussed in full in the Preliminary Injunction Order entered on June 6, 2020. *See* ECF No. 158 at pp.28-33.

[7] The Court observes that the Magistrate Judge initially recommended that the Court appoint a neutral expert who would assess (1) the number of detainees who could be released to achieve the most social distancing possible and (2) whether the protocols established by ICE's Pandemic Response Plan were being met. *See* ECF No. 63 at ¶9.

Accordingly, it is hereby **ORDERED and ADJUDGED** that the Court appoints a special master in this matter as follows:

I. **Appointment of the Special Master**

1. The Matthew C. Dates, of Stearns Weaver Miller Weissler Alhadeff & Sitterson P.A. in Miami, Florida is hereby appointed to serve as Special Master in this matter pursuant to Fed. R. Civ. P. 53(a).

2. The Special Master's appointment will become effective upon his filing an affidavit disclosing that there is no ground for disqualification under 28 U.S.C. § 455 pursuant to Fed. R. Civ. P. 53(a)(2) and (b)(3) and shall continue until September 1, 2020, (the "Termination Date"). If there are no grounds for disqualification or if all grounds for disqualification have been waived pursuant to Fed. R. Civ. P. 53(a)(2), the Special Master is directed to proceed with all reasonable diligence to complete the duties assigned by this Order.

3. During the course of this matter, the Special Master and the Parties shall notify this Court immediately if they become aware of any potential grounds that would require disqualification.

II. **Accountability of the Special Master**

4. The Special Master is independent and is accountable only to the Court. The parties shall not supervise the Special Master. However, in the course of his work, the Special Master may consult with the Respondents, their agents, counsel, or employees, and any other person the Special Master deems necessary to perform the scope of his duties.

III. **Limited Scope and Duties of the Special Master**

5. The purpose and authority of the Special Master is limited; pursuant Fed. R. Civ. P. 53(c) the Special Master may:

    - Request a party to produce documents to the extent the Special Master deems it necessary to perform the scope of his duties. The parties reserve the right to object to the production of documents and/or electronically stored information ("ESI") on privilege or other grounds articulated under Fed. R. Civ. P. 26 and 34. The Special Master shall consider and rule on any objections. Any order on

      discovery is appealable to the Court in accord with Fed. R. Civ. P. 53(f)(2). Any documents produced shall be produced only to the Special Master.

- Communicate *ex parte* with the Court or any party at any time pursuant to Fed. R. Civ. P. 53(b)(2)(B). Generally, the Special Master shall not communicate *ex parte* with any party without first providing notice to the other parties.

6. Any Party wishing to respond to or object to any Special Master report, statement and/or recommendation must file such response or objection with the Court within seven (7) days from the day the Special Master files the report, statement and/or recommendation. Any opposition shall be filed within four (4) days after the objection is filed.

7. Pursuant to Fed. R. Civ. P. 53(f)(1), in acting on a report or recommendation of the Special Master, the Court shall afford the parties an opportunity to present their positions and may adopt or affirm; modify; wholly or partly reject; resubmit to the Special Master with instructions; or make any order it deems appropriate. The standards of review contained in Fed. R. Civ. P. 53(f)(3)-(5) shall apply.

8. To the extent the Special Master determines that he requires the services of clerical staff, consultants, and experts to assist him in his work, the Special Master shall inform the parties of the following:

   a. The identity of the person who will provide such services;
   b. The nature of the services; and
   c. The anticipated costs.
      a. Any party shall have three (3) business days to object to the retention of any such services. If neither side objects, the Special Master may retain the services in question.
      b. If a party objects and the objection cannot be resolved by the Special Master, the objecting Party may present its objection to the Court no later than three (3) days after the Special Master has made a final decision on the retention of services.

9. The Special Master shall inspect the three detention centers at issue prior to or on August 15, 2020. The Special Master shall provide a report to the parties and the Court

by September 1, 2020 at 4:00 P.M. The report shall be filed under seal until a redacted version that does not include photographs or video depicting the detention centers can be publicly filed. The report shall include factual information, photographs and/or video, documenting whether and to what extent the steps outlined in the Preliminary Injunction Order, ECF No. 158, have been taken.

10. The inspection at each facility shall be completed in a three-hour time frame and shall include the following areas:
    - All housing units where the Petitioners are housed;
    - Housing units where quarantined detainees are being held;
    - The ingress/egress staff screenings;
    - Medical facilities;
    - Dining facilities;
    - Laundry facilities;
    - Shower/bathroom facilities; and
    - Sleeping units/pods.

11. The Special Master's report shall include, among other information he deems necessary, any information he is able to ascertain regarding the following:
    - Cleanliness of the housing units;
    - Social distancing measures;
    - Availability and stock of cleaning supplies and personal protective equipment; and
    - Availability and stock of hygienic and disinfecting supplies.

12. No attorney for either party shall attend the inspection. Each detention facility shall assign one or more individuals to accompany the Special Master and shall take photographs or videos at the direction of the Special Master.

13. All attorneys shall keep confidential any videos or photographs of any of the detention centers and shall not be used for any purpose other than this litigation and shall not be provided to any third-party or inmate absent leave of the Court. All videos or photographs acquired at the three detention centers shall be filed under seal.

14. Privileged information presented to the Special Master shall remain privileged and confidential, and shall be disclosed to the Court only upon consent of counsel.

## IV. Term of Service

15. The Special Master's term of service will end at the earlier of (a) the Termination Date or (b) when the Court terminates the appointment.

## V. Compensation

16. The Court has considered the fairness of imposing the likely expenses on the parties and will take the necessary steps to protect against unreasonable expenses or delay. The Special Master shall be compensated at the rate of $650/hour, the expense of which shall be shared equally by the parties and paid monthly.[8] The Special Master shall maintain and provide summary fee statements to all Counsel.

## VI. Personal Protective Equipment

17. Respondents shall reimburse the Special Master for the cost of personal protective equipment used during the inspection of any of the detention facilities at issue.

## VII. Amendments

18. Pursuant to Fed. R. Civ. P. 53(b)(4), this Order may be amended at any time after notice to the Parties and an opportunity to be heard.

It is further **ORDERED and ADJUDGED** that the Court **DEFERS** ruling on Petitioners' Emergency Motion to Compel Compliance with the Court's June 6, 2020 Preliminary Injunction, ECF No. 163, pending the results of the Special Master's report.

---

[8] The Special Master shall charge for travel time.

**DONE and ORDERED** in chambers, at Miami, Florida, this 17th day of July 2020.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Jonathan Goodman, U.S. Magistrate Judge*
*Counsel of record*