UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 20-21553-Civ-COOKE/GOODMAN

PATRICK GAYLE, et al.,

    Petitioners-Plaintiffs, on behalf of
themselves and those similarly situated,

v.

MICHAEL W. MEADE, et al.,

    Respondents-Defendants.

_____/

**NAMED PETITIONER DEIVYS PEREZ VALLADARES' TRAVERSE AND MEMORANDUM OF LAW IN RESPONSE TO RETURN**

Deivys Perez Valladares (hereinafter "Mr. Perez Valladares" or "Petitioner"), a named Petitioner, files this Traverse and Memorandum of Law in response to the Respondents' Return. ECF 274

**I.    FACTS**

In the Declaration filed by ICE with the Respondents' return, it is conceded that the Petitioner is a member of a subclass in the case, *Fraihat* v. *ICE*, 19-cv-01546 (C.D. Cal. Apr. 20, 2020), due to his diabetes mellitus diagnosis. He has been diagnosed with hyperlipidemia and insulin-dependent diabetes mellitus (IDDM). ECF 274-7 at 2 ¶ 7. The Declaration does

1

not, however, explain why the Petitioner has not been released in light of his vulnerability. The Declarant does cite to two requests for bond from an immigration judge in Georgia that were denied in September and October 2019. ECF 274-7 The Orders denying bond note as grounds: "Limited ties to US", "Speculative relief" and "Recent arrival". ECF 274-4 and 274-5 If the Respondents' rely on these orders as grounds not to release Mr. Perez Valladares, the reliance is misplaced. First, and most significantly, the denials of bond predate the COVID-19 epidemic that has made the Petitioner's detention a serious threat to his health. Second, the Petitioner has a sister who is a Legal Permanent Resident who lives in Miami where he can live if released, so his ties to the community are significantly improved since his bond was denied.

Finally, both the immigration judge and now ICE have failed to consider alternatives to detention that could both eliminate any risk of flight and potentially save the Petitioner's life if he was released to live with his sister. The primary purpose of immigration detention is to ensure a noncitizen's appearance during removal proceedings. *Zadvydas* v. *Davis*, 533 U.S. 678 (2001). Detention is not reasonably related to this purpose if there are alternative conditions of release that could mitigate the risk of flight. See *Bell* v. *Wolfish*, 441 U.S. 520, 538 (1979). ICE's alternatives to detention program—the Intensive Supervision Appearance Program (ISAP)—has achieved extraordinary success in ensuring appearance at removal proceedings, reaching compliance rates close to 100 percent. See *Hernandez* v. *Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) (observing that ISAP "resulted in a 99% attendance rate at all EOIR hearings and a 95% attendance rate at final hearings"). It follows that alternatives to detention must be considered in determining whether release is warranted, and they were not.

ICE also informs the court that the Petitioner was supposed to be removed on April 24, 2020[1], but the flight was cancelled due to COVID-19. ECF 274-7 ¶ 9 Further, ICE informs the court that "[t]he Cuban border is expected to reopen to flights this month and once it does Perez Valladares will be rescheduled for a new removal flight." *Id*. This assurance, without any support or citation, is illusory. Clearly, by now, it is recognized that any predictions about the course of this epidemic are precarious. Currently, numerous countries are not allowing entry to Americans and ICE's deportation of infected detainees is well documented.[2] Recent news reports have noted that Cuba is on lockdown and there are no scheduled flights to the island[3]. Against this background, any removal flights to Cuba are speculative, at best, and this is no time for guesswork with lives in the balance.

## II.    MEMORANDUM OF LAW

### A. Prolonged Detention

At the time Petitioner filed his Release request, 180 days had not elapsed since he was ordered removed; now it has. Petitioner's indefinite detention violates the Due Process

---

[1] In the Return, the date of the thwarted removal is "August 24, 2020" ECF 274 at 3, which is apparently an error and conflicts with the Declaration filed by ICE. ECF 274-7 ¶ 9

[2] Emily Kassie and Barbara Marcolini, 'It Was Like a Time Bomb': How ICE Helped Spread the Coronavirus, The New York Times, (July 10, 2020), https://www.nytimes.com/2020/07/10/us/ice-coronavirus-deportation.html. "An investigation by The New York Times in collaboration with The Marshall Project reveals how unsafe conditions and scattershot testing helped turn ICE into a domestic and global spreader of the virus – and how pressure from the Trump administration led countries to take in sick deportees…We also tracked over 200 deportation flights carrying migrants, some of them ill with coronavirus, to other countries from March through June. Under pressure from the Trump administration and with promises of humanitarian aid, some countries have fully cooperated with deportations…So far, the governments of 11 countries have confirmed that deportees returned home with Covid-19."

[3] "Although the country is accepting foreign tourists in the keys that surround the island, the outbreak in Havana has prevented the reopening of José Martí International Airport, Cuba's central travel hub, and the only one receiving flights from the United States." https://www.miamiherald.com/news/nation-world/world/americas/cuba/article244803867.html

Clause of the Fifth Amendment, as ruled by the United States Supreme Court in *Zadvydas*. His indefinite detention also constitutes a violation of Title 8 U.S.C. § 1231(a)(1)(A) that requires an alien to be removed within a period of 90 days from the order of removal, or else released.

The Due Process Clause of the Fifth Amendment requires that the deprivation of Petitioner's liberty be narrowly tailored to serve a compelling government interest. See *Washington* v. *Glucksberg*, 521 U.S. 702 (1997) (reaffirming that due process "forbids the government to infringe certain 'fundamental' liberty interests ... unless the infringement is narrowly tailored to serve a compelling state interest"). While Respondents have an interest in detaining Mr. Perez Valladares in order to effectuate removal, that interest does not justify his prolonged, indefinite detention for over six months, since he is not significantly likely to be removed to Cuba in the reasonably foreseeable future, especially in light of the dangers posed by COVID-19.

The U.S. Supreme Court, in *Zadvydas* interpreted 8 U.S.C. § 1231(a) to allow continued detention only for a period reasonably necessary to secure the alien's removal, because any other reading would go beyond the government's articulated interest – to affect the alien's removal. 533 U.S. 678 (2001). *See also Clark* v. *Martinez*, 543 U.S. 371 (2005) (habeas petitions granted where detention of aliens goes beyond six months post-removal order and removal to Cuba not reasonably foreseeable).

In *Zadvydas*, the Court held that 8 U.S.C. § 1231(a)(6), when "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal form the United States." 533 U.S. at

689. A "habeas court must [first] ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id*. at 699. If the individual's removal "is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by the statute." *Id*. at 699-700. In determining the length of a reasonable removal period, the *Zadvydas* Court adopted a "presumptively reasonable period of detention" of six months. *Id*. at 701. After six months, the government bears the burden of disproving an alien's "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Clark* v. *Martinez* at 386.

A noncitizen who has been detained beyond the presumptive six-month period should be released where the government is unable to present documented confirmation that the foreign government at issue will agree to accept the particular individual in question. *Clark* v. *Martinez*; *Agbada* v. *John Ashcroft*, 2002 U.S. Dist. LEXIS 15797 (D. Mass. August 22, 2002) (court "will likely grant" habeas petition after fourteen months if ICE is "unable to present document confirmation that the Nigerian government has agreed to [petitioner's] repatriation"); *Alexis* v. *Smith*, 2011 WL 3924247 *4 (W.D. La. 2011) (ICE's inability to obtain travel documents from Haitian government shows no significant likelihood of alien's removal in the reasonable future.).

The Respondents' suggestion that they may be able to effectuate his removal to Cuba sometime in the future when flights resume rings hollow. Today, over four months since they claim he was scheduled to depart, the Petitioner remains in custody as the COVID count rises, without a flight date or any real indication from Respondents that he may be removed in the reasonably foreseeable future. *See Ali* v. *Dep't of Homeland Sec.*, No. 4:20-CV-0140, 2020 WL 1666074, at *3 (S.D. Tex. Apr. 2, 2020) ("Given the current travel restrictions in place at

5

the moment in both the United States and Pakistan, and given the speed and unpredictability with which the global pandemic has been spreading, the Government has sensibly halted attempts to obtain a flight itinerary or a date of removal for Petitioner. As the situation worsens both in the United States and in Pakistan and government extend restrictive measures accordingly, there is no significant likelihood that the Government will be able to remove Petitioner to Pakistan in the foreseeable future."); see also *Rual* v. *Barr*, No. 6:20-CV-06215 EAW, 2020 WL 3972319, at *3 (W.D.N.Y. July 14, 2020) (where necessary travel documents could not be obtained where Embassy was closed due to the COVID-19 pandemic, there was no set timeframe in which the Embassy was expected to reopen, and Respondents acknowledged that it is "impossible to judge when the Embassy [will] reopen," Petitioner's initial burden to demonstrate that there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future found satisfied). Based upon the facts of Mr. Perez Valladares prolonged detention, in accordance with *Zadvydas*, his immediate release is warranted.

### B. Jurisdiction

This court has already ruled that it has jurisdiction to review claims related to conditions of confinement at Glades County Detention Center, which, like Baker, is located in the Middle District of Florida, citing *Masingene* v. *Martin*, 424 F. Supp. 3d 1298, 1303 (S.D. Fla. 2020) ("[A] district court acts within its respective jurisdiction. . .as long as the custodian can be reached by service of process.")(internal citations omitted). ECF No. 76 at 3, n.9 Further, the Court has also ruled that it maintains jurisdiction over all detainees in this action, even those who have been transferred outside of the state of Florida. *Ahrnes* v. *Clark*, 335 U.S. 188, 193 (1948) (stating, "jurisdiction of the District Court [is] not defeated [by transferring a

habeas corpus petitioner to a different district and court], no matter how proper the motive behind the removal. . . in that situation the court can act as long as it can reach a person who has custody of the petitioner."); see also *Ex parte Mitsuye Endo,* 323 U.S. 283, 306 (1944); *Spear*s v. *Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (finding that claims specific to facility were mooted by transfer but challenge to systemic use of segregation remained live where plaintiff remained in segregation after transfer). ECF 158 at 37

### C. Gomez

The Respondents have not addressed the Petitioner's central position that ICE's inability to improve the conditions of detention has rendered this case not about conditions but about the fact of detention. This is not a distinction without a difference. Respondents, relying on *Calley* v. *Callaway*, 496 F.2d 701 (5th Cir. 1974), continue to argue that habeas relief is only available where the fact of conviction is challenged. ECF 274 at 6. Rather than buttressing their argument, the *Calley* decision supports the Petitioner's release in this case. The *Calley* court made clear that challenging the fact of conviction is not the only basis for habeas relief. Indeed, the Fifth Circuit noted several examples of extraordinary circumstances that could justify habeas relief including "serious deterioration of the petitioner's health while incarcerated … or possibly extraordinary delay in processing a habeas corpus petition." *Calley*, 496 F.2d at 702.

### CONCLUSION

For the foregoing reasons, Deivys Perez Valladares, asks this Court to release him or, in the alternative, to issue an Order to Show Cause and hold a hearing.

Respectfully submitted,

s/ Lisa Lehner

Lisa Lehner
Florida Bar No. 382191
AMERICANS FOR IMMIGRANT JUSTICE
6355 NW 36 Street, Suite 2201
Miami, FL 33166
Phone: (305) 573-1106 Ext. 1020
Fax: (305) 576-6273
E-mail llehner@aijustice.org

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of August 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

s/ Lisa Lehner
Lisa Lehner