UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-21553-Civ-COOKE/GOODMAN

**PATRICK GAYLE**, et al.,

    Petitioners-Plaintiffs, on behalf of themselves
and those similarly situated,

v.

**MICHAEL W. MEADE**, et al.,

    Respondents-Defendants.

_____/

**NAMED PETITIONER MOHAMED HASAN ALI'S REPLY TO THE RESPONDENTS' RETURN**

The Petitioner, Mohamed Ali (the "Petitioner" or Mr. Ali), files this reply to the Return filed by the Respondents. ECF 281.

## MEMORANDUM OF LAW

**A. The Court Can Order the Release of a Petitioner on Constitutional Grounds Despite the Fact that He is Subject to Mandatory Detention.**

The Respondents contend that because the Petitioner is detained pursuant to 8 U.S.C. §1226(c) his detention is not in violation of Due Process. However, mandatory detention does not strip this Court of its ability to release the Petitioner on the grounds that his detention violates Due Process.

1

Mandatory detention poses no barrier to release on constitutional grounds. *See, e.g., Vazquez Barrera* v. *Wolf*, No. 4:20-CV-1241, 2020 WL 1904497, at *5 (S.D. Tex. Apr. 17, 2020) ("[T]he Supreme Court has consistently allowed for habeas challenges to detention that is statutorily mandated by the Immigration and Nationality Act."); see also *Singh* v. *Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("While the INA does restrict jurisdiction in federal courts for certain claims, it does not restrict habeas jurisdiction for petitions that raise constitutional claims.") Indeed, in order for a statutory provision to bar habeas review, the Supreme Court has required "a particularly clear statement" of Congress's intent to do so. *Demore* v, *Kim,* 538 U.S. 510, 552 (2003) ("detaining an alien requires more than the rationality of a general detention statute; any justification must go to the alien himself.") 538 U.S. at 517 (citing *INS* v. *St. Cyr*, 533 U.S. 289, 308-09 (2001)). Respondents have not shown evidence of such congressional intent as there is none. Thus, mandatory detention statutes do not bar this Court's power to issue relief through a writ of habeas corpus." *Barrera* v. *Wolf*, No. 4:20-CV-1241, 2020 U.S. Dist. LEXIS 67640, at *14-15 (S.D. Tex. Apr. 17, 2020).

As additional indicia that mandatory detention does not preclude release, Respondents themselves "also [have] discretion to release individuals, including those who are "mandatorily detained" and to use alternatives to detention to achieve governmental objectives." *Fraihat* v. *United States Immigration & Customs Enf't,* No. EDCV 19-1546 JGB (SHKx), 2020 U.S. Dist. LEXIS 72015, at *74 (C.D. Cal. Apr. 20, 2020). Further, ICE has the authority under 8 U.S.C. 1182(5)(A) to parole detainees "for urgent humanitarian reasons or significant public benefit". Therefore, this is not a case where Congress narrowly circumscribed the power of the Attorney General or Department of Homeland Security to release.

Following *Zadvydas* and *Demore*, every court of appeals to confront the issue has found that noncitizens subject to mandatory detention have the right to challenge the justification for detention before a neutral decisionmaker—either pursuant to the Due Process Clause or to avoid serious constitutional concerns. *See Sopo* v. *U.S. Att'y Ge*n., 825 F.3d 1199 (11th Cir. 2016), vacated, 890 F.3d 952 (11th Cir. 2018) (addressing detention under 8 U.S.C. § 1226(c)); *Reid* v. *Donelan*, 819 F.3d 486 (1st Cir. 2016), withdrawn and vacated, 2018 WL 4000993 (1st Cir. 2018) (same); *Lora* v. *Shanahan*, 804 F.3d 601 (2d Cir. 2015) (same); *Rodriguez* v. *Robbins*, 804 F.3d 1060 (9th Cir. 2015), *rev'd sub nom. Jennings*, 138 S. Ct. 830 (2018) (§§ 1226(c), 1225(b)); *Diop* v. *ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011) (§ 1226(c)); *Diouf* v. *Napolitano*, 634 F.3d 1081 (9th Cir. 2011) (§ 1231(a)); *Ly* v. *Hansen*, 351 F.3d 263 (6th Cir. 2003) (§ 1226(c)).

Courts routinely order the release of people in mandatory detention, even when they are detained under § 1226(c). *See Moore* v. *Nielsen*, No. 418CV01722LSCHNJ, 2019 WL 2152582, at *9 (N.D. Ala. May 3, 2019) ("[A]n appreciable number of district courts since *Jennings* have ruled that immigrants facing §§ 1225(b) and 1226(c) removal proceedings, regardless of their immigration status, enjoy due process rights against prolonged detention."). Since the COVID pandemic struck this country, many district courts facing petitioners like Mr. Ali have ruled that the detainees' constitutional rights supersede the statutory category under 1226(c) "detention of criminal aliens". *See, e.g.*, *Vazquez Barrera* v. *Wolf*, No. 4:20-CV-1241, 2020 WL 1904497, at *5 (S.D. Tex. Apr. 17, 2020) ("[T]he Supreme Court has consistently allowed for habeas challenges to detention statutorily mandated by the Immigration and Nationality Act."); *Valenzuela Arias* v. *Decker*, No. 20 CIV. 2802 (AT), 2020 WL 1847986 (S.D.N.Y. Apr. 10, 2020) (concluding that the respondents "failed to justify [p]etitioners' continued detention in unsafe conditions" and "courts have the authority to order those detained in

3

violation of their due process rights released, notwithstanding § 1226(c)"); *Basank* v. *Decker*, No. 20 CIV. 2518 (AT), 2020 WL 1481503, at *6 (S.D.N.Y. Mar. 26, 2020) ("[C]ourts have the authority to order those detained in violation of their due process rights released, notwithstanding § 1226(c)"); *Bent* v. *Barr*, No. 19-CV-06123-DMR, 2020 WL 1812850, at *2 (N.D. Cal. Apr. 9, 2020) ("To the extent that Respondents claim Bent is absolutely prohibited from seeking release because he is mandatorily detained under 18 U.S.C. § 1226(c), the court has already rejected that argument."); *Ferreyra* v. *Decker*, No. 20 CIV. 3170 (AT), 2020 WL 1989417, at *11 (S.D.N.Y. Apr. 27, 2020) ("[C]ourts have the authority to order those held in violation of their due process rights released, notwithstanding § 1226(c)"); *Hernandez* v. *Wolf*, et al., No. 20-cv-00617-TJH, (C.D. Ca. April 1, 2020) ("Hernandez's habeas petition and the relief it seeks from this Court are not barred by the fact that he might be subject to mandatory detention pursuant to INA § 236(c); *Malam* v. *Adducci* et al., No. 20-cv-10829, at *13 (E.D. Mich. April 5, 2020), as amended (Apr. 6, 2020) ("Petitioner's continued detention is in violation of the United States Constitution, to which 8 U.S.C. § 1226(c) must give way.").

Recently, another court in the Southern District confronted the Respondents' blanket claim that mandatory detention *per se* precludes release. In *Portuondo* v. *Field Office Dir.*, 20-cv-21543-KMW (S.D. Fla. May 7, 2020) ICE refused to release a Cuban man detained at Krome who suffered from prostate cancer and was indisputably at high risk of contracting a severe case of COVID-19. At a hearing on May 4, 2020, the Government informed Judge Williams of ICE's categorical position that it could not release the petitioner because he was in "mandatory detention." *See Id.* at 2 & 4 n.4. Unpersuaded, Judge Williams court ordered him released, noting that ICE has lost this position repeatedly in district courts. *See Id.* at 6-11.

### B. The Eleventh Circuit Decision in *Gomez v. United States*[2] Does Not Preclude Release Under the Circumstances of this Case

In arguing that the Court cannot order Mr. Ali's release under *Gomez*, the Respondents do not address, much less challenge, Mr. Ali's point that Respondents have admitted that they cannot remedy the conditions that make Krome unsafe for Mr. Ali, as this Court has repeatedly ordered them to do. Thus, it is the very fact of Mr. Ali's detention that puts him at risk of contracting COVID-19. Despite the fact that they concede that they cannot change the most significant conditions at Krome to allow for the requisite social distancing, Respondents cite to *Gomez* and in *Fernandez* v. *United States*, 941 F.2d 1488 (11th Cir. 1991) for the proposition that the appropriate relief from prison conditions that violate the Eighth Amendment is to require the discontinuance of the improper practices. ECF 281 at 4.[3] Yet, this Court has repeatedly required the discontinuance of unconstitutional conditions at Krome to little avail.

From the outset, the Court has observed that ICE has failed to ensure that all detainees housed at the three detention centers can practice social distancing. ECF 76 at 6. Further, Judge Cooke noted "ICE has flouted its own guidelines by, inter alia, failing to ensure that each detainee practices social distancing." *Id.* at 8. On May 25, 2020, ICE Officer Lopez-Vega reported to the Court that "rearranging furniture to allow for six feet of social distancing may not be feasible at detention facilities, where much of the furniture to include bunkbeds and benches is bolted to the floor." ECF 116-2 at ¶ 30. On June 6, in Judge Cooke's Omnibus Order, she observed: "ICE does not deny that social distancing is not possible." ECF 158 at 17. Finally, on July 17, Judge Cooke's Order notes that ICE no longer even responds to the detainees' complaints about the lack of social distancing. ECF 219 at 3. ICE's admission, tacit or explicit, that it cannot employ what is universally regarded as the most significant tool to combat COVID-19, has not changed.

---

[2] 899 F.2d 1124 (11th Cir. 1990)

What has changed dramatically is the spread of the virus in ICE detention, due, no doubt, in large measure to the detainees' inability to social distance. On April 13, when the Verified Petition was filed, there were no reported cases in the three facilities. ECF 1 at ¶ 282. The latest data provided by ICE states that 156 detainees have tested positive for COVID-19 at Krome, with 31 active cases and, recently one person died from COVID-19 at Glades. *See* ICE Guidance on COVID-19 (accessed August 18, 2020), https://www.ice.gov/coronavirus. Petitioner's expert opinion confirms that the most critical means to stop COVID is social distancing. ECF 1-2. Decl. of Dr. Shin. On this score, ICE has apparently given up on the most effective tool to fight the spread.

Mr. Ali suffers from depression and liver problems and is a former smoker, which places him at an increased risk of serious illness if he were to contract COVID-19. ECF 281-04 at ¶ 16; ECF 242-01 ¶ 4; *see* U.S. Immigration and Customs Enforcement, Enforcement and Removal Operation COVID-19 Pandemic Response Requirements at 9, (July 28, 2020), https://www.ice.gov/doclib/coronavirus/eroCOVID19responseReqsCleanFacilities.pdf. While Mr. Ali has a criminal history, his crimes were almost all related to an alcohol problem fueled by Post Traumatic Stress Disorder (PTSD). And Mr. Ali, who has addressed his mental health issues in detention, has now been sober for three years. ECF 242-01 ¶ 2; ECF 281-04 at ¶¶ 14,16. Further, Mr. Ali has identified an appropriate sponsor, his United States Citizen sister, who will provide a place where he can shelter at home.

---

[3] Respondents have also cited to *Calley* v. *Callaway*, 496 F.2d 701 (5th Cir. 1974). ECF 255 at 4. The *Calley* court, however, made clear that challenging the fact of conviction is not the only basis for habeas relief. Indeed, the *Calley* court noted several examples of extraordinary circumstances that could justify habeas relief including "serious deterioration of the petitioner's health while incarcerated … or possibly extraordinary delay in processing a habeas corpus petition." *Calley*, 496 F.2d at 702. Rather than adding anything new to the legal discussion, the *Calley* decision supports Mr. Ali's case.

ICE itself admits that Mr. Ali has COVID-19 risk factors. ECF 281-04 at ¶ 16. Further, ICE routinely uses alternatives to detention to release individuals, including the Intensive Supervision Appearance Program (ISAP), which allows for monitoring and has achieved success in ensuring compliance with deportation proceedings. *See Hernandez* v. *Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) (observing that ISAP "resulted in a 99% attendance rate at all EOIR hearings and a 95% attendance rate at final hearings"). Yet there is no indication that ICE considered any alternatives to detention when reviewing Mr. Ali's case. ECF 281-04. Indeed, despite identifying Mr. Ali as a vulnerable individual and despite *Fraihat*, there is no indication ICE considered him for release at all.

At the outset, Magistrate Judge Goodman recommended requiring ICE "to accelerate its review of its "Alternatives to Detention" program (or other protocols resulting in detainee release) with the goal of substantially increasing the rate and volume of detainees being released from the three facilities -- so that the medically-accepted objective of social distancing becomes feasible (by, for example, spacing out sleeping arrangements so that detainees are not sleeping right over, or immediately next to, other detainees)". ECF 63 at 69. There is no indication that any consideration of alternatives to detention was given in Mr. Ali's case. Moreover, there is no indication that ICE is accelerating a review of its Alternatives to Detention Program. The Courts efforts to "compel ICE to release" individuals and "to encourage ICE to be reasonable" have not achieved the desired outcome. ECF 69 at 8. Thus, Mr. Ali asks this Court to release him.

Respectfully submitted,

   /s Romy Lerner
ROMY LERNER
FL Bar No. 116713
Immigration Clinic
University of Miami School of
Law 1311 Miller Drive
Suite E273
Coral Gables, FL 33146
(305) 284-6092, telephone
(305) 284-6093,
facsimile
rlerner@law.miami.edu

8

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18TH day of August, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s Romy Lerner

Romy Lerner