UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-21553-Civ-COOKE/GOODMAN

**PATRICK GAYLE**, *et al.*,

    Petitioners-Plaintiffs, on behalf of themselves and those similarly situated,

**v.**

**MICHAEL W. MEADE**, *et al.*,

    Respondents-Defendants.

_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Defendants' Motion violates the most basic rule of summary judgment practice (which their Motion notably does not discuss): the Court must "view[] all evidence and draw[] all reasonable factual inferences in favor of the nonmoving party," that is, Plaintiffs. *See Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012). Even in an injunctive action where the district court will ultimately be the finder of fact, the court addressing a motion for summary judgment must draw all inferences in favor of the nonmoving party. *See Heron Develop. Corp. v. Vacation Tours, Inc.*, 814 Fed. App'x. 468, 472 (11th Cir. 2020).

Defendants nonetheless ignore all of the record evidence that does not support their theory of the case. In this case, Plaintiffs have submitted into the record dozens of affidavits. They have presented multiple witnesses at evidentiary hearings. They have taken several depositions. And the Court itself has made factual findings—including factual findings that Defendants have violated their own regulations and displayed deliberate indifference: "Credible testimony and sworn declarations filed in this matter after the issuances of the TRO suggest that ICE has only partially complied with its own directives or CDC Guidelines despite its submissions to the Court and paint a grim picture of an agency steeped in deliberate indifference." [*See* ECF 158 at 33.]

1

Ignoring **all** of this evidence, Defendants confine themselves to declarations from their own witnesses, designed to place events in the light most favorable to them. By scrupulously avoiding the entire body of evidence that contradicts their version of events, Defendants have confirmed that they do not have a valid case for summary judgment. The Court should deny their Motion.

## ARGUMENT

### A. Record Evidence Shows Defendants Have Violated their Own Regulations Concerning Protecting the Class From COVID-19.

Plaintiffs' first claim, under the *Accardi* doctrine, is based on Defendants' failure to follow their own policies and regulations designed to protect Plaintiffs and other people in their custody from COVID-19 infection. Specifically, Plaintiffs claim that Defendants have violated (1) the CDC Guidelines, (2) the 2011 Performance-Based National Detention Standards ("PBNDS") applicable Krome and BTC, and (3) the National Detention Standards ("NDS") applicable to Glades.

Defendants do not bother to deny that they have violated the CDC Guidelines, PBNDS, or NDS. Instead, they contend that these standards are not binding on them, and that they are free to disregard them with complete abandon. [*See* ECF 484 at 13 ("These guidelines and internal standards do not have the force and effect of law, nor do they confer any substantive rights.").] But the Court has already rejected this legal position, finding that the CDC Guidelines are binding on ICE through the PBNDS and NDS:

> Some ICE detention centers are subject to ICE's Performance-Based National Detention Standards 2011 ("PBNDS"), while other detention centers are subject to ICE's National Detention Standards ("NDS").24 Section 4.3(II)(10) of ICE's PBNDS requires that "Centers for Disease Control and Prevention (CDC) guidelines for the prevention and control of infectious and communicable diseases shall be followed." (PBNDS at 258.) Similarly, section 1.1(I) of the NDS, mandates "facilit[ies] will operate in accordance with all applicable regulations and codes, such as those of . . . the Centers for Disease Control and Prevention (CDC). . . ." (NDS at 1.) Accordingly, ICE issued its own set of directives and guidelines regarding the coronavirus pandemic that largely comports with the CDC's described guidelines.

[ECF 158 at 10 (alterations in original; footnotes omitted).] Defendants neither address this legal holding by the Court, nor explain why they believe the Court's conclusion is flawed.

Nor could they: Defendants have conclusively admitted that the CDC Guidelines are binding on them in responses to Plaintiffs' requests for admission:

1. ICE is required to implement CDC Guidelines.

**Response:** Admit as to the Three Detention Facilities.

2. ICE is required to follow CDC Guidelines.

**Response:** Admit as to the Three Detention Facilities, to the extent that the CDC Guidelines do not conflict with the court orders in this case

3. ICE is required to comply with ICE's ERO COVID-19 Pandemic Response Requirements.

**Response:** Admit as to the Three Detention Facilities.

[*See* Respondents' Responses to Pet'r's 1st Set of Requests for Admissions, Responses to Requests 1–3 (Ex. A); *see also id.* Responses to Requests 4 (admitting PBNDS apply to BTC & Krome), 6 (admitting NDS apply to Glades).]  These admissions are binding on Defendants.  *See* Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.").  Thus, Defendants are correct that there is no genuine dispute over whether they are bound by these standards but for the wrong reason: there can be no genuine dispute that Defendants **are** legally bound to follow these standards.

Not only are Defendants legally bound by CDC Guidelines, but the Court has already received evidence—and found—that Defendants have repeatedly violated the binding CDC Guidelines.  As the Court explained, the CDC Guidelines in place throughout the pendency of this action carefully limit the circumstances in which individuals in detention may be transferred and the steps needed to ensure the safety of the people being transferred and to prevent transfers from becoming vectors for spreading COVID-19:

> As previously noted, the CDC's Guidelines are clear that that transfers should be avoided or restricted and utilized as a last resort "unless necessary for medical evaluation, medical isolation/quarantine, clinical care, extenuating security concerns, or to prevent overcrowding." (CDC's Guideline at 9.) The CDC's Guidelines further state that individuals with confirmed cases should be restricted from leaving detention facilities "unless released from custody or if a transfer is necessary for medical care, infection control, lack of medical isolation space, or extenuating security concerns." (*Id.* at 17.) The CDC Guidelines also state that to the extent that a transfer is "absolutely necessary,"

3

> ICE is to "perform verbal screening and a temperature check as outlined in the [CDC Guidelines] before the individual leaves the facility." (*Id.* at 9.) If an individual does not clear the screening process, ICE is expected to "delay the transfer and follow the protocol for a suspected COVID-19 case—including putting a face mask on the individual, immediately placing them under medical isolation, and evaluating them for possible COVID-19 testing." (*Id.*) And "[i]f the transfer must still occur, ensure that the receiving facility has capacity to properly isolate the individual upon arrival." (*Id.*)

[ECF 158 at 29–30 (footnote omitted).] The Court further noted that ICE's April 2020 Pandemic Response Requirements ("PRR") required Defendants, where possible, to "'restrict transfers of detained non-ICE populations to and from other jurisdictions and facilities *unless* necessary for medical evaluation, isolation/quarantine, clinical care, or extenuating security concerns.'" [*Id.* at 30 (quoting PRR at 13) (emphasis in original).]

> Despite these clear CDC Guidelines, the Court received
>
> declarations and live testimony claiming that ICE continues to flout this Court's [Temporary Restraining] Order by (1) failing to consistently evaluate detainees for COVID-19 before transferring them to other detention centers, (2) failing to provide protective masks during the transfer process; and (3) failing to provide meaningful access to hygiene products soap, hand sanitizers, masks, gloves and cleaning supplies.

[*Id.* (footnote omitted) (citing ECF Nos.106; 106-2); *see also* .] As the Court explained, it received testimony on June 3, 2020 from Alejandro Ferrera Borges, who's "lived experience" concerning transfers showed that ICE was not following its obligations, and that it had in fact transferred Mr. Borges and others from South Florida to north Georgia and back in two days for no apparent reason:

> Mr. Borges testified that he was not tested for COVID-19 before he was transferred from BTC to Stewart Detention Center ("Stewart") in Georgia. He also testified that he was not processed at Stewart upon arrival. Rather, he was almost immediately transferred back to BTC. He was not tested before he was transferred from Stewart back to BTC. Mr. Borges also testified that he was not provided a mask during the transfer process, so he used the same mask, soiled from two days of wear, before his transfer from BTC to Stewart. Mr. Borges wore the same mask when he was transferred back to BTC. Disturbingly, guards did not wear masks during Mr. Borges' transfer process.

[ECF 158 at 31; *see also* June 3, 2020 Hr'g Tr. at 22–25 (Borges testimony) (Ex. B); *id.* at 38–40 (Valladares testimony concerning same trip).]

4

The Court likewise found that Defendants had violated the CDC Guidelines concerning "the practice of cohorting." As the court explained,

> the CDC's Guidelines state that the practice of cohorting should be utilized "only if there are no available options." (CDC's Guideline at 15.) Both the CDC's Guidelines and ICE's PRR state, "[o]nly individuals who are laboratory confirmed COVID-19 cases should be placed under medical isolation as a cohort. Do not cohort confirmed cases with suspected cases or case contacts." (Id. at 16; PRR at 14.)

[ECF 158 at 32.] But as the Court noted, "[d]espite the fact that its own Guidelines call for detention facilities to avoid group cohorting, ICE flagrantly flouts its own rules on the subject and groups asymptomatic detainees together." [*Id.* (footnote omitted).] In fact, as of the date this Court entered its Omnibus Order, "ICE admit[ted] that it [wa]s . . . cohorting 320 detainees at Glades—the entire detainee population—'as a precautionary measure, per the established protocol.'" [*Id.*; *see also* ECF 147-1 (June 4, 2020 Decl. of Liana J. Castano) ("There are 320 ICE detainees who are cohorted as a precautionary measure, per the established protocol.") (Ex. C); Respondents' Responses to Pet'r's 1st Set of Requests for Admissions, Responses to Request 22 (Ex. A).] And once again, individual testimony illustrated this larger issue: "Mr. Borges testified that upon transferring back to BTC, he was quarantined for 14 days" but that during that quarantine period "he was taken to recreation at the same time as individuals known to be sick with COVID-19." [*Id.*; *see also* June 3, 2020 Hr'g Tr. at 25–26 (Ex. B).] As the Court explained, these practices in violation of the CDC Guidelines "substantially increase a detainee's exposure to COVID-19." [ECF 158 at 32; *see also* June 2, 2020 Hr'g Tr. at 7–24 (testimony of Dr. Joseph Shin) (Ex. D).]

Given this, and the additional facts discussed in Plaintiffs' separate statement, it is little wonder Defendants spend no time denying that they have violated the CDC Guidelines and other binding guidance. It has already been conclusively established (and admitted) that these guidelines are binding. And there is more than ample evidence Defendants have repeatedly violated these binding guidelines. Defendants' attempt to dismiss the *Accardi* claim on summary judgment therefore fails.

### B. Record Evidence Shows Defendants Have Been Deliberately Indifferent to Class Members' Rights.

#### 1. Defendants' Repeated, Documented Violations of Controlling Protocols Show their Deliberate Indifference.

Defendants' deliberate indifference argument falls alongside their *Accardi* argument. As this Court noted in its Omnibus Order, the repeated violations of CDC Guidelines, this Court's TRO, and other requirements themselves show deliberate indifference. [*See* ECF 158 at 29-33.] Although this claim includes both an objective and a subjective component, Defendants do not dispute that the objective standard is met—that is, they do not dispute that COVID-19 creates a severe risk to the men and women who are in their custody. [*See* Castano Dep. at 14–15, 20–22, 69–72, 121–23 (Ex. E).] Instead, they contend that "From the beginnings of the coronavirus pandemic, defendants have diligently and conscientiously implemented measures to contain the spread of COVID-19 within its three facilities, and to provide medical care to detainees who were infected." [*See* ECF 485 at 6.]

Defendants' attempt to manufacture a rosy picture of conditions inside the three facilities at issue here violates the basic rules of summary judgment, as it ignores the voluminous evidence that contradicts their position. But as this Court explained previously, the record evidence collected in this case "far exceeds mere negligence and evidences a reckless state of mind. ICE does not test all detainees before transferring them because it doesn't have enough tests to do so." [ECF 158 at 31.]

In congratulating themselves, Defendants ignore at least the following evidence:

- Testimony at the June 3, 2020 Hearing that guards at Krome routinely failed to wear masks and, in fact, the guard who took one of Plaintiffs' witnesses to testify was not wearing a mask [June 3, 2020 Hr'g Tr. at 43–44 (Ex. B); *see also* ECF 94-1, Decl. of Miguel Angel Marroquin Perez ¶ 4; ECF 94-1, Decl of Deivys Perez Valladares ¶ 6; ECF 94-1, Decl. of Danny Ruiz Garcia ¶ 4; ECF 106-2, Decl. of Anderson Jesus Amaral ¶¶ 10; 15, 20, 22; 106-1, Decl. of Naim Arrak ¶ 14; ECF 106-2, Decl. of Bryan Alexander Corona Matos ¶ 12; ECF 106-2, Decl. of Gogo Djadju ¶ 15; ECF 106-2,

Decl. of Jordy Humberto Molina Garay ¶ 7; ECF 106-2, Decl. of Mohamed Hasan ¶ 13 (Ex. F)];[1]

- Testimony that Defendants have repeatedly failed to supply sufficient no-cost hand soap to the class members to allow for frequent hand washing [ECF 94-1, Decl. of Iran Pichardo Perez-Borroto ¶ 8; ECF 106-1, Decl. of Naim Arrak ¶ 12; ECF 106-2, Decl. of Mohamed Hasan ¶ 14' ECF 106-2, Decl. of Bryan Alexander Corona Matos ¶ 13; ECF 106-2, Decl. of Freddy Rodriguez Del Rio ¶ 14; ECF 130, Decl. of Maykel Valera Ramirez ¶ 5; ECF 203-1, Decl. of Danny Ruiz Garcia ¶ 12; ECF 204-1, Decl. of Maykel Valera Ramirez ¶ 11; ECF 205-1, Decl. of Miguel Angel Marroquin Perez ¶ 14; ECF 206-1, Decl. of Alejandro Ferrera Borges ¶ 13; ECF 208-1, Decl. of Maikel Carrasco Polo ¶ 12; ECF 106-2, Decl. of Anderson Jesus Amaral ¶ 19; ECF 106-2, Decl. of Jean Auguste ¶ 11; ECF 106-2, Decl. of Steve Cooper ¶ 12; ECF 163-1, Decl. of Steve Cooper ¶ 8; ECF 177-2, Decl. of Deivys Perez Valladares ¶ 18; ECF 106-2, Decl. of James Saintyl ¶ 9; ECF 106-2, Decl. of Dushane Spaulding ¶ 7, 9; ECF 177-1, Decl. of Lathario Glenwood Rolle ¶ 18; ECF 130, Decl. of Astley Thomas ¶ 17];

- Testimony about ICE's decision to have class members transferred from south Florida to north Georgia and back in two days in the middle of the COVID-19 pandemic for no apparent reason [ECF 158 at 31; *see also* June 3, 2020 Hr'g Tr. at 22–25 (Borges testimony) (Ex. B); *id.* at 38–40 (Valladares testimony)];

- Testimony that a symptomatic class member was transferred in anticipation of a potential deportation flight without being tested, that he was then transferred in a van with four other detained people, that the group was then placed in a holding cell where they could not socially distance, that they were then tested for COVID-19, that although no medical professional ever told them the results of the test, ICE guards said that three of the group had tested positive, and that when the group returned to Glades, two of the officers were "laughing," and "joking, mocking" the group due to the positive tests [June 25, 2020 Hr'g Tr. at 23–31 (Ex. G); *accord* ECF 163-4, Decl. of Jermaine Scott ¶ 22];

---

[1] All Petitioner declarations cited in this motion are in Composite Exhibit F.

- Declarations outlining multiple violations of this Court's TRO, including social distancing requirements, mask-wearing requirements, and requirements to provide sufficient soap and hygiene products [*see* ECF 106 at 5–8 (summarizing declarations); ECF 106-2 (supporting declarations)];

- Evidence that Defendants have routinely transferred class members in circumstances that do not allow proper social distancing and in many instances failed to provide masks to people it was transferring [*see* ECF 106 at 11–13 (summarizing declarations); ECF 106-2 (supporting declarations)]; and

- Testimony that no ICE staff member at any of the three facilities has been disciplined for violating COVID-19 protocols beyond reminders to follow the rules [Castano Dep. at 247–56 (Krome and Glades) (Ex. E); Lopez-Vega Dep. at 235–36 (BTC) (Ex. H).].

Defendants' repeated violations of the governing standards—not to mention the mockery of individuals who have tested positive for COVID-19—show Defendants' deliberate indifference. This evidence certainly precludes summary judgment for Defendants on this claim as well.

### 2. Defendants' Failure to Develop a COVID-19 Vaccination Protocol for the Class and Others in their Custody Shows their Deliberate Indifference.

And as things now sit, the most glaring evidence of Defendants' deliberate indifference may be their failure to even develop a plan for vaccinating the class members and the other people who they are holding. [Castano Dep. at 36–37 (Krome and Glades) (Ex. E); Lopez-Vega Dep. at 71 (BTC) (Ex. H)]. Although no COVID-19 vaccination existed much the time this litigation has been pending, two vaccines have been granted emergency authorization by the U.S. Food and Drug Administration, and others are in the works. [*See* FDA Webpage Concerning Moderna COVID-19 Vaccine (Ex. I); FDA Webpage Concerning Pfizer COVID-19 Vaccine (Ex. J).] And while Defendants could obviously not predict precisely which vaccines might be approved or precisely when, it has been obvious for months that the path to protecting lives and ending the COVID-19 crisis—both inside Defendants' detention facilities and in the wider world—runs through a successful vaccination program. Yet due to Defendants' failure to even develop a plan for vaccine distribution, there is still no vaccine for the class members in Defendants' care—and no prospect of having access to a vaccine.

8

Notably, the Federal Bureau of Prisons—under the direction of the Defendant Attorney General—issued a 31-page guidance document concerning the implementation of COVID-19 vaccinations in federal prison facilities in early January 2021. [*See COVID-19 Vaccine Guidance Federal Bureau of Prisons Clinical Guidance* (Jan. 4, 2021) (Ex. K).] So, Defendants have lacked neither the opportunity nor the wherewithal to develop a plan to address the need for vaccinations for the class members. And yet, Defendants still have no plan for how to vaccinate the class members or the other people who come in contact with the class members at Krome, Glades, and BTC. This further confirms their deliberate indifference as to the class members' medical care.

### C. State Created Danger Doctrine

Defendants have also moved for summary judgment on Plaintiffs' state created danger claim, arguing that Plaintiffs have failed to "state of claim of a substantive due process violation." [ECF 484 at 15.] Defendants' arguments are without merit.

**First**, Defendants argue that the state created danger doctrine only applies to "protect persons from harm by third parties" and "the COVID-19 virus is not a third party." [ECF 484 at 15.] This argument is cut and pasted from Defendants' Opposition to Motion for Temporary Restraining Order. [ECF 40 at 9.] As this Court noted in its Order Adopting in Part Magistrate Judge's Report and Recommendation, environmental conditions can be the basis for the state created danger doctrine. [ECF 76 at 6 (citing *Pauluk v. Savaage*, 836 F.3d 1117, 1119 (9th Cir. 2016); *see also Munger v. City of Glasgow Police Dept.*, 227 F.3d 1082, 1087 (9th Cir. 2000) (finding that police officers could be held liable for a death caused by hypothermia where they ejected an intoxicated person from a bar late at night when they knew that the person was "wearing only a t-shirt and jeans [and] was intoxicated"); *Kneipp v. Tedder*, 95 F.3d 1199, 1203 (3d Cir. 1996) (finding liability under the state-created danger doctrine where police officers left a visibility intoxicated pedestrian alone to walk home on a dangerously cold night); *Reed v. Gardner*, 986 F.2d 1122, 1127 (7th Cir. 1993) (police officer who removed a sober driver and left behind a passenger whom he knew to be drunk with the keys to the car was subject to liability under 42 U.S.C. § 1983).] Given that this Court has already considered and rejected this argument, it provides no basis for summary judgment.

**Second**, Defendants argue that the court should analyze Plaintiff's state-created danger allegations under the Eighth Amendment "instead of applying some generalized notion of

9

substantive due process" under the Fifth Amendment. [ECF 484 at 17.] But Plaintiffs are not in criminal confinement; they are in **civil** detention—thus direct application of the Eighth Amendment is inappropriate. *See C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 210 (D.D.C. 2020) ("While civil immigration detainees are protected by the Fifth Amendment's Due Process Clause, these Eighth Amendment protections nevertheless apply to them 'because a [civil] detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'"); *Adekoya v. Holder*, 751 F. Supp. 2d 688, 695 n.4 (S.D.N.Y. 2010) ("Because Adekoya was in civil immigration detention rather than criminal detention, his deliberate indifference claims should be analyzed under the Fifth Amendment's Due Process clause rather than the Eighth Amendment's 'cruel and unusual punishment' clause."); *see also* ECF 158 at 28 ("The minimum standard of care to be provided to civil detainees under the Due Process Clause of the Fifth Amendment is the same as that allowed by the Eighth Amendment for convicted persons."). Thus, this argument goes nowhere.

Finally, Defendants argue that even under a substantive due process analysis, they are entitled to summary judgment for the same reasons they give in defense of Plaintiffs' deliberate indifference claim. [ECF 484 at 18.] Defendants, however, are not entitled to summary judgment on Plaintiffs' deliberate indifference claim for all of the reasons already discussed. *See supra* Section B.

### D. In the Face of these Violations, Injunctive Relief Is Appropriate.

Given the substantial evidence supporting Plaintiff's causes of action, there is more than an ample basis for a permanent injunction. Indeed, this Court has already recognized that, given the risks that COVID-19 poses to the class members, and given Defendants' repeated violations of basic protocols designed to prevent the spread of this deadly disease among people in custody, the evidence that supports injunctive relief. [*See generally* ECF 158.] That is no less true today than it was before. Indeed, the record now includes Defendants' glaring failure to develop a vaccine protocol for the class members and the other people in ICE custody.

In this respect, it is notable that Defendants do **not** acknowledge their past transgressions and profess that they have cleaned up their act.[2] Instead, Defendants' position is that the evidence indisputably shows they have **never** fallen down on the job—and never violated the CDC Guidelines or similar binding rules, or never displayed deliberate indifference to the class member' medical needs. [*See* ECF 484 at 18 (contending that "material, uncontroverted facts establish that defendants have acted reasonably in implementing measures to contain the spread of the COVID-19 virus at Krome, BTC, and Glades").] But this Court has **already** considered the evidence in the record and found otherwise. [*See* ECF 158 at 26–38.] In the least, this means that there is a basis in the evidence to find in Plaintiffs' favor on these issues, and that summary judgment is improper.

## CONCLUSION

The Court should deny Defendant's Motion.

Respectfully Submitted,

Date: February 2, 2021

/s/ *Scott M. Edson*
Scott M. Edson, Esq.
Florida Bar No. 17258
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW, STE 200
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
sedson@kslaw.com
***Counsel for Petitioners-Plaintiffs***

---

[2] Of course, the argument that conditions had improved to the point that no continuing injunctive relief was necessary would necessarily raise issues of fact—including whether any improvements in conditions were attributable to this Court's prior injunctive relief, and whether Defendants could be trusted to take appropriate steps in the absence of injunctive relief.

11

Sarah T. Gillman*
**RAPID DEFENSE NETWORK**
11 Broadway, Suite 615
New York, NY 10004
Tel.: (212) 843-0910
Fax: (212) 257-7033
sarah@defensenetwork.org
*Appearing Pro Hac Vice*

Rebecca Sharpless
Florida Bar No. 0131024
Romy Lerner
Florida Bar No. 116713
**UNIVERSITY OF MIAMI SCHOOL OF LAW - IMMIGRATION CLINIC**
1311 Miller Drive Suite, E-273
Coral Gables, Florida 33146
Tel: (305) 284-3576
Fax: (305) 284-6092
rsharpless@law.miami.edu

Paul R. Chavez
FL Bar No. 1021395
Maia Fleischman
FL Bar No. 1010709
**SOUTHERN POVERTY LAW CENTER**
2 S. Biscayne Blvd., Ste. 3200
Miami, FL 33101
Tel: (305) 537-0577
paul.chavez@splcenter.org
maia.fleischman@splcenter.org

Lisa Lehner
Florida Bar No. 382191
**AMERICANS FOR IMMIGRANT JUSTICE**
5355 NW 36 Street, Suite 2201
Miami, FL 33166
Tel: (305) 573-1106 Ext. 1020
Fax: (305) 576-6273
Llehner@aijustice.org

Drew T. Bell
Florida Bar No. 120435
**KING & SPALDING LLP**
500 West Second Street, STE 1800
Austin, TX 78701
Telephone: (512) 457-2000
Facsimile: (512) 457-2100
dbell@kslaw.com

Kathryn S. Lehman
Florida Bar No.: 95642
Chad A. Peterson
Florida Bar No.: 91585
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
klehman@kslaw.com
cpeterson@kslaw.com

Mark Andrew Prada
Fla. Bar No. 91997
Anthony Richard Dominguez
Fla. Bar No. 1002234
**PRADA URIZAR, PLLC**
3191 Coral Way, Suite 500
Miami, FL 33145
Tel.:   (786) 703-2061
Fax:   (786) 708-9508
mprada@pradaurizar.com
adominguez@pradaurizar.com

Andrea Montavon McKillip
Florida Bar No. 56401
**LEGAL AID SERVICE OF BROWARD COUNTY, INC.**
491 North State Road 7
Plantation, Florida 33317
Tel. (954) 736-2493
Fax (954) 736-2484
amontavon@legalaid.org

*Counsel for Petitioners-Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of February 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

*/s/ Scott M. Edson*
Scott M. Edson, Esq.
Florida Bar No. 17258
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW, STE 200
Washington, DC 20006-4707
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737
sedson@kslaw.com

*Counsel for Petitioners-Plaintiffs*