UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-21553-Civ-COOKE/GOODMAN

PATRICK GAYLE, *et al.*,

    Petitioners,

vs.

MICHAEL W. MEADE, *et. al.*,

    Respondents.
_____/

### ORDER DENYING IN PART AND GRANTING IN PART PETITIONERS' EMERGENCY MOTION TO COMPEL COMPLIANCE WITH THE COURT'S JUNE 6, 2020 PRELIMINARY INJUNCTION

**THIS MATTER** is before the Court upon Petitioners' Emergency Motion to Compel Compliance with the Court's June 6, 2020 Preliminary Injunction[1] (the "Motion") (ECF No. 163), filed June 16, 2020. The Court set an expedited briefing schedule for the Motion, and Respondents filed their response in opposition to the Motion on June 19, 2020. ECF No. 167. Petitioners filed their reply in support of the Motion on June 23, 2020. ECF No. 175.

### Background

On May 20, 2020, Petitioners filed a Motion to Compel Compliance with the Court's April 30, 2020 Temporary Restraining Order (the "First Motion to Compel") in which they alleged that the Miami Field Office of Immigration and Customs Enforcement (hereinafter "ICE") was in violation of the Court's April 30, 2020 Temporary Restraining Order because ICE was conducting transfers under unsanitary and unsafe conditions; social distancing was still not feasible at the detention facilities at issue; and detainees had limited or inadequate access to soap, hand sanitizer, masks, and cleaning supplies. ECF No. 106 at p. 3.

On June 6, 2020, this Court entered a Preliminary Injunction, which addressed Petitioners' First Motion to Compel, and instructed ICE to: (1) cease the practice of comingling unconfirmed COVID-19 cases with confirmed COVID-19 cases; (2) provide

---

[1] The Court mistakenly issued an Order, on July 5, 2020, which granted Petitioners' Motion. ECF No. 192. That order was vacated the next day, July 6, 2020, and the Motion was re-opened for adjudication. ECF No. 193.

detainees with sufficient quantities of CDC-recommended cleaning supplies and disinfectants; (3) provide all detainees and staff members with masks and educate them on the importance of its use; (4) provide detainees with unrestricted access to hand soap, hand sanitizer, and hand towels; and (5) educate detainees on the COVID-19 pandemic. ECF No. 158 at pp. 38-40. The Preliminary Injunction permits ICE to conduct transfers, but only after first performing a verbal screening and a temperature check, as outlined in the CDC Guidelines, before the individual leaves the facility. *Id.*

As previously discussed, Petitioners filed the present Emergency Motion to Compel Compliance with the Court's June 6, 2020 Preliminary Injunction on June 16, 2020 – just ten days after the Court's issuance of its Preliminary Injunction Order. In the present Motion, Petitioners allege that, despite the Court's Preliminary Injunction Order, conditions at the detention centers have further deteriorated and ICE continues to: (1) cohort detainees confirmed to have COVID-19 with individuals who have not been confirmed to have the disease; (2) fail to provide cleaning supplies and masks to detainees; and (3) fail to educate detainees about COVID-19. ECF No. 163 at pp. 2-4. Moreover, according to Petitioners, social distancing is not promoted or enforced within the detention centers. *Id.* at p. 3.

ICE refutes Petitioners' claims and maintains that it is in compliance with the Court's Preliminary Injunction Order in that it provides and replenishes adequate supplies of personal protective equipment, soap, hand sanitizer, water, and cleaning materials. ECF No. 165-1 at ¶¶ at 4-7, 9-10. ICE further maintains that it has educated detainees. *Id.* at ¶ 12. ICE admits that it cohorted the entire population at Glades at one point, but it denies that it currently comingles confirmed COVID-19 cases with asymptomatic individuals. *Id.* at ¶¶ 14, 16, 18-19. ICE makes no response to Petitioners' allegations concerning the lack of social distancing within the detention centers themselves, except to state that it has developed seating charts for its vans and buses "to maximize social distancing while transporting ICE detainees." *Id.* at ¶8.

Due to the fact intensive and complex nature of the issues raised in the Motion, the Court appointed Matthew C. Dates to serve as a Special Master in this matter to assess whether ICE is committing an ongoing violation of the detainees' constitutional rights. Mr. Dates' appointment became effective on July 20, 2020 when he filed an affidavit confirming the he does not have any relationship to the parties, attorneys, action, or Court and knows of

no reasons or grounds for disqualification under 28 U.S.C. Section 455. ECF No. 223. As part of his appointment, the Court directed Mr. Dates to inspect the Krome Detention Center in Miami ("Krome"), the Broward Transitional Center in Pompano Beach ("BTC") and the Glades County Detention Center in Moore Haven ("Glades"). ECF No. 219 at p. 6. Specifically, the Court directed Mr. Dates to conduct inspections of:

- All housing units where the Petitioners are housed;
- Housing units where quarantined detainees are being held;
- The ingress/egress staff screenings;
- Medical facilities;
- Dining facilities;
- Laundry facilities;
- Shower/bathroom facilities; and
- Sleeping units/pods.

*Id.* at p. 7. The Court further directed Mr. Dates to provide a report, by September 1, 2020 at 4:00 pm, that documented whether and to what extent the steps outlined in the Preliminary Injunction Order, ECF No. 158, have been taken. *Id.* More specifically, the Court advised Mr. Dates that the report should include, among other information that he deems necessary, any information he is able to ascertain regarding the cleanliness of the housing units, social distancing measures, availability and stock of cleaning supplies and personal protective equipment, and the availability and stock of hygienic and disinfecting supplies. *Id.* The Court's Order Appointing the Special Master also provided the Parties with a seven-day period to file objections to the Special Master's Report. *Id.* at p. 6.

## Legal Standard

"Federal Rule of Civil Procedure 53(f)(3) and (4) provide that a court must 'decide de novo' all objections to findings of fact and conclusions of law made or recommended by a master, unless the parties, with the court's approval, stipulate otherwise." *Procaps S.A. v. Patheon Inc.*, 12-24356-CIV, 2014 WL 11498061, at *2 (S.D. Fla. Dec. 30, 2014) (quoting Fed. R. Civ. P. 53(f)(3) and (4)). "Subsection (5) [of Rule 53(f)] provides that the court may set aside a master's ruling on a procedural matter only for an abuse of discretion, unless the appointing order establishes a different standard of review." *Id.*

"A party objecting to a special master's rulings or recommendations must 'state the

specific objections to the Special Master's ruling or provide any factual or legal support for such objections.'" *Id.* (quoting *Bray & Gillepsie Mgmt. LLC v. Lexington Ins. Co.*, No. 6:07–cv–222–Orl–35KRS, 2008 WL 5110541 (M.D. Fla. Dec. 1, 2008)). "When a party fails to follow this standard, then courts do not use the more–exacting standard of de novo review — but, instead, use the clear error standard of review. Therefore, a party seeking de novo review of a magistrate judge's report and recommendation or a special master's ruling or report and recommendation must 'specifically identify those findings objected to.'" *Id. (quoting Leatherwood v. Anna's Linen Co.*, 384 F. App'x. 853, 857 (11th Cir. 2010). "Phrased differently, a court will not use a de novo review standard for 'frivolous, conclusive or general objections.'" *Id.*

## Analysis

In compliance with his Order of Appointment, Mr. Dates provided his Report to the Court for an *in camera* review on September 1, 2020. ECF No. 545 at p. 1. Then, on February 19, 2021, Mr. Dates filed his Report publicly through CM/ECF. ECF No. 560. In doing so, Mr. Dates was careful not to publicly file any privileged or otherwise sensitive documents and/or photos such as data and blueprints related to the correctional facilities. Instead, Mr. Dates provided those documents to the Court through a conventional means so as to ensure that they maintained their privileged and confidential status. *See* ECF Nos. 555, 556, and 564.

In his Report, Mr. Dates made the following findings:

- As to the vast majority of the factual disputes raised by the detainees in their declarations and the responses by ICE, the testimony of the ICE declarants appears credible based upon the observations made during the inspections. Any discrepancies have a logical explanation regarding timing or are likely an aberration. ECF No. 560 at pp. 16-17.

- The housing units were generally clean. ICE makes attempts at social distancing. ICE had stock cleaning supplies and personal protective equipment visible during the inspection. ICE also had stock hygienic and disinfecting supplies visible during the inspection. Without question there is nothing the Special Master observed during the course of the inspections that would give rise to any inference that ICE has not been truthful, accurate and complete to the best of its ability given the difficulties involved in responding to this crisis. *Id.* at p. 18.

- ICE objects to the Petitioners having the square footage information for the detention facilities for security reasons. Without the information contained in

> the floor plans regarding square footage, Petitioners cannot make the most accurate argument available, concerning social distancing, based upon the only relevant empirical data.[2] At the same time, ICE argues it has done all it could to deal with the Petitioners' allegations given the available tools to combat the virus citing the Eleventh Circuit precedent in *Gomez v. United States*, 899 F.2d 1124 (11th Cir. 1999). ICE articulates in its Response to the Objections to the Magistrate's Report and Recommendation the position of both parties regarding the challenge to the conditions of confinement. [D.E. 72 at 5-6]. While whether ICE has done all it can, in fact, may or may not be true, the dire situation seems to demand more of ICE. In light of the most recent scientific information regarding the virulent airborne respiratory nature of the virus especially in enclosed indoor spaces with recirculated air, ICE's response regarding social distancing is insufficient. *Id.* at p. 19.
>
> - This report has been provided to the Court in camera with the architectural floorplans for BTC containing the most accurate measurements attached in camera for its review to preserve the objection of the United States. The Court can make a determination as to the issue of privilege, what can be provided to the Petitioners and the probative value of the floorplans. Having reviewed the plans in consultation with an expert in GIS, the Special Master believes the floorplans have great probative value as to the issue of social distancing because that along with the wearing of masks are the best available tools for combatting the virus. The floorplans were utilized to provide a more accurate level of capacity in each facility with a six-foot distance. Thus, ICE can make its percentage reduction in facility population using the available space instead of the measurement currently being used. *Id.* at p. 21.

Based upon the above findings and his inspections of the detention facilities, as outlined in his Report, Mr. Dates recommends that the Court deny Petitioners' Motion as to the issues surrounding the conditions of confinement except for those regarding social distancing. *Id.* Mr. Dates also advised that:

> [t]he Court may be able to provide ICE the proper incentive to speed up the process of deportation or release that seems to present the increased risk for the detainees and lower the numbers to achieve social distancing closer to CDC Guidelines. To the extent that the Court finds it within its authority to provide ICE an incentive to increase the speed of its process regarding deportation or release to limit the potential exposure to the detainees to the circumstances that increase the risk of contracting the virus it makes sense to do so in light of the current risk of exposure.

*Id.*

---

[2] "ICE provided the last of the non-objectionable documents on August 21, 2020. The Parties have not yet met to confer regarding the objections to the remaining requested information. Therefore, the Court has yet to have this issue before it." *Id.* at p. 19 n.7.

In Response to the Special Master's Report, Petitioners filed their Partial Objection on February 25, 2021. ECF No. 565. In their Partial Objection, Petitioners state:

> Plaintiffs accept that the Special Master's findings were an accurate picture of what he observed when he visited the facilities—both where his findings support Plaintiffs' arguments and where they do not. Plaintiffs therefore do not challenge his Report and Recommendation on the issues it addresses concerning Plaintiffs' June 16, 2020 Emergency Motion to Compel Compliance with the Court's June 6, 2020 Preliminary Injunction [ECF 163]. But Plaintiffs note that the Report and Recommendation does not address one issue that Plaintiffs identified in their Motion to Compel: cohorting practices that violated this Court's Preliminary Injunction [ECF 158]. Plaintiffs specifically complained that Defendants violated the Preliminary Injunction by cohorting people with confirmed COVID-19-positive tests alongside people who had not tested positive for COVID-19. [*See* ECF 163 at 1–2.].

ECF No. 565 at p. 2.

Respondents filed their Objections to the Special Master's Report on February 26, 2021. ECF No. 574. Respondents assert the following objections: 1) The Krome Detention Center (Krome), Broward Transitional Center (BTC), and Glades County Detention Center (Glades) were in compliance with the PRR's population requirement because the detainee population was below 75 percent of capacity when Special Master Dates visited the facilities; 2) The percentage of capacity and population numbers of each facility are currently lower than they were in July and August during Special Master Dates' visits; 3) the text of the CD Guidelines is written to provide ample flexibility to facility administrators, in recognition of the unique challenges posed by housing many people in a single physical setting; and 4) most bunk beds at BTC and Krome are more than six feet apart because most center bunk buds are not used at BTC and any bunk beds that were less than six feet apart, at Krome, were marked as off limits and the mattresses were removed. *Id.* at pp. 2-5.

The Court has reviewed Petitioners' and Respondents' Objections and has made a *de novo* review of the record. Upon doing so, the Court finds the Special Master's Report to be thorough, insightful, clear, and cogent. Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. The Special Master's Report (ECF No. 560) is **AFFIRMED and ADOPTED**.
2. Petitioners' Emergency Motion to Compel Compliance with the Court's June 6, 2020 Preliminary Injunction (ECF No. 163) is **DENIED IN PART AND GRANTED IN PART**.

3. The Parties are directed to confer regarding Respondents' objections concerning the sharing of floor plan data and information related to the detention facilities, within seven days of the date of this Order. Should such conferral fail to resolve the dispute, then the Parties shall advise the Court of the same.

4. Within seven days of the date of this Order, Respondents shall file a brief outlining the number of bunk beds within each of the three detention facilities, the number of center bunk beds being used within each of the three detention facilities, and the number of bunk beds that are less than six feet apart at each of the three detention facilities.

5. Within seven days of the date of this Order, Respondents shall file a declaration, under penalty of perjury, advising the Court as to whether Respondents are currently cohorting people with confirmed COVID-19-positive tests alongside people who had not tested positive for COVID-19 at any of the three detention facilities. Additionally, said declaration shall advise the Court as to whether Respondents ever grouped people with confirmed COVID-19-positive tests alongside people who had not tested positive for COVID-19 – after the Court's issuance of its June 6, 2020 Preliminary Injunction Order.

6. The Court will set an evidentiary hearing on Petitioners' social distancing argument after it receives and reviews the above requested information. Additionally, prior to such hearing, the Court will require further briefing on this issue to ensure that it has full contemporaneous information at the time of the hearing.

**DONE and ORDERED** in Chambers at Miami, Florida this 25th day of March 2021.

_Marcia G. Cooke_
MARCIA G. COOKE
United States District Judge

*Copies furnished to:*
*Jonathan Goodman, U.S. Magistrate Judge*
*All Counsel of record*