# GOVERNMENT

# EXHIBIT

# A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-21553-CIV-COOKE

PATRICK GAYLE, et al.

    Plaintiffs/Petitioners,

vs.

MICHAEL W. MEADE, et al.,

    Defendants/Respondents.
_____/

NOTICE TO CLASS MEMBERS

The attorneys for plaintiffs/petitioners and defendants/respondents, have reached a tentative settlement of the lawsuit filed by plaintiffs/petitioners on April 13, 2020, Patrick W. Gayle, et al. v. Michael W. Meade, et al., Case No. 20-21553-CIV-COOKE (S.D. Fla.). The Settlement Agreement is attached and is translated into Spanish, French, and Haitian Creole.

On September 14, 2021, the district court granted preliminary approval of the Settlement Agreement. A Fairness Hearing is scheduled for October 29, 2021, at 10:00 a.m., before the Honorable Jonathan Goodman, United States Magistrate Judge. The Fairness Hearing will be held via Zoom.

PROCEDURE FOR MAKING OBJECTIONS

Class members have until October 15, 2021, to lodge any objections they may have to the Settlement Agreement. Class members may appear at the Fairness Hearing in person, through counsel (if a notice of appearance is filed and served), or through a duly authorized guardian or representative, and may be heard, to the extent allowed by the Court, in support of, or in opposition to, the fairness, reasonableness, and adequacy of the Settlement Agreement.

Unless such requirement is excused by the Court, no person shall be heard in opposition to the settlement unless, on or before 14 days before the Fairness Hearing, such person has: (1) filed with the Court a letter including the class member's name and address; a notice of intention to appear; a statement indicating the basis for the class member's opposition to the terms of the settlement and demonstrating that the objector is a class member; the signature of the class member, attorney, guardian, or representative, and, in the case of a guardian or representative, proof of the person's status as such; and (2) served copies of the foregoing upon the following counsel:

| Class Counsel: | Counsel for the Defendants: |
|---|---|
| King & Spalding, LLP | U.S. Attorney's Office |
| Attn: Scott M. Edson, Esq. | Attn: Dexter A. Lee |
| 1700 Pennsylvania Ave., N.W. | 99 N.E. 4th Street |
| Suite 200 | Suite 300 |
| Washington, D.C. 20006-4707 | Miami, Florida 33132 |

## FAIRNESS HEARING

DATE:       October 29, 2021
TIME:       10:00 a.m.
PLACE:      Via Zoom:
https://www.zoomgov.com/j/1607072267?pwd=WnJOTFlrVHpOZHIGQVduN3FnT2xwQT09
Meeting ID: 160 707 2267
Passcode: 752159

PRESIDING:      Honorable Jonathan Goodman, United States Magistrate Judge

# GOVERNMENT

# EXHIBIT

# A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-21553-Civ-COOKE/GOODMAN

**PATRICK GAYLE**, *et al.*,

    Petitioners-Plaintiffs, on behalf of
    themselves and those similarly situated,

**v.**

**MICHAEL W. MEADE**, *et al.*,

    Respondents-Defendants.

_____/

SETTLEMENT AGREEMENT

Petitioners-Plaintiffs and Respondents-Defendants agree to resolve the class-wide claims raised in Petitioners-Plaintiffs' Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (D.E. 1), according to the following:

1.    The following terms would resolve all class-wide claims.[1] The Court would retain jurisdiction and the terms would be enforceable as an injunction. A Final Order embodying the terms of the order will be entered and posted in English, Spanish, Haitian Creole, and French in every living unit, law library and the medical facilities of the Detention Facilities.[2] The Final Order must remain posted for as long as it is in force. Members of the class retain the right to pursue individual habeas petitions and motions for release. No pending motion for release or to

---

[1] Class members are defined as all civil immigration detained individuals held by Respondents at the Krome Service Processing Center, the Broward Transitional Center, or at Glades County Detention Facility when this action was filed, since this action was filed, or in the future.

[2] As used throughout the terms of the Settlement Agreement, the "Detention Facilities" refers to (1) Glades County Detention Center in Moore Haven, FL, (2) Broward Transitional Center in Broward County, FL, and (3) Krome Processing Center in Miami-Dade County, FL.

1

intervene is rendered moot by the Final Order.  This paragraph does not preclude or constitute a waiver of Defendants' ability to raise defenses of collateral estoppel, res judicata, or any other applicable defense or argument in any habeas petition or motion raising conditions of confinement claims.

   a. The Detention Facilities shall comply with all applicable detention guidelines, ICE Pandemic Response Requirements (PRR) and Center for Disease Control (CDC) Guidelines. As the applicable guidelines may change over time, the applicable standards will be based upon the time the Government's action takes place.  The Government's actions may need to change over time to reflect changes in the applicable standards.

   b. The COVID-19 Vaccination Guidelines and Protocol provided to Plaintiffs' counsel on 3/9/2021 (or a subsequently amended version of that plan) shall be fully implemented at all three Detention Facilities.  Once available, The Detention Facilities shall make COVID-19 vaccinations that are authorized for emergency use available free of charge to the population detained at all three Detention Facilities upon request, subject to availability and priorities as set forth in ICE's COVID-19 Vaccination Guidelines and Protocol.

   c. Detained persons who are released after only one dose of a two-dose vaccination protocol shall be provided with a CDC vaccine card (as printed by the CDC) and written information (in their primary language) about when they should obtain their second dose, and how to access the CDC Vaccine Finder tool for their second dose.

   d. The Detention Facilities shall provide detainees with educational materials, including pamphlets printed in English, Spanish, Haitian Creole, and French, and an in-person presentation  done by medical staff where detainee questions can be answered, about the benefits of vaccination as related to the ongoing COVID-19 threat.

   e. The Detention Facilities shall make seasonal influenza vaccinations available at no cost to the detained population.

   f. The detention facilities shall maintain the population density in each living area at each facility and in each facility in total as governed by the most current PRR and CDC guidelines (currently, 75% of capacity or lower).  Unforeseen operational needs may arise which require a detention facility or a housing unit within a detention facility to exceed 75% capacity for a short period of time.  If a detention facility or a housing unit within a detention facility exceeds 75% capacity for more than 48 continuous hours, they shall make a report to the Court about the reason for exceeding 75% capacity before 5 pm ET on Friday. ICE calculates permitted capacity in a housing unit by multiplying the number of beds available by 0.75.   As an example, if a pod has 50 beds available for use, 50 x .75 equals 37.5.  In this example, a population of 37 or less would comply with the 75% capacity maximum.   Factors used in housing decisions include, but are not limited to

    security level, safety, security and to accommodate detained individuals' health problems as the facility allows.  ICE will maximize social distancing as operationally feasible based on considerations of security, level, safety, security and detained individuals' health problems.  ICE will minimize movements of detained individuals between housing units except as necessary to facilitate greater social distancing.

g.  Signs shall be posted and updated daily in every housing unit in the Detention Facilities in a location that is visible to all staff and detainees living in the housing unit that provides the following information: 1) whether each pod, building, housing unit, etc. is cohorted or quarantined, and 2) the date each cohort or quarantine began and the date on which it will end.

h.  All detained people who exhibit symptoms[3] consistent with COVID-19 shall be tested, consistent with the PRR.  This will occur within 24 hours.  Notice of the result, either orally or in writing, shall be provided to the detained person by the medical staff within 12 hours of the results becoming available.

i.  All detained persons who have had close contact as defined by the CDC (within 6 feet for 15 minutes or more) to someone who tests positive for COVID-19 shall be tested for COVID-19 within 24 hours.  Notice of the result, either orally or in writing, shall be provided to the detained person by the medical staff within 12 hours of the results becoming available.

j.  Detained persons shall be tested using a medically approved COVID-19 test.  Subject to availability, the Detention Facilities shall obtain and maintain adequate supplies to test detained persons as needed.

k.  Consistent with the PRR, The Detention Facilities shall ensure that detainees who have tested positive for COVID-19 shall see medical staff within 24 hours of receiving their test results and as needed based on clinical course following their positive test.

l.  The Detention Facilities shall isolate all detainees who test positive for COVID-19 until 10 days after they stop having symptoms. Consistent with the PRR, they can be housed with other detainees only if the other detainees have also tested positive for COVID-19 and have active symptoms.

m.  Consistent with the PRR, all detainees who have been exposed to someone who has tested positive for COVID-19, but who themselves test negative, will be medically isolated for 14 days following exposure. They can be housed with other detainees only if the other detainees have also been exposed to COVID-19 but currently test negative for COVID-19. Detainees in medical isolation who have not tested positive for COVID-19 may not be held with those who are currently COVID-19 positive.

---

[3] As used throughout the terms of the Settlement Agreement, "symptoms" include the following: fever or chills, cough, shortness of breath or difficulty breathing, fatigue, muscle or body aches, headache, loss of taste, loss of smell, sore throat, congestion or runny nose, nausea or vomiting, diarrhea.

n. All detainees who have been tested for COVID-19 but are awaiting results shall be medically isolated from the rest of the population. They shall not be maintained in common housing units, also known as general population. Detainees in medical isolation who have not tested positive for COVID-19 shall not be held with those who are currently COVID-19 positive.

o. The Detention Facilities will provide unlimited soap and hand sanitizer to detainees at no cost. Dispensers for soap and/or hand sanitizer will be placed in (1) all bathrooms, (2) outside all cafeterias and other eating areas, (3) all medical units, (4) all locations where medication is dispensed, (5) kitchen, (6) computer lab, (7) commissary, (8) phone/tablet bank, and (9) law library. Staff members will ensure that all dispensers are refilled as needed. A staff member must log every time a dispenser is refilled.

p. The Detention Facilities shall provide new masks that conform to CDC guidelines at no cost to the detainees. If the detention facilities provide disposable masks, detainees shall receive new masks three times per week. If the detention facilities provide cloth masks and the masks are returned from the laundry in a way that is dirty, wet, sour smelling or otherwise unusable, then the detention facility shall immediately provide a replacement upon request.

q. Upon request, detainees shall be immediately provided a replacement if their mask is lost, breaks, or becomes soiled, at no cost to the detainee.

r. As required by CDC guidelines, staff and guards at the Detention Facilities will wear face masks covering both their nose and mouth.

s. The Detention Facilities shall provide a new mask to each transferee before all transfers.

t. The Detention Facilities shall maintain all existing limitations on transfers, as required by the ICE PRR and the preliminary injunction, other than paragraph (b) in the preliminary injunction which requires ICE to submit documentation of pre-transfer release evaluations.

u. The Detention Facilities shall perform a rapid test within 24 hours before transferring a detainee. Only those who test negative may be transferred. Defendants shall maintain documentation of all such test results until at least the Final Order is dissolved.

v. Consistent with the PRR, medical staff shall conduct a verbal screening and temperature check as outlined in the CDC Guidelines before a detainee is transferred away from any of the Detention Facilities.

w. During transportation by ERO and its contractors, whenever possible detainees shall be seated so that they are at least 6 feet apart.

x. All vehicles used to transport detainees shall be sanitized before and after each transport using a disinfectant that is EPA-approved for use against the virus that causes COVID-

4

19. Product manufacturer and other guidelines concerning the use of proper ventilation during application and any waiting periods to allow harsh chemicals to dissipate will be followed.

y. Whenever possible, detainees will be held in conditions which allow for social distancing space of six feet.  If holding cells are used during the detainee transfer process, there will be sufficient space in the holding cells to permit adequate social distancing of 6 feet or more for the detainees being held.

z. The Detention Facilities shall place (and replace immediately after they are used) disinfecting wipes or spray beside tablets, telephones, computers, printers, remote controls for electronics, shared recreation equipment, law library, meal service lines, and water coolers used by detainees. Staff members[4] will ensure that all dispensers are refilled as needed.  A staff member must log every time a dispenser is refilled.

aa. The Detention facilities shall either (1) use single-use disposable food trays, or (2) sanitize each tray after each use using hot water or a dishwasher, consistent with ICE PRR. Hand sanitizer shall be made available during all meal service lines.

bb. The Detention Facilities shall provide single-use disposable utensils to detainees at each meal. These utensils will be delivered to each detainee so that they are free of contamination when provided to the detainees.

cc. Detention Facilities that are feeding detainees in a cafeteria shall stagger groups of detainees in the eating area or cafeteria as necessary to allow for increased social distancing.

dd. Whenever possible, the Detention Facilities will provide enough areas for eating so that each detainee is able to sit at least 6 feet away from other detainees.

ee. Whenever possible, the Detention Facilities will ensure that when detainees are lined up so that social distancing of at least six feet between each detainee is maintained. This will be followed at all times, to include lines made for:  transit, meals, medication, medical care, recreation, supplies, equipment, and to purchase commissary.

ff. After considering the safety, security and orderly operation of the facility, the detention facilities shall ensure that no detainees are sleeping within 6 feet of each other.  Factors used in housing decisions include, but are not limited to classification level, safety, security and to accommodate detained individuals' health problems as the facility allows.  All available housing units will be used in each facility so that detained individuals are spread out across all housing units and will only sleep in the same set of bunk beds once it is necessary.  (A set of bunk beds means a single piece of furniture that is a stack of two beds that are connected to each other.)

---

[4] As used throughout the terms of the Settlement Agreement, staff includes all employees working at the Detention Facilities, whether employed directly by ICE, employed by an entity that has a contract with ICE, or otherwise.

gg. The Detention Facilities will require that all areas of the bathroom areas (including showers, sinks and toilets) shall be maintained in proper working order in order to allow maximum social distancing. If a shower, sink, toilet or other part of the bathroom malfunctions or breaks, it will be repaired and returned to working order as soon as possible.

hh. When a bed is assigned to a different detainee, the mattress will be disinfected using a disinfectant that is EPA-approved for use against the virus that causes COVID-19.

ii. The Detention Facilities leadership shall ensure adequate cleaning of each bathroom, dayroom, common space, and dormitory once per day. The Detention Facilities will ensure that all cleaning staff strictly follow instructions on any cleaning materials used, ensuring that detained individuals are not physically exposed to harsh chemicals which could have a negative impact on their health. The Detention Facilities shall maintain a cleaning log reflecting the date and time of cleaning.

jj. The Detention Facilities shall ensure that all areas where medical care is provided ("medical areas") shall be cleaned after each patient using a disinfectant that is EPA approved for use against the virus that causes COVID-19. Additionally, the Detention Facilities leadership shall ensure that medical areas will be cleaned once daily. The Detention Facilities shall maintain a log showing the date, time and cleaning.

kk. ICE shall require all staff (both medical and correctional) to wear PPE when encountering or interacting with any ICE detainee at a distance of less than six feet. Required PPE should always be worn by staff.

ll. Whenever possible, social distancing of six feet shall be maintained in the waiting areas and hallways leading to all medical areas at all times.

mm. Detainees shall be provided with instructions in their primary language about how they can request and receive their own medical records. Detainees shall receive a copy of all of their medical records maintained by the Detention Facilities or ICE free of cost within a reasonable time after request (not more than 14 days).

nn. The Detention Facilities shall maintain educational posters on the walls in all common areas, living areas, indoor recreation areas, sleeping areas and bathrooms. The posters will advise about the importance of social distancing, hand washing, and mask wearing. These posters will be provided in English, Spanish, Haitian Creole, and French, and shall be in a manner that is discernable to someone who does not read one of those languages. The Detention Facilities shall also provide an interpreter for any Detainee who does not read one of those languages who requests to have the information read to them, and shall inform such detainees that interpretation services are available for that purpose.

oo. As-long-as social visitation is not allowed, all detainees shall have access to telephones and/or other electronic devices for standard (audio) and/or video calling.

    pp. The Detention Facilities shall make a presentation to the detained population about COVID-19 and precautions that slow the spread of COVID-19 every two weeks.

    qq. Defendants shall continue making their weekly certification regarding the detention population, specifically:

        a. The number of detained people Defendants are housing at each of the Detention Facilities on the date of reporting and the current percentage of capacity for each housing unit;

        b. If a Detention Facility has exceeded the 75% population in any housing unit, the facility shall so state, and the specific reasons for this exception.

        c. The number of people who have tested positive in each housing unit at each detention center and how many close contacts for each positive person have been identified and quarantined or isolated.

        d. Defendants shall also provide a report for each facility in the form of the Detention Oversight Unit COVID-19 Facility Checklist (Bates No. ICE-0070044 et seq.) monthly.

2.     The terms outlined in paragraph 1, subparts (a) – (qq) shall apply for six months following the entry of the Final Order, or until each detainee who is remaining in one of The Detention Facilities at the time the Final Order is entered, has been given an opportunity to be vaccinated (meaning 1 shot for the Johnson & Johnson vaccination protocol or 2 shots for the Pfizer or Moderna vaccination protocols), whichever is later. The parties and the Court recognize that the COVID-19 pandemic is a constantly evolving situation. As such, Defendants may petition the Court to dissolve the injunction sooner than specified in this Agreement if they believe the circumstances of the pandemic warrant dissolution. Similarly, Plaintiffs may petition the Court to extend the injunction if the circumstances of the pandemic warrant extension. Nothing in this agreement shall be understood to require ICE to continue to maintain custody of a detainee for purposes of administering any part of a vaccine, or facilitate the administration of a vaccine after release or removal.

3. Defendants may file a motion with the Court to be excused from the terms outlined in paragraph 1, subparts (a) – (qq), when the conditions of item 2 have been satisfied. Defendants shall meet and confer with Plaintiffs' counsel over its position before filing such a motion.

4. When feasible and consistent with the interests of the members of the Class, Plaintiffs will endeavor to meet and confer with Defendants over their position before filing a claim of noncompliance with the Final Order. Defendants must respond promptly and in good faith to any such request. This is without prejudice to Plaintiffs' right to seek relief on an emergency or expedited basis, or to confer contemporaneously with seeking judicial relief when time is of the essence.

5. Defendants shall promptly investigate all reports of noncompliance with the terms of the Final Order that Plaintiffs bring to their attention and will take immediate steps to correct noncompliance and promptly report such steps to Plaintiffs' counsel.

6. Plaintiffs reserve all rights to pursue discovery related to Defendants' ongoing compliance with this agreement (as governed by all applicable rules, including the Rules of Civil Procedure).

7. The parties shall bear their own costs, fees, and expenses, in maintaining this action.

EXECUTED this 28th day of June, 2021.

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

Scott M. Edson, Esq.
Florida Bar No. 17258  By: _____
**KING & SPALDING, LLP**  DEXTER A. LEE
1700 Pennsylvania Avenue, N.W.  Assistant U.S. Attorney

8

Suite 200  
Washington, DC 20006-4707  
(202) 737-0500  
Fax: (202) 626-3737  
sedson@kslaw.com  

*Kathryn S. L*  
Kathryn S. Lehman  
Florida Bar No. 95642  
**KING & SPALDING LLP**  
1180 Peachtree Street, N.E.  
Atlanta, Georgia 30309  
(404) 572-4600  
Fax: (404) 572-5100  
klehman@kslaw.com  

COUNSEL FOR PETITIONERS-PLAINTIFFS  

Fla. Bar No. 0936693  
99 N.E. 4th Street, Suite 300  
Miami, Florida 33132  
(305) 961-9320  
Fax: (305) 530-7139  
E-mail: dexter.lee@usdoj.gov  

NATALIE DIAZ  
Assistant U.S. Attorney  
Fla. Bar No. 85834  
99 N.E. 4th Street, Suite 300  
Miami, Florida 33132  
(305) 961-9306  
Fax: (305) 530-7139  
E-mail: Natalie.diaz@usdoj.gov  

COUNSEL FOR RESPONDENTS-DEFENDANTS