UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-21553-Civ-COOKE/GOODMAN

**PATRICK GAYLE**, *et al.*,

    Petitioners-Plaintiffs, on behalf of
    themselves and those similarly situated,

v.

**MICHAEL W. MEADE**, *et al.*,

    Respondents-Defendants.
_____/

## REPORT AND RECOMMENDATIONS THAT THE COURT GRANT FINAL APPROVAL OF SETTLEMENT AGREEMENT

This Report and Recommendations ("R & R") concerns the proposed settlement of a class action lawsuit involving claims arising from Plaintiffs' allegedly unconstitutional conditions of confinement in three Florida immigration detention facilities during the still-ongoing COVID-19 pandemic.

As outlined below, it **recommends** that the District Court **approve** the class action settlement.

In June 2020, the Court certified the following class under Fed. R. Civ. P. 23(b)(2):

> All civil immigration detained individuals held by Respondents at the Krome Service Processing Center ("Krome"), the Broward Transitional Center ("BTC"), or at Glades County Detention Facility ("Glades") when this action was filed, since this action was filed, or in the future.

[ECF No. 158 at 20, 26].

After assistance from a professional mediator (a former Miami-Dade state Circuit Court judge), the parties have applied to the Court for an Order approving the settlement

of this class action lawsuit in accordance with the terms and provisions of the Settlement Agreement dated June 28, 2021 ("Settlement Agreement"), which sets forth the terms and conditions for a proposed settlement of this lawsuit.[1]

United States District Judge Marcia G. Cooke referred [ECF No. 703] the Parties' motion to approve the Settlement and to hold a fairness hearing.

The Court granted preliminary approval to the Settlement Agreement on September 14, 2021. [ECF No. 748]. Under the Court's Order, Defendants had 21 days to post translated versions of the Class Notice and Settlement Agreement for Class Members' review, and Defendants did so. I subsequently held a fairness hearing on October 29, 2021. [ECF No. 776]. At that hearing, the parties presented evidence and argument, including the testimony of three Petitioners (one of whom is detained at each of the three Facilities).

The Court must consider whether the terms of the Settlement Agreement are fair, reasonable, adequate, and in the best interests of the Settlement Class, and whether final orders and judgments in accordance with the terms of the Settlement Agreement should be entered. I have concluded that good cause supports the Settlement Agreement of this class action.

For the reasons outlined in greater detail below, I **respectfully recommend** that the Court **approve** the class action Settlement Agreement and enter a final order and judgment in accordance with its terms.[2]

---

[1]   The Court has jurisdiction over the subject matter of the lawsuit, the parties, and all members of the class.

[2]   This R&R incorporates by reference the definitions in the Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Procedural History of the Litigation

Plaintiffs are members of a certified class, which includes all individuals held in civil immigration detention by Defendants in one of three Florida facilities: Krome Service Processing Center; Broward Transitional Center; and Glades County Detention Facility. [ECF No. 158 at 38]. Plaintiffs filed this lawsuit on April 13, 2020, arguing that Defendants have exposed Plaintiffs to an imminent risk of contracting COVID-19 throughout the pandemic and thereby violated Plaintiffs' constitutional and common-law rights in three ways: (1) by failing to adhere to binding federal health and safety guidelines in violation of the *Accardi* doctrine;[3] (2) by demonstrating deliberate indifference to Plaintiffs' well-being in violation of the Fifth and Eighth Amendments; and (3) by affirmatively placing Plaintiffs in a position of danger that they otherwise would not have faced in violation of the Fifth Amendment's state-created danger doctrine. [ECF No. 1 at ¶¶ 320-38, 339-49, 350-58].

After granting a temporary restraining order requiring Defendants to implement social distancing and other safety practices, [ECF No. 76 at 10-11], on June 6, 2020, this Court certified the class set forth above under Fed. R. Civ. P. 23(b)(2). [ECF No. 158 at 20, 26]. Because the class sought injunctive and declarative relief, it was certified under Rule 23(b)(2), and class members did not have the right to opt out (as would be the case with a class certified under Rule 23(b)(3)).

In the same June 6, 2020 Order, the Court entered a preliminary injunction against Defendants. Among other things, the preliminary injunction provided that Defendants "shall immediately comply with the [Center for Disease Control ("CDC")] and [Immigration and Customs Enforcement ("ICE")] guidelines by providing Petitioners and the class members with unrestricted access to hand soap" and other cleaning

---

[3]   *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 266, 268 (1954).

supplies, organize regular and frequent cleaning of the detention facilities, provide masks to all inmates and detention facility staff members, educate Plaintiffs on COVID-19 transmission and applicable safety precautions, conduct regular internal reviews on the number of released detainees and provide weekly updates to the Court, and refrain from transferring individuals in detention until the transferee has undergone a verbal screening and temperature check. [ECF No. 158 at 38-40].

The Court found that injunctive relief was warranted because "Petitioners are likely to succeed on their Fifth Amendment and Eighth Amendment claims." *Id.* at 30, 33. Examples of such violations included the limited COVID-19 testing that was available to individuals in detention, failure to provide masks to individuals in detention and staff members, cohorting[4] asymptomatic detainees together, and the failure to adhere to social distancing guidelines. *Id.* at 30-32 & n.39; *see also* [ECF No. 532 at 6-8].

Defendants moved for reconsideration of the Court's preliminary injunction in July 2020, arguing that an intervening decision from the Eleventh Circuit—*Swain v. Junior*—altered the deliberate indifference standard and accordingly compelled reconsideration of the Court's grant of injunctive relief. [ECF No. 195 at 1]. The Court denied the motion in March 2021, concluding that *Swain* merely reaffirmed the deliberate-indifference standard established by the Supreme Court decades earlier and the record evidence at issue in this case was distinguishable from the record evidence that warranted a reversal of the district court's injunctive relief in *Swain*. [ECF No. 608 at 7-8].

---

[4] According to the CDC's Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities [ECF No. 1, Appendix, Ex. F, p. 3] "cohorting" is a term which "refers to the practice of isolating multiple laboratory-confirmed COVID-19 cases together as a group, or quarantining close contacts of a particular case together as a group." That Guidance also says that "[i]deally, cases should be isolated individually, and close contacts should be quarantined individually." The Guidelines also explain that, "[h]owever, some correctional facilities and detention centers do not have enough individual cells to do so and must consider cohorting as an alternative."

According to the parties, in the period between the Court's preliminary-injunction decision and its denial of Defendants' motion for reconsideration, four developments occurred that informed the parties' ultimate settlement negotiations:

*First*, the parties engaged in substantial fact and expert discovery—including 11 depositions and the production of more than 39,000 documents totaling more than 293,000 pages.

*Second*, Plaintiffs filed an emergency motion to compel compliance with the Court's preliminary injunction Order on June 16, 2020, arguing that Defendants were improperly cohorting COVID-19-positive detainees with those who were not confirmed to have the disease, that the Detention Facilities were failing to provide sufficient cleaning supplies and clean masks to detainees, that Defendants were not educating detainees about COVID-19, and that federal social distancing guidelines continued to be violated. [ECF No. 163 at 2-4]. Defendants opposed the motion, arguing that they were complying with the preliminary injunction order. [ECF No. 165-1 ¶¶ 4-7, 9-10].

The Court appointed Matthew C. Dates to serve as Special Master and inspect the three facilities at issue and assess whether Defendants were violating the terms of the Court's preliminary injunction order. Special Master Dates inspected Glades, BTC, and Krome in July and August 2020, and he submitted his Report to the Court for an *in camera* review a month later. [ECF No. 545 at 1].

In his Report, Special Master Dates concluded that by the time of his inspection (more than a month after Plaintiffs filed their motion to compel), Defendants were mostly in compliance with the preliminary injunction requirements, and housing units were generally clean and stocked with sufficient cleaning supplies and personal protective equipment. *Id.* at 18. But Special Master Dates confirmed that Plaintiffs' concerns about social distancing violations were warranted, and he also noted that the parties were unable to agree about whether Defendants should produce floor plan and square footage

information for the detention facilities to facilitate Plaintiffs' assessment of the sufficiency of Defendants' social distancing protocols. *Id.* at 19.

The Court affirmed and adopted the Special Master's Report, and it accordingly denied in part and granted in part Plaintiffs' Emergency Motion to Compel Compliance with the Court's June 6, 2020 Preliminary Injunction. [ECF No. 611 at 6]. Defendants were directed to file a brief with information about the numbers of available and used bunk beds in each facility to assess the detainees' social distancing, in addition to filing a declaration regarding whether Defendants were cohorting detainees with confirmed COVID-19 positive tests with detainees who had not tested positive at any of the detention facilities at issue. *Id.* at 7.

The Court also directed the parties to confer regarding the production of floor plan data in light of Defendants' security-based objections to sharing the information, and the Court set an evidentiary hearing to resolve Plaintiffs' allegations of improper social distancing. *Id.*

*Third*, Defendants filed a motion for summary judgment on January 4, 2021. [ECF No. 484]. In their motion, Defendants argued that they are entitled to summary judgment on each of Plaintiffs' claims for the following reasons: (a) the *Accardi* doctrine does not apply to the federal guidelines at issue because (according to Defendants) those standards are not binding; (b) Plaintiffs' claim under the Fifth Amendment fails as a matter of law because Defendants have diligently implemented safety measures to mitigate the spread of COVID-19 within each of the detention facilities and provide appropriate medical care to infected detainees—efforts that are sufficient to undermine Plaintiffs' allegations of deliberate indifference; and (c) Plaintiffs' claim under the state-created-danger doctrine fails as a matter of law because COVID-19 does not constitute a type of third-party actor that could form the basis for such a claim and Defendants had not acted with deliberate indifference in any event. [ECF No. 484 at 6, 13, 15-16].

6

Plaintiffs opposed Defendants' motion on the following grounds: (a) the Court had already determined that the CDC Guidelines are binding on ICE; (b) a substantial amount of record evidence illustrates that Defendants have acted and continue to act with deliberate indifference, including the fact that Defendants had not yet developed a vaccination rollout plan; and (c) environmental conditions can be the basis for a state-created danger claim, and Plaintiffs had sufficient evidence of Defendants' deliberate indifference to survive summary judgment. [ECF No. 532 at 2–3, 6–10]. Defendants' summary judgment motion remained pending when the Parties notified the Court they had reached a tentative settlement. The Court then stayed the case.

*Fourth*, three COVID-19 vaccines received emergency use authorization from the U.S. Food and Drug Administration. On the eve of the impending trial, Plaintiffs learned that Defendants had developed a vaccine plan and moved to compel updated Rule 30(b)(6) depositions concerning that plan. Defendants opposed, and the Undersigned recommended granting Plaintiff's Motion to take these updated depositions even though the discovery deadline had passed. [ECF No. 633]. The Court adopted the Undersigned's Report and Recommendation, compelling the depositions. Those updated depositions on vaccine topics were days away when the parties reached their settlement.

### B. The Terms of the Proposed Settlement Agreement

The parties agree that the terms of the proposed settlement are the product of substantial, vigorous negotiations between counsel for Plaintiffs and Defendants. The parties continue to dispute the merits of Defendants' pending motion for summary judgment and of Plaintiffs' claims. But each side also recognizes the litigation risks inherent in litigating a case to trial and in any subsequent appeal. And the litigation uncertainty is even more pronounced given the unpredictability surrounding the evolving nature of the COVID-19 pandemic.

Counsel for Plaintiffs and Defendants began the mediation process on March 8, 2021, and they were not able to reach an agreement in principle or alert the Court until

April 13, 2021. Over that period, the parties vigorously negotiated every aspect of the Settlement Agreement. The Undersigned finds that Plaintiffs' counsel pursued the best possible result for the Class on every metric. Class counsel conferred with class members, medical experts, and other attorneys who represent class members to be fully informed of the issues most important to the class members and to protect them from COVID-19.

As detailed below, the Settlement Agreement is fair, reasonable, and far more than "adequate," as required for approval under Fed. R. Civ. P. 23(e). Among other things, the Settlement Agreement continues the Preliminary Injunction's provisions concerning social distancing, personal protective equipment, access to hygiene products, and the procedure for the transfer of class members. The Settlement Agreement also contains numerous safety provisions regarding the vaccination of class members.[5]

A summary of the most significant terms from the settlement is set forth below.

***Compliance with Applicable Federal Guidelines***. Defendants agree that the Detention Facilities "shall comply with all applicable detention guidelines, ICE Pandemic Response Requirements (PRR) and Center for Disease Control (CDC) Guidelines." [ECF No. 697-1, Settlement Agreement § 1(a)].

---

[5] Class counsel have also agreed to forego any request to recoup their fees and costs. Class counsel have not disclosed the amount of attorney time and costs they donated to the cause, but there is no doubt that they are **substantial**. There are approximately 800 docket entries. Several of those entries are comprehensive motions and memoranda. In addition, Class counsel have attended myriad hearings, some of which lasted for hours. They also participated in mediation, discovery, and trial preparation. Their efforts have been remarkably generous and the results have been extraordinary. The Undersigned also commends Government counsel, who also invested considerable time and resources into a case which required almost-constant attention. Had counsel with less focus and skill been involved in the case rather than the attorneys who were involved on both sides, it is unlikely that a result as impressive as the one here would have been achieved. The Undersigned also commends the mediator, whose tenacious efforts facilitated the Settlement.

*Social Distancing.* The Detention Facilities are required to maintain a population density for each living area at each facility and in each facility in total at or below the population density ceiling recommended in the applicable PRR and CDC Guidelines -- currently set at a capacity of 75% or lower. *Id.* § 1(f). If any of the Detention Facilities or housing units exceed that threshold for more than 48 continuous hours, then Defendants are required to submit a report to the Court explaining the reason for the excessive capacity before 5 pm ET on Friday. *Id.*

In addition, Defendants must isolate any detained person at one of these facilities who tests positive for COVID-19 until 10 days after the detainee stops experiencing symptoms, while detained persons who test negative for COVID-19 after being exposed to someone who tested positive will be medically isolated for 14 days following the exposure. *Id.* § 1(l)–(m). Furthermore, the Detention Facilities are required to maintain conditions that permit for social distancing of at least six feet between detained persons whenever possible. *Id.* § 1(y). Any necessary repairs to bathroom areas (*e.g.,* showers, sinks, and toilets) shall be made as soon as possible to maximize social distancing opportunities. *Id.* § 1(gg).

*Personal Protective Equipment.* The Settlement Agreement requires the Detention Facilities to supply detainees with new masks that conform to CDC guidelines at no cost. *Id.* § 1(p). If the masks are disposable, then detainees must receive new masks at least three times per week. *Id.* If the masks are made of cloth, then the Detention Facilities must provide a replacement upon request in the event that the mask is returned from the laundry "in a way that is dirty, wet, sour smelling or otherwise unusable." *Id.* Consistent with these requirements, staff members and guards must wear face masks covering their nose and mouth while at the Detention Facilities—especially when interacting with detainees at a distance of less than six feet. *Id.* §§ 1(r), 1(kk).

*Sanitation and Hygiene Requirements.* The Detention Facilities are required to provide unlimited soap and hand sanitizer to detained persons free of charge, with the

supplies being placed in multiple areas of the Detention Facilities. *Id.* § 1(o). Staff members must refill dispensers as needed and complete a log when doing so. *Id.* Detained persons must be provided with single-use disposable food trays or trays that have been sanitized after each use with hot water or a dishwasher in the cafeteria, and hand sanitizer shall be available during all meal service lines. *Id.* § 1(aa).

Detained persons are also entitled to have single-use disposable utensils at every meal, which must be delivered free of contamination. *Id.* § 1(bb). Mattresses will also be cleaned with an EPA-approved disinfectant when it is assigned to a new person. *Id.* § 1(hh). Furthermore, the Detention Facilities commit to ensuring adequate cleaning of each bathroom, dayroom, common space, and dormitory once per day, in addition to the cleaning of all areas where medical care is provided. *Id.* § 1(ii)-(jj).

***Vaccinations.*** The Settlement Agreement requires the Detention Facilities to provide COVID-19 vaccinations to class members for free upon request, subject to availability and priorities set forth in ICE's COVID-19 Vaccination Guidelines and Protocol. *Id.* § 1(b). If a class member is released after receiving one dose of a two-dose vaccination protocol, then Defendants must provide the class member with a CDC vaccine card and written information in the class member's primary language about the applicable logistical information for obtaining the second dose. *Id.* § 1(c). Furthermore, Defendants commit to making seasonal influenza vaccinations available to class members for free. *Id.* § 1(e).

***Education of Class Members.*** The Detention Facilities are required to post and update signs daily in every housing unit in a location visible to all staff and detainees with information regarding whether any given pod, building, or housing unit is cohorted or quarantined, along with the beginning and end dates of the cohorting or quarantine. *Id.* § 1(g). Class members will also be provided with instructions in their primary language about requesting and receiving their medical records within a reasonable time period not to exceed 14 days from the date of request. *Id.* § 1(mm).

Furthermore, the Detention Facilities agree to post educational posters on the walls with information about the importance of social distancing, hand washing, and mask wearing in English, Spanish, Haitian Creole, and French -- with the information being presented in a manner that would be intelligible to a class member who does not read one of those languages. *Id.* § 1(nn). Consistent with this requirement, every two weeks the Detention Facilities must also give a presentation to class members about COVID-19 and precautions that slow its spread. *Id.* § 1(pp).

*COVID-19 Testing.* Defendants must provide COVID-19 testing to all class members who exhibit COVID-19 symptoms within 24 hours of the symptoms' manifestation. *Id.* § 1(h). Furthermore, Defendants must provide COVID-19 testing to close contacts of someone who tests positive for COVID-19 within 24 hours. *Id.* § 1(i). All testing must be performed using a medically approved COVID-19 test, and notice of the results must be provided either orally or in writing to the class member by the medical staff within 12 hours of the results becoming available. *Id.* § 1(h)-(j). If the COVID-19 test result is positive, then the affected class member must see medical staff within 24 hours of receiving the positive result and must continue to do as needed thereafter. *Id.* § 1(k).

*Protocol for Transferring Detainees.* The Detention Facilities agree to maintain all existing limitations on transfer as set forth in this Court's preliminary injunction and the ICE PRR, except for the requirement to submit documentation of pre-transfer release evaluations pursuant to paragraph (b) of the preliminary injunction order. *Id.* § 1(t). Detainees may only be transferred after receiving a negative rapid COVID-19 test within 24 hours before the transfer. *Id.* § 1(u). Whenever possible, social distancing of at least 6 feet must be maintained by ERO and its contractors during the transfer process, and all transportation vehicles shall be sanitized before and after each transport. *Id.* § 1(x).

*Notice of the Settlement Agreement to the Class.* The Settlement Agreement provides that a Final Order with the approved terms will be "posted in English, Spanish,

11

Haitian Creole, and French in every living unit, law library and the medical facilities of the Detention Facilities." *Id.* § 1.

*Release of Claims.* The Settlement Agreement would resolve all **class-wide** claims against Defendants but would not moot pending **individual** motions for release or motions to intervene. *Id.* § 1. By entering the Agreement, Defendants do not waive their ability to raise defenses of collateral estoppel, res judicata, or other applicable defenses or arguments in a habeas petition or motion arising from conditions of confinement claims. *Id.*

*Enforceability of the Settlement Agreement.* The Settlement Agreement contemplates that this Court will retain jurisdiction over the action and enforce the terms of the Settlement Agreement as an injunction. *Id.* § 1. While the Settlement Agreement is in effect, Defendants agree to continue submitting weekly certifications regarding the detention population, including the Detention Facilities' raw population numbers, population densities, and number of detainees who have tested positive for COVID-19 in each housing unit. *Id.* § 1(qq).

The Settlement Agreement applies for six months following the entry of the Final Order or until each of the class members at the time of the Final Order's entry has been given an opportunity to be vaccinated -- whichever is later. *Id.* § 2. Defendants retain the right to petition the Court for the earlier dissolution of the injunction based on the evolving circumstances of the pandemic, and likewise, Plaintiffs retain the right to petition for the Court to extend the injunction if warranted under the circumstances of the pandemic. *Id.* In this way, the Settlement Agreement contemplates that the Court will be able to tailor the length of the final injunction to account for changing circumstances.

## ANALYSIS

The Settlement Agreement satisfies the applicable standards for approval under Rule 23(e) and Eleventh Circuit law. District courts within the Eleventh Circuit consider

two sets of factors when assessing whether to approve a class-action settlement agreement.

*First*, Rule 23(e) requires that a settlement agreement be "fair, reasonable, and adequate" before receiving approval. The following factors must be considered before determining whether that standard has been satisfied: (a) whether the class representatives and class counsel have adequately represented the class; (b) whether the agreement was negotiated at arm's length; (c) the adequacy of the relief provided for the class; and (d) whether the proposal "treats class members equitably relative to each other." Fed. R. Civ. Proc. 23(e)(2)(A)-(D).

*Second*, the Eleventh Circuit has provided that courts should evaluate the fairness of a proposed settlement agreement based on the following factors: (a) the likelihood of success at trial; (b) the range of possible recovery; (c) the point on or below the range of recovery at which a settlement is fair, adequate, and reasonable; (d) the complexity, expense, and duration of the litigation; (e) the substance and amount of opposition to the settlement; and (f) the stage of proceedings at which settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Clearing these standards is not a high bar, given that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) ("Settlements conserve judicial resources by avoiding the expense of a complicated and protracted litigation process.").

Both the Rule 23(e) and *Bennett* factors are satisfied here. Accordingly, the undersigned respectfully recommends final approval of the Settlement Agreement.

### A. The Settlement Agreement is Fair, Reasonable, and Adequate under Rule 23(e)

The Settlement Agreement was reached after a month of vigorous negotiations between highly-experienced counsel for Plaintiffs and Defendants, who were guided by information produced during a year of intensive litigation, including the production of 39,000 documents totaling more than 293,000 pages, 11 depositions, multiple evidentiary hearings, and briefing on the motion for class certification, multiple motions to compel, and Defendants' motion for summary judgment. The relief provided in the Settlement Agreement largely covers the terms of this Court's June 2020 preliminary injunction and then provides additional important protections for the class members.

In this way, the Settlement Agreement provides assurances that Defendants will continue to follow federal COVID-19 guidelines and other safety protocols throughout the remainder of the pandemic. The Settlement Agreement grants the same equitable relief to all class members without giving Plaintiffs' counsel the opportunity to recover attorney's fees or costs. For these reasons, the Settlement Agreement qualifies as "fair, reasonable, and adequate" under Rule 23(e).

*Adequate Representation of the Class.* The class members have received adequate representation from class counsel, who collectively have decades of experience litigating highly-complex class actions and other lawsuits. Class counsel have invested a significant amount of time and resources to litigate the case *pro bono*, including by reviewing thousands of documents produced by Defendants, by taking 11 depositions, by continually seeking input from other legal representatives who have regular, day-to-day contact with class members, and by managing the class action on a dramatically-tightened and intensive litigation schedule for well over a year.

Furthermore, class counsel have vigorously represented class members' interests during the settlement negotiations, resulting in settlement terms that largely extend the requirements of this Court's preliminary injunction order and assure class members of

14

continued access to personal protective equipment, social distancing opportunities, and other safety protocols that are critical to mitigate the risk of COVID-19 spreading throughout the detention facilities. It should be noted that class counsel have performed their tireless work entirely for the benefit of the class members. To obtain the benefits of the Settlement Agreement on behalf of the class, class counsel have foregone any right to seek attorneys' fees or to recoup the costs they have expended in pursuing this action.

*Negotiation of Settlement Agreement at Arm's Length.* Class counsel for Plaintiffs negotiated the Settlement Agreement with Defendants' counsel at arm's length, as required by Rule 23(e)(2)(B). As noted above, counsel for Plaintiffs and Defendants benefitted from an extensive factual and legal record throughout the negotiations, giving counsel the opportunity to develop an informed understanding of the merits of the claims and thereby supporting a finding of fairness. *See Ferron v. Kraft Heinz Foods Co.*, 2021 WL 2940240, at *5 Slip Op., (S.D. Fla. July 13, 2021) ("[T]he Settlement Agreement here is more than sufficient under Rule 23(e). The issues in this Action were disputed and the Agreement was negotiated at arm's length by experienced counsel, overseen by a well-respected mediator, who were fully informed of the facts and circumstances of this litigation and of the strengths and weaknesses of their respective positions.").

Furthermore, the parties engaged a mediator -- the Honorable Jacqueline Hogan Scola, a retired judge with more than seventeen years' experience on the bench and an extensive background litigating federal cases before that -- to assist with the negotiations. Judge Hogan Scola's involvement further weighs in favor of fairness. *See id.* (noting the assistance of a "well-qualified and experienced mediator" as indicative of the fairness of the proposed settlement); *see also Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (determining that the parties engaged in arm's length negotiations after "work[ing] extensively with a mediator").

*Adequacy of the Relief Provided to the Class.* Rule 23(e)(2)(C) requires courts to assess the adequacy of the relief provided to the class in proposed class-action settlements

based on (i) "the costs, risks, and delay of trial and appeal"; (ii) "the effectiveness of any proposed method of distributing relief to the class"; (iii) "the terms of any proposed award of attorney's fees"; and (iv) "any agreement required to be identified under Rule 23(e)(3)." Each of these factors weighs in favor of adequacy here.

As an initial matter, the risks of continued litigation—both before this Court and on appeal to the Eleventh Circuit—weigh strongly in favor of the Settlement Agreement's fairness. Both sides face uncertain odds if the case were litigated to trial and subject to an appeal. As the Special Master's report demonstrates, the litigation's complexion has shifted over time. Defendants face the prospect of being subject to more-stringent oversight after a trial and of expending additional valuable resources if required to continue on with the litigation, and with the prospect of being ordered to pay a substantial award of fees and costs if Plaintiffs ultimately prevailed.

The Settlement Agreement eliminates those costs and risks based on terms that are favorable to both parties, guaranteeing that class members will continue to receive the vast majority of the relief from the preliminary injunction order for the remainder of the pandemic, while largely requiring Defendants to comply with regulatory standards that Defendants are already bound to follow.

With respect to the second factor, the Settlement Agreement provides entirely equitable relief to class members and would be readily enforceable as an injunction. The effectiveness of that enforcement mechanism has been demonstrated multiple times over throughout this litigation by Plaintiffs' motions to compel compliance with the Court's previous temporary restraining order and current preliminary injunction.

The final two factors also weigh in favor of approval. There is no evidence of any conflict between class counsel and the class. Nor is there any additional agreement required for disclosure under Rule 23(e).

***Equitable Treatment of Class Members.*** The Settlement Agreement provides equitable relief that would be provided to all class members on an equal basis. As noted

above, the terms of the Settlement Agreement focus on ensuring that Defendants implement numerous safety protocols to minimize the risk of class members' contracting COVID-19 at the three detention facilities, including by providing and mandating personal protective equipment, providing opportunities for social distancing, regularly cleaning common living and medical areas, making COVID-19 testing available to class members with symptoms and in close contact with those who tested positive for COVID-19, and providing approved vaccinations to class members upon request. The same forms of equitable relief would be available to all members of the class—an equitable result, given that the claims at issue were focused on the general conditions of confinement at the three facilities.

And the Settlement Agreement's release applies only to "all class-wide claims" without mooting any "pending motion[s] for release or to intervene," [ECF No. 697-1], Settlement Agreement § 1, thereby preserving the rights of individual class members to continue bringing individual claims.

### B. The Settlement Agreement Satisfies the Remaining *Bennett* Factors

The first and fourth *Bennett* factors overlap with the Rule 23(e) ones and accordingly weigh in favor of approval. The Settlement Agreement satisfies the remaining *Bennett* factors as well.

***The Adequacy of the Proposed Recovery Based on the Range of Possible Recovery.*** The second and third *Bennett* factors are "easily combined and normally considered in concert." *Cifuentes v. Regions Bank*, No. 11-cv-023455-FAM, 2014 WL 1153772, at *5 (S.D. Fla. Mar. 20, 2014). When reviewed in light of the possible range of recovery, the Settlement Agreement's terms reflect an excellent result for class members. The Settlement Agreement's equitable relief tracks the requirements that this Court implemented in its June 2020 preliminary order. And it eliminates the substantial litigation risk that Plaintiffs would face both at trial and on appeal.

Plaintiffs' counsel succeeded in negotiating a continuation of virtually all of the terms in the preliminary injunction order, with the only notable exception being with respect to the requirement that Defendants provide documentation of pre-transfer release evaluations. *See* Settlement Agreement § 1(t). Plaintiffs would by no means be guaranteed of securing such substantial relief—or indeed, any relief—at trial, which is to say nothing of the risk that any trial success could be nullified on appeal.

***Substance and Amount of Opposition to the Settlement.*** The paucity of objections to the settlement further favor final approval. In fact, of the hundreds of class members, **only four** class members registered what the Court has construed as an objection. [*See* ECF Nos. 775; 790; 797; 798; *see also* ECF No. 780 (construing ECF No. 775 as an objection to the proposed settlement); ECF No. 792 (construing ECF No. 790 as an objection to the proposed settlement.; ECF No. 804 (construing ECF No. 797 as an objection to the proposed settlement); ECF No. 805 (construing ECF No. 798 as an objection to the proposed settlement)].[6] Those objections were submitted by Carl O'Neal, Corey Anthony Smith, George Monsour, and Righten Brown. These class members are being held at Krome Detention Center. The objections were styled as emergency motions for temporary restraining orders and motions for preliminary injunction.

In essence, these class members object to current conditions they claim to be facing. Their allegations include improper transfer protocols, improper cohorting, a lack of

---

[6] The Undersigned notes that additional, seemingly identical, submissions are being mailed directly to my Chambers. Regardless of whether Judge Cooke continues to construe these submissions as objections and refers them to me, for practical purposes, the undersigned cannot continue to withhold the issuance of the Report and Recommendations simply because additional submissions (which raise the same or nearly identical objections) are being mailed directly to my Chambers. For example, two additional submissions [ECF Nos. 808; 809] were received today and docketed by my Chambers, but they have not yet been construed as objections and referred to me. Nevertheless, these new submissions appear to be substantially similar or nearly identical to the submissions already addressed in this Report and Recommendation.

ability to socially distance, inconsistent education on the use of masks, and a lack of consistent mask usage by staff. Along the same lines, three class members who spoke in favor of the Settlement Agreement at the fairness hearing(Safet Avdulahaj, Jorge Rondon-Torrealba, and Marlissa Joseph) expressed concerns about the conditions under which they are being held.

The Undersigned acknowledges the concerns that Mr. O'Neal, Mr. Smith, Mr. Monsour, and Mr. Brown have raised (along with Mr. Avdulahaj, Mr.Rodon-Torrealba, and Ms. Joseph), but notes that those concerns are not attacks on the *terms* of the Settlement Agreement. Rather, they are complaints about some specific current conditions, which the Settlement Agreement addresses. And whatever the merits of those complaints, **rejecting the Settlement Agreement and forcing the parties to take the case to trial would not alleviate them.** In any event, the absence of objections to the terms of the Settlement Agreement is a factor that further supports approving the Settlement Agreement.

*Stage of Proceedings at Which the Settlement Was Achieved.* As noted above, the Settlement Agreement was reached weeks before the scheduled start of trial, after discovery had been completed (save for the update deposition on vaccine issues), and after multiple evidentiary hearings on issues that meshed with the merits of the case. The parties therefore negotiated the settlement with the benefit of a well-developed factual record and a substantial amount of merits briefing on the presented claims.

## CONCLUSION

The requirements for final approval of the Settlement Agreement under Rule 23(e) and Eleventh Circuit precedent have been met. Accordingly, the Undersigned recommends that the Court **GRANT** final approval of the Settlement Agreement (following the already-held fairness hearing), retain jurisdiction to enforce the Settlement Agreement and enter final orders and judgments in accordance with the terms of the Settlement Agreement.

## OBJECTIONS

The parties will have five (5) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Marcia G. Cooke. Each party may file a response to the other party's objection within five (5) days of the objection.[7] Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED**, in Chambers, at Miami, Florida, on December 3, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

---

[7] The Undersigned is shortening the deadline for the filing of Objections because Class Counsel for Plaintiffs and the Defendants are all seeking final approval of the Settlement Agreement.